## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

S2 AUTOMATION LLC,

      Plaintiff,

vs.                                                                No. CIV 11-0884 JB/WDS

MICRON TECHNOLOGY, INC.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss, filed November 18, 2011 (Doc. 7)("Motion").  The Court held a hearing on February 3, 2012.  The primary issue is whether the Court should dismiss Plaintiff S2 Automation LLC's misrepresentation count on the basis that S2 Automation has failed to satisfy the heightened pleading standards that rule 9(b) of the Federal Rules of Civil Procedure requires.  The Court will grant the Motion.  The Court concludes that S2 Automation has not satisfied rule 9(b)'s pleading standards for either transaction in which S2 Automation alleges that Defendant Micron Technology, Inc. acted fraudulently.  The Court will, however, grant S2 Automation leave to amend its pleadings.

## FACTUAL BACKGROUND

The Court recites the factual background in this case in the light most favorable to S2 Automation.  "This case arises out of a dispute between the parties involving the operation of a Micron owned computer chip manufacturing facility in Qiryat-Gat, Israel," which the parties refer to as the Fab 12 facility.  Complaint for Breach of Contract, Conversion, Misrepresentation and Unjust Enrichment ¶ 3, at 1, filed October 3, 2011 (Doc. 1)("Complaint").  S2 Automation is a New-Mexico-based company created in 2000 "to provide goods and services associated with chip

manufacturing processes to Intel Corporation" for Intel's facilities at various places throughout the world.  Complaint ¶ 5, at 2.  S2 Automation "services and repairs the robots and other machines associated with the chip manufacturing process and in doing so maintains" an "inventory of parts and a highly trained work force to prove the required services."  Complaint ¶ 6, at 2.  Intel owned the Fab 12 facility.  See Complaint ¶ 7, at 2.  In 2008, "Intel sold their Fab 12 production facility to Numonyx."  Complaint ¶ 8, at 2.  "In July 2008, S2 entered in to a supplier agreement called the Total Spares Management Agreement ('TSM') for the Fab 12 facility."  Complaint ¶ 9, at 2.  "Pursuant to the terms of the TSM, S2 took ownership and possession of all of Numonyx's parts and equipment inventory and laboratory tools," which the parties refer to as the "Inventory."  Complaint ¶ 9, at 2.  "S2 was given the option of repairing, maintaining or discarding the Inventory inherited from Numonyx."  Complaint ¶ 10, at 2.

"On or about December 2, 2008, S2 and Numonyx entered in to a second agreement called the Statement of Work ('SOW') memorializing the services to be provided by S2."  Complaint ¶ 11, at 2.  The SOW "was a renewable three year agreement which contained a payment schedule in the event the agreement was cancelled."  Complaint ¶ 12, at 3.  Micron Technology "subsequently purchased Fab 12 from Numonyx in 2010 and assumed all of Numonyx's contract obligations, including the S2 TSM and SOW agreements," which the parties refer to as the "S2 Agreements."  Complaint ¶ 14, at 3.  "Following the transfer, Micron began to attempt to impose repair and service obligations on S2 that were not part of the S2 Agreements."  Complaint ¶ 15, at 3.  "On November 30, 2010, Micron purported to terminate S2 'for cause' in order to attempt to escape its termination payment obligations pursuant to the SOW."  Complaint ¶ 16, at 3.  "However, the SOW set forth measurable performance requirements, all of which were being met by S2."  Complaint ¶ 17, at 3.

"On or about May 23, 2011, Micron's representatives, Mark Kamenkovich, Yuval Hasson

and Or Bessor and representatives of the new supplier replacing S2, Yuval Rozenthal and Shai Shannie met with S2's local representative Yosi Astanovsky . . . ." Complaint ¶ 20, at 4. The purpose of the meeting was "to conduct an inventory of the entire Inventory to be turned over to Micron in conjunction with the termination of the S2 Agreements." Complaint ¶ 20, at 4. "The representatives prepared a written list of the Inventory to be turned over." Complaint ¶ 21, at 4. "At no time did any Micron representative challenge the ownership of the Inventory." Complaint ¶ 21, at 4. "S2 has records reflecting outright ownership of Inventory valued at $787,007.00 that it purchased or produced separate and apart from the Inventory that was acquired from Numonyx." Complaint ¶ 23, at 4. "However, Micron has failed and refused to pay for any Inventory amounts." Complaint ¶ 23, at 4. "Micron has been using S2's inventory in conjunction with the operation of Fab 12 without paying any amounts for the Inventory used." Complaint ¶ 24, at 4. "Micron has not provided required maintenance and testing and/or has been cannibalizing certain electronic parts out of Inventory items in such a manner that S2 can not [sic] accept return of Inventory items after Micron has exercised control over the Inventory for months." Complaint ¶ 25, at 4.

"In mid-May 2011, just prior to the termination of S2's Agreements, Micron's Operational Manager, Or Bessor, became concerned that Micron would not have enough Aero Track Car Kits and Batteries to continue to operate after S2 was no longer under contract." Complaint ¶ 27, at 5. "The Aero Track Cars are small transport vehicles, much like miniature train cars, that carry wafers and other computer related devises [sic] around the production facility." Complaint ¶ 27, at 5. Bessor "agreed to pay S2 for twelve Aero Car part kits and ten batteries . . . if S2 would order and provide the parts." Complaint ¶ 28, at 5. "S2 agreed to and did order and produce the requested parts and batteries in order to keep the chip manufacturing process from stopping with the resulting loss of production." Complaint ¶ 28, at 5. "Following delivery of the requested parts, Micron has

repeatedly refused to pay for the parts they ordered and requested."  Complaint ¶ 29, at 5.

"Following termination of the S2 Agreements, Micron confiscated nine set[s] of S2's tools ('Tool Kits') that were at Fab 12 without explanation or justification."  Complaint ¶ 31, at 5.  "In spite of repeated requests that the Tool Kits be returned, Micron has refused to return or even discuss the theft."  Complaint ¶ 32, at 5.  "Micron has simply ignored all requests for return of the Tool Kits."  Complaint ¶ 33, at 5.

In support of its misrepresentation claim, S2 Automation asserts that Micron Technology "made certain representations and omissions to S2 in conjunction with the termination of the S2 Agreements, taking possession of the Inventory and with respect to the ordering of additional Aero Track Cars and Batteries as set forth above."  Complaint ¶ 42, at 7.  S2 Automation also asserts that the "misrepresentations and omissions were made with the intent to defraud S2 in to cooperating with Micron during the contract termination period so that there would be no interruption of the computer chip manufacturing process."  Complaint ¶ 43, at 7.  S2 Automation states that it "relied upon the misrepresentations of Micron and in some instances failed to take steps to protect its interest in the belief that Micron was acting in good faith."  Complaint ¶ 44, at 7.

## PROCEDURAL BACKGROUND

On October 3, 2011, S2 Automation filed its Complaint.  S2 Automation asserts four causes of action against Micron Technology: (i) breach of contract; (ii) conversion; (iii) misrepresentation; and (iv) unjust enrichment.  See Complaint at 6-7.  On November 18, 2011, Micron Technology filed its Answer to Complaint for Breach of Contract, Conversion, Misrepresentation, and Unjust Enrichment.  See Doc. 11.

On November 18, 2011, Micron Technology filed its Motion seeking dismissal of S2 Automation's misrepresentation claim asserted in Count V.  It argues that S2 Automation "wholly

fails to identify the requisite who, what, when, where, and how of the purported misrepresentations and omissions" as rule 9(b) requires.  See Memorandum in Support of Motion to Dismiss at 1, filed November 18, 2011 (Doc. 8)("Memorandum in Support").  Micron Technology asserts that S2 Automation "alleges only that the 'certain representations and omissions' occurred 'in conjunction with the termination of the S2 Agreements, taking possession of the Inventory and with respect to the ordering of additional Aero Track Cars and Batteries as set forth above.'"  Memorandum in Support at 3 (quoting Complaint ¶ 42, at 7).  Micron Technology argues that, based on the current allegations, it

> cannot identify the person(s) who made the purported false representations and omissions, when and where the alleged false representations and omissions occurred, how it relied on the alleged false representation and omissions, the consequences of such reliance, why the representations and omissions were intentional or reckless, or the falsity of the representations when made.

Memorandum in Support at 3 (citing City of Raton v. Ark. River Power Auth., 600 F.Supp.2d 1130, 1142 (D.N.M. 2008)(Browning, J.)).

On December 1, 2011, S2 Automation filed its S2's Response to Motion to Dismiss.  See Doc. 18 ("Response").  S2 Automation contends that its pleadings meet the standard that rule 9(b) requires.  See Response at 3.  It argues that it has properly incorporated by reference allegations in other portions of its Complaint that allow its misrepresentation claim to satisfy rule 9(b)'s standards.  See Response at 3.  S2 Automation then walks through the allegations in its Complaint and asserts that, when taken together, the allegations satisfy rule 9(b)'s standards.  See Response at 3-5.  Quoting Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1253 (10th Cir. 1997), S2 Automation asserts: "Rule 9(b) does not require that a complaint set forth detailed evidentiary matter as to why particular defendants are responsible for particular statements, or that the allegations be factually or legally valid."  Response at 5.  In the alternative, S2 Automation requests leave to

amend its pleadings.  <u>See</u> Response at 6.

On December 19, 2011, Micron Technology filed its Reply in Support of Micron Technology, Inc.'s Motion to Dismiss.  <u>See</u> Doc. 19 ("Reply").  Micron Technology argues that the alternative request for leave to amend is improper, because "S2 has not filed a motion to amend." Reply at 1-2, 5.  It further argues that, "even if [S2 Automation] had filed a motion to amend, S2 has failed to follow the requirements of Local Rules 7.1 and 15.1 because it failed to determine if Micron would oppose such a motion and has failed to provide a copy of the proposed pleading as required."  Micron Technology contends that S2 Automation "has not alleged a single false statement by Micron."  Reply at 2.  It asserts that S2 Automation's "claim relating to inventory . . . has not alleged <u>any</u> statements of present fact by Micron, much less that the statements were false, that S2 reasonably relied, and that S2 suffered damages that were the proximate cause of Micron's statements."  Reply at 3 (emphasis in original).  Micron Technology asserts the same basic arguments about S2 Automation's fraud claim in its arguments about the transaction involving the "Aero Track cars and batteries."  Reply at 4.

At the hearing on February 2, 2012, Micron Technology represented that it understood that the misrepresentation claim arises out of two transactions: (i) the Inventory transactions; and (ii) the Aero Track car transactions.  <u>See</u> Transcript of Hearing at 4:23-5:2 (taken February 2, 2012)(Randolph)("Tr.").  Micron Technology emphasized that, in relation to the Inventory transactions, there are no allegations that Micron Technology or its agents made a false statement of fact.  <u>See</u> Tr. at 5:21-25 (Randolph).  In relation to the Aero Track car transactions, Micron Technology argued that S2 Automation has identified no misrepresentation Bessor made.  <u>See</u> Tr. at 6:23-7:3 (Randolph).  Micron Technology asserted that, if the Court is inclined to give S2 Automation leave to amend, it would request that it have "a chance to evaluate the pleadings

proposed by the plaintiff and see if they exceed the standard set forth by 9(b), so we could avoid coming back on another trip with a motion to dismiss." Tr. at 7:14-18 (Randolph).

S2 Automation responded that "there are two allegations of fraud in this case," specifically "one allegation of fraud by omission and one allegation of fraud by commission." Tr. at 9:5-9 (Holland). It argued that the instance of fraud by omission relates to the Inventory transactions. See Tr. at 9:10-16 (Holland). It asserted that "the essence of the omission is that" Micron Technology "failed to say" it was not "going to pay for the parts and that" it was "going to challenge" S2 Automation's "ownership of the parts at a time when" S2 Automation "still had some ability to" ascertain or clarify who owned what pieces of inventory. Tr. at 11:2-7 (Holland). S2 Automation argued that Micron Technology should have revealed that it planned to refuse to pay for many of the pieces of inventory at a time when S2 Automation still had the ability to properly ascertain the proper ownership of items in the inventory -- based on access it had to certain computer systems during its tenure working with Micron Technology but to which it no longer has access. See Tr. at 16:20-17:4 (Holland). As to the alleged instance of fraud by commission, S2 Automation argued that, during the Aero Track car transactions, Bessor indicated that, if S2 Automation ordered the parts for these items and if Micron Technology had not used the parts before the termination of the contract, Micron Technology would still pay for the parts. See Tr. at 12:5-9 (Holland).

Micron Technology argued that this alleged misconduct arises to the level of a breach of contract claim, but not a fraud claim. See Tr. at 18:13-17 (Randolph). It emphasized that the rule 9(b) pleading requirements exist to allow a defendant to ascertain whether a misrepresentation occurred and how to properly defend against such a claim. See Tr. at 18:18-24 (Randolph). As to the alleged misrepresentation by omission, it asserted that the pleadings contain "no identification in the complaint as to who should have spoken up, what their duties were, at what point they were

on notice of having a present intention not to perform such that the failure to speak would be fraudulent." Tr. at 19:18-25 (Randolph). The Court has not yet held an initial scheduling conference and has not adopted a scheduling order with a formal deadline for amending pleadings.

## STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(b)(6)

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's burden to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 546 (2007). See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(stating that a plaintiff's complaint must set forth more than a threadbare recital "of the elements of a cause of action, supported by mere conclusory statements"). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 545 (citation omitted). To survive a motion to dismiss, a plaintiff's

complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. at 1940.  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).  The United States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 127 S Ct. at 1974)(citations omitted).

## LAW REGARDING RULE 9(b)

A plaintiff must plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Fraud claims, however, must meet more stringent standards.  See Fed. R. Civ. P. 9(b).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "The requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be 'simple, concise, and direct, . . . and to be construed as to do substantial justice.'"  Schwartz v. Celestial Seasonings, Inc., 124 F.3d at 1252.

-9-

"With respect to rule 9(b)'s scope, a court should require parties to plead a cause of action with particularity when that cause of action contains allegations grounded in fraud." Two Old Hippies, LLC v. Catch the Bus, LLC, 784 F.Supp.2d 1200, 1207 (D.N.M. 2011)(Browning, J.)(citing 2 J. Moore, J. Parness & J. Smith, Moore's Federal Practice § 9.03(1)(d), at 9-20 (3d ed. 2008)).   On the other hand, a plaintiff may plead claims based on negligent or innocent misrepresentations, to the extent those claims do not require proof of fraud, in accordance with the more relaxed standards of rule 8(a).   See Tricontinental Indus., Ltd. v. Pricewaterhouse Coopers, LLP, 475 F.3d 824, 833 (7th Cir. 2007)(recognizing that rule 9(b)'s heightened pleading standard does not apply to negligent misrepresentation claim); Gen. Elec. Capital Corp. v. Posey, 415 F.3d 391, 395-96 (5th Cir. 2005)(concluding that negligent representation claim needs only to satisfy rule 8(a)'s notice pleading standard); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1104-05 (9th Cir. 2003)("Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)."); Carl Kelley Const. LLC v. Danco Techs, 656 F.Supp.2d 1323, 1346 (D.N.M. 2009)(Browning, J.)(citing City of Raton v. Ark. River Power Auth., 600 F.Supp.2d at 1142-44, 1153)("[U]nlike with fraudulent misrepresentation, rule 8's notice pleading standard governs [negligent misrepresentations].")).

The primary motives that animate rule 9(b) help illuminate the reason for limiting the rule's reach to claims grounded in fraud.  First, the requirement of pleading with particularity protects defendants' reputations from the harm attendant to accusations of fraud or dishonest conduct.  See United States ex rel. Harrison v. Westinghouse Savannah River Co., 353 F.3d 908, 921 (4th Cir. 2003)("Rule 9(b) protects defendants from harm to their goodwill and reputation." (internal quotation marks omitted)); Guidry v. Banks of LaPlace, 954 F.2d 278, 288 (5th Cir. 1992)("[The particularity requirement] stems from the obvious concerns that general, unsubstantiated charges

-10-

of fraud can do damage to defendant's reputation."). Second, the requirement to plead with particularity puts defendants on notice of the allegedly fraudulent conduct so that they can formulate a defense. See United States ex rel. Harrison v. Westinghouse Savannah River Co., 353 F.3d at 921. A related goal of 9(b) is to prevent plaintiffs from tagging on specious fraud claims to their pleadings in an attempt "to induce advantageous settlements or for other ulterior purposes." Banker's Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683 (7th Cir. 1992).

The Tenth Circuit has fleshed out the components necessary to a successful 9(b) pleading. In Sheldon v. Vermonty, 246 F.3d 682, 2000 WL 1774038 (10th Cir. 2000)(unpublished table decision), the Tenth Circuit held that the plaintiff had alleged with specific particularity a violation of the Securities Exchange Act of 1934. See 246 F.3d 68, at *4. The Tenth Circuit concluded that the complaint

> adequately met Rule 9(b) requirements. First, as the district court acknowledged, the Complaint alleged misrepresentations with background information as to date, speaker, and the medium of communication. . . . Second, certain of the alleged misrepresentations involved profitable expectations arising from an unowned and inoperable meat-packing plant, a nonexistent lumber company, and fabricated contracts. Accepting Sheldon's allegations as true, these are patently false statements of present fact. The district court erred in determining they were mere conclusory allegations of falsity and in characterizing them as fraud by hindsight. . . . Third, the allegations of scienter were sufficient. In securities fraud cases, although speculation and conclusory allegations will not suffice, great specificity is not required if the plaintiff alleges enough facts to support a strong inference of fraudulent intent.

2000 WL 1774038, at *5 (citations omitted)(internal quotation marks omitted). "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." United States ex rel. Schwartz v. Coastal Healthcare Grp., Inc., 232 F.3d 902, 2000 WL 1595976, at * 3 (10th Cir. 2000)(unpublished table decision). "To survive a motion to dismiss, an allegation of fraud must 'set forth the time, place, and contents of the false representation, the

-11-

identity of the party making the false statements and the consequences thereof.'" Midgley v. Rayrock Mines, Inc., 374 F.Supp.2d 1039, 1047 (D.N.M. 2005)(Browning, J.)(quoting Schwartz v. Celestial Seasonings, Inc., 124 F.3d at 1252). "On the other hand, rule 9(b) does not require specific knowledge regarding the defendant's state of mind." Midgley v. Rayrock Mines, Inc., 374 F.Supp.2d at 1047.

## ANALYSIS[1]

The Court will grant the Motion. The Court concludes that S2 Automation has not satisfied rule 9(b)'s pleading standards for either transaction in which S2 Automation alleges that Micron Technology acted fraudulently. The Court will, however, grant S2 Automation leave to amend its pleadings.

## I.    S2 AUTOMATION HAS NOT MET RULE 9(b)'S PLEADING STANDARDS AS TO THE ALLEGED FRAUD INVOLVING THE INVENTORY TRANSACTION.

The allegations related to the Inventory transaction are as follows: "On or about May 23, 2011, Micron's representatives, Mark Kamenkovich, Yuval Hasson and Or Bessor and representatives of the new supplier replacing S2, Yuval Rozenthal and Shai Shannie met with S2's local representative Yosi Astanovsky . . . ." Complaint ¶ 20, at 4. The purpose of the meeting was "to conduct an inventory of the entire Inventory to be turned over to Micron in conjunction with the

---

[1]The parties have not indicated in their written filings or at the hearing whether New Mexico law would govern the state law causes of action S2 Automation has asserted against Micron Technology. The allegations in the Complaint contain almost no references to any geographical locations other than the Fab 12 facility in Israel. The parties have not cited to any state law authority in their briefing on this Motion that would assist the Court in concluding whether New Mexico law applies to this dispute. The parties have not raised any choice-of-law arguments. Consequently, without additional arguments from the parties on this issue, the Court will assume, for purposes of deciding this Motion, that New Mexico law governs S2 Automation's state law causes of action. The Court notes that, because common-law fraud is largely uniform among different jurisdictions, the Court's analysis would not likely change even if the Court applied law from a State other than New Mexico.

termination of the S2 Agreements."  Complaint ¶ 20, at 4.  "The representatives prepared a written list of the Inventory to be turned over."  Complaint ¶ 21, at 4.  "At no time did any Micron representative challenge the ownership of the Inventory."  Complaint ¶ 21, at 4.  "S2 has records reflecting outright ownership of Inventory valued at $787,007.00 that it purchased or produced separate and apart from the Inventory that was acquired from Numonyx."  Complaint ¶ 23, at 4.  "However, Micron has failed and refused to pay for any Inventory amounts."  Complaint ¶ 23, at 4.  "Micron has been using S2's inventory in conjunction with the operation of Fab 12 without paying any amounts for the Inventory used."  Complaint ¶ 24, at 4.  "Micron has not provided required maintenance and testing and/or has been cannibalizing certain electronic parts out of Inventory items in such a manner that S2 can not [sic] accept return of Inventory items after Micron has exercised control over the Inventory for months."  Complaint ¶ 25, at 4.

At the hearing, S2 Automation clarified that it was relying on a theory that Micron Technology failed to disclose certain information in this transaction, in other words, fraud by omission.  The allegations meet some of rule 9(b)'s requirements.  They indicate when the alleged fraud occurred, as they refer to the event occurring on or about May 23, 2011.  See Complaint ¶ 20, at 4.  They state who was responsible for the allegedly fraudulent omissions.  See Complaint ¶ 20, at 4.  They also reveal where the allegedly fraudulent omission occurred -- at the meeting between Micron Technology's representatives and S2 Automation's representatives on May 23, 2011.  See Complaint ¶ 20, at 4.

The allegations, however, do not sufficiently plead what conduct was fraudulent and how the conduct was fraudulent in a way that distinguishes Micron Technology's conduct from a negligent misrepresentation or a breach of contract.  As Professor James Moore has stated in the context of "cases concerning fraudulent misrepresentation and omission of facts," the plaintiff must

plead to satisfy rule 9(b) "the type of facts omitted, where the omitted facts should have been stated, and the way in which the omitted facts made the representations misleading."  2 J. Moore, Moore's Federal Practice § 9.03[1][b], at 9-18 (3d ed. 2011).  A plaintiff's pleading obligations in cases asserting fraud based on a theory of failure to disclose require a plaintiff to "allege . . . facts that, if true, would give rise to a duty of disclosure."  Carroll v. Fort James Corp., 470 F.3d 1171, 1174 (5th Cir. 2006).  The United States Court of Appeals for the Fifth Circuit justified this pleading requirement based on the common-law principle that "one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so."  Carroll v. Fort James Corp., 470 F.3d at 1174 (quoting Chiarella v. United States, 445 U.S. 222, 227-28 (1980)).  The Tenth Circuit has imposed similar requirements in the rule 9(b) context:

> [T]he sum of plaintiffs' allegations is a failure by defendants to disclose pertinent features of the transaction to plaintiffs.  Absent a showing of a "fiduciary or other similar relation of trust and confidence" between defendants and plaintiffs, the failures to disclose identified in the complaint are not actionable.  Plaintiffs do not allege any such relationship.

Burke v. Woods, 85 F.3d 640, 1996 WL 223731, at *5 (10th Cir. 1996)(unpublished table decision)(citations omitted).  The Court has also articulated in the past:

> Rule 9(b) seeks to force the plaintiff to state with particularity what is unique about fraud -- fraudulent conduct. Rule 9(b) requires the plaintiff to explain why the misrepresentation was intentional or reckless, and it does so, usually, by averring what the defendant knew when it made the misrepresentation. That allegation should be done with particularity.

City of Raton v. Ark. River Power Auth., 600 F.Supp.2d at 1142.

There are no allegations suggesting that Micron Technology had a duty to disclose any information about this Inventory transaction to S2 Automation.  New Mexico courts have recognized that "[a] party can be held liable for nondisclosure only when there is a duty to disclose."  McElhannon v. Ford, 134 N.M. 124, 128, 73 P.3d 827, 831 (Ct. App. 2003).  Similarly, the Supreme

-14-

Court of New Mexico has held: "Thus, where one is under a duty to speak but remains silent and fails to disclose a material fact, he may be liable for fraud."  R.A. Peck, Inc. v. Liberty Fed. Sav. Bank, 108 N.M. 84, 88, 766 P.2d 928, 932 (1988).  There are no allegations here that would, if true, support a conclusion that Micron Technology owed a duty to S2 Automation to disclose certain information about the transaction.  S2 Automation has not cited in its Response any New Mexico authority supporting that, under the circumstances alleged in the Complaint, Micron Technology had an obligation to disclose additional information about the transaction.  It is also not clear what information was known to Micron Technology and what it should have disclosed.  Likewise, it is not clear what information Micron Technology disclosed as part of the transaction -- if anything. There are not enough surrounding circumstances fleshing out the transaction to indicate why Micron Technology acted fraudulently.  The allegations, if true, would potentially support a finding that Micron Technology negligently omitted certain information or breached its contract with S2 Automation.  Nevertheless, as currently pled, the allegations do not articulate, as rule 9(b) requires, why Micron Technology acted fraudulently.   For instance, Micron Technology may have intentionally breached the contract in a way -- efficient breach -- that injured S2 Automation without acting fraudulently.  Thus, the Court will grant the Motion as to the fraud claim involving the Inventory transaction.

## II.      S2 AUTOMATION HAS NOT MET RULE 9(b)'S PLEADING STANDARDS AS TO THE ALLEGED FRAUD INVOLVING THE AERO TRACK CAR TRANSACTION.

The allegations related to the Aero Track car transaction are as follows:  "In mid-May 2011, just prior to the termination of S2's Agreements, Micron's Operational Manager, Or Bessor, became concerned that Micron would not have enough Aero Track Car Kits and Batteries to continue to operate after S2 was no longer under contract."  Complaint ¶ 27, at 5.  Bessor "agreed to pay S2 for

twelve Aero Car part kits and ten batteries . . . if S2 would order and provide the parts."  Complaint ¶ 28, at 5.  "S2 agreed to and did order and produce the requested parts and batteries in order to keep the chip manufacturing process from stopping with the resulting loss of production."  Complaint ¶ 28, at 5.  "Following delivery of the requested parts, Micron has repeatedly refused to pay for the parts they ordered and requested."  Complaint ¶ 29, at 5.

At the hearing, S2 Automation clarified that it was relying on a theory of express misrepresentation as to this transaction.  The allegations meet some of rule 9(b)'s requirements. They indicate when the alleged fraud occurred, as they refer to the event occurring "in mid-May 2011, just prior to the termination of S2's Agreements."  Complaint ¶ 27, at 5.  They state who made the allegedly fraudulent statements -- Bessor.  See Complaint ¶ 27, at 5.

Nevertheless, the allegations do not satisfy certain requirements that rule 9(b) imposes.  They do not reveal where the allegedly fraudulent omission occurred.  The omission of that information would not, depending on the level of detail in S2 Automation's surrounding allegations, automatically make S2 Automation's pleadings inadequate under rule 9(b).  See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co., 631 F.3d 436, 442 (3d Cir. 2011)("Yet, because courts and litigants often erroneously take an overly rigid view of the formulation [of rule 9(b)], we have also observed that the requisite information . . . may vary on the facts of a given case.").  S2 Automation's allegations, however, have other deficiencies that make them fall short of rule 9(b)'s heightened pleading standards.  S2 Automation alleges generally that Bessor was "concerned" before Micron Technology terminated its contract with S2 Automation that the company would not have enough Aero Track Car Kits and Batteries to continue to operate after S2 Automation was no longer under contract.  Complaint ¶ 27, at 5.  There are no allegations, however, that Bessor, speaking on Micron Technology's behalf, knew that Micron Technology would not

follow through on its obligations to pay for the Aero Track materials.  S2 Automation alleges that Micron Technology did not ultimately follow through with that promise, but the allegations in the Complaint do not distinguish that allegedly fraudulent conduct from an intentional or efficient breach of contract.  There is no allegation that Bessor knew at that time that Micron Technology would not perform pursuant to the agreement relating to the Aero Track materials.

To prove fraudulent misrepresentation in New Mexico, a plaintiff must show: (i) a misrepresentation of fact; (ii) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation; (iii) intent to deceive and to induce reliance on the misrepresentation; and (iv) detrimental reliance on the misrepresentation.  See Applied Capital, Inc. v. Gibson, 558 F.Supp.2d 1189, 1200 (D.N.M.)(Browning, J.)(citing Williams v. Stewart, 137 N.M. 420, 429, 112 P.3d 281, 290 (Ct. App. 2005)).  New Mexico courts have indicated that they would permit liability for fraud if a party, when speaking to their future intention to follow through with an act, states that they intend to take the act when they have no such intention.  See Meiboom v. Carmody, 134 N.M. 699, 702, 82 P.3d 66, 70 (Ct. App. 2003).  As the Court of Appeals of New Mexico stated in a parenthetical, when quoting a 1936 Supreme Court of New Mexico decision:

> According to the weight of authority, if the person making the promise or statement as to a future event is guilty of an actual fraudulent intent, and makes the promise or misrepresentation with the intention of deceiving and defrauding the other party, and accomplishes this result, to the latter's injury, fraud may, under many circumstances, be predicated thereon, notwithstanding the future nature of the representations.

Meiboom v. Carmody, 134 N.M. at 702, 82 P.3d at 70 (quoting Telman v. Galles, 41 N.M. 56, 61, 63 P.2d 1049, 1052 (1936))(internal quotation marks omitted).  To satisfy rule 9(b), S2 Automation would need to link its fraud allegations with such a theory, or some other appropriate fraud theory, under New Mexico law.  As the Court has articulated in the past:

> Rule 9(b) seeks to force the plaintiff to state with particularity what is unique about fraud -- <u>fraudulent conduct</u>. Rule 9(b) requires the plaintiff to <u>explain why the misrepresentation was intentional or reckless</u>, and it does so, usually, <u>by averring what the defendant knew when it made the misrepresentation</u>. That allegation should be done with particularity.

<u>City of Raton v. Ark. River Power Auth.</u>, 600 F.Supp.2d at 1142 (emphasis added).  There are no allegations of fraudulent conduct here.  Rule 9(b) requires S2 Automation "to state with particularity what is unique about fraud -- fraudulent conduct."  <u>City of Raton v. Ark. River Power Auth.</u>, 600 F.Supp.2d at 1142.  None of S2 Automation's allegations rise to the level of fraudulent conduct, as it is equally plausible there was some kind of intentional breach of contract or negligent misrepresentation rather than fraud.  There is a general statement of what Bessor agreed to do -- order some Aero Track car parts -- but the Complaint contains no other details that indicate why this statement was fraudulent.  There are no allegations about Bessor's state of mind or what information was available to Bessor that might not have been available to S2 Automation.  While it is possible Bessor never intended to follow through with his representations in such a way that he acted fraudulently, there are no allegations to that effect.  Thus, the Court will grant the Motion as to the Aero Track car transaction.

## III.   THE COURT WILL GRANT S2 AUTOMATION LEAVE TO AMEND ITS PLEADINGS.

Under rule 15(a), the court should freely grant leave to amend a pleading where justice so requires.  <u>See</u> <u>In re Thornburg Mortg., Inc. Sec. Litig.</u>, 265 F.R.D. 571, 579-80 (D.N.M. 2010)(Browning, J.); <u>Youell v. FNU Russell</u>, No. 04-1396, 2007 WL 709041, at *1-2 (D.N.M. Feb. 14, 2007)(Browning, J.); <u>Burleson v. ENMR-Plateau Tele. Coop.</u>, No. 05-0073, 2005 WL 3664299, at *1-2 (D.N.M. Sept. 23, 2005)(Browning, J.).  The Supreme Court of the United States has stated that, in the absence of an apparent reason, such as "undue delay, bad faith or dilatory motive . . .

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given.  Fomen v. Davis, 371 U.S. 178, 182 (1962).  Furthermore, the Tenth Circuit has held that district courts should grant a plaintiff leave to amend when doing so would yield a meritorious claim.  See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001).  See also In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.

S2 Automation has specifically requested leave to amend its pleadings if the Court grants the Motion.  The Court believes granting S2 Automation leave to amend its pleadings as to its fraud claim is appropriate.  As Professor Moore has stated, when a plaintiff fails to comply with rule 9(b), "the pleader usually will be permitted or have the right to amend to bring the pleading into compliance with the requirements of Rule 9(b)."  2 J. Moore, supra, § 9.03[4], at 9-33.  The Court sees no grounds here to deviate from that standard practice.  Micron Technology argues that the proper course of action for S2 Automation to request leave to amend was for S2 Automation to preemptively file a motion requesting leave to amend before the Court granted the motion to dismiss.  Micron Technology argues that, by requesting leave to amend in its Response, S2 Automation violated its obligation to meet and confer with opposing counsel to determine if such a request would be unopposed.  The Court sees no basis in the Federal Rules of Civil Procedure or local rules for the requirements Micron Technology seeks to enforce.  Parties should not have to preemptively file motions seeking leave to amend when they do not know how the Court will resolve a motion to dismiss.  Such a practice would increase needless filings when the Court may not grant the motion to dismiss -- which would eliminate the need for a motion seeking leave to amend.  Likewise, the obligations to meet and confer with opposing counsel to determine whether a motion would be unopposed apply when a party files a motion and not when they are defending

-19-

against the opposing party's motion.  See D.N.M.LR-Civ. 7.1(a) ("Movant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied." (emphasis added)).  There is no such requirement that a plaintiff must request leave to amend by filing a separate motion as opposed to requesting leave to amend in a response to a motion to dismiss.  When Micron Technology is the one who filed the opposed motion to dismiss that necessitated the need for amendment, the Court sees no basis for imposing the restrictions on S2 Automation that Micron Technology has argued the Court should apply.

Additionally, the Court concludes there is no sound reason to require S2 Automation to submit a proposed pleading before amending its pleadings, because courts should freely give leave to amend and because the allegations surrounding this misrepresentation claim do not rise to the level of complexity that the Court would have to invest a disproportionate amount of resources if another motion to dismiss became necessary.  It may be that, regardless what the Court does, it will have to decide another motion on the adequacy of the fraud allegations -- as part of a motion to amend or a motion to dismiss.  If the Court requires S2 Automation to move first, the Court guarantees that it will have to decide the issue.  If the Court allows amendment without a motion, maybe Micron Technology will look at the pleading and decide to proceed to discovery to flesh at the case.  Rule 9(b) is not a substitute for discovery.  Cf. United States v. Gustin-Bacon Div. Certainteed Prods. Corp., 426 F.2d 539, 543 (10th Cir. 1970)("Where, as here, the complaint contains facts reflecting a pattern or practice of racial discrimination, a Rule 12(e) motion is inappropriate and discovery ought to proceed . . . .").  Also, the Court has not held an initial scheduling conference and has not set deadlines for amendments of pleadings.  The case is at a very early stage, and S2 Automation and Micron Technology are not in a significantly different position than parties at the beginning of a case.  The Court should not require S2 Automation to do

-20-

something it would not have to do at the beginning of the case, and it, at this stage, should not have

to file a motion to amend its pleadings under these circumstances.

       **IT IS ORDERED** that  the Defendant's Motion to Dismiss, filed November 18, 2011 (Doc.

7), is granted.  The Court will, however, grant Plaintiff S2 Automation LLC leave to amend its

pleadings.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alicia L. Gutierrez
Moses, Dunn, Farmer & Tuthill
Albuquerque, New Mexico

*-- and --*

Martin K. Holland
Holland Law, P.C.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Bradford C. Berge
Holland & Hart, LLP
Santa Fe, New Mexico

*-- and --*

Erik F. Stidham
Scott E. Randolph
Holland & Hart, LLP
Boise, Idaho

    *Attorneys for the Defendant*