## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

S2 AUTOMATION LLC,

       Plaintiff,

vs.                                       No. CIV 11-0884 JB/WDS

MICRON TECHNOLOGY, INC.,

       Defendant.

and

MICRON SEMICONDUCTOR ISRAEL, LTD.

       Counterclaimant in Intervention,

vs.

S2 AUTOMATION, LLC, S2 AUTOMATION
ISRAEL, LTD, YOSEF ASTANOVSKY,

       Counterdefendants in Intervention.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Micron Technology, Inc.'s Motion for Entry of Protective Order, filed May 10, 2012 (Doc. 45)("Motion"). The Court held a hearing on June 15, 2012. The primary issues are: (i) whether there is good cause to enter a protective order; (ii) whether the Court should require the parties to show good cause each time they seek to designate a document as confidential; (iii) whether the Court should require the parties to use Defendant Micron Technology Inc.'s proposed protective order as a basis for the protective order they submit to the Court; (iv) whether the Court should require the parties' protective order to include a two-tiered designation system for regular confidential documents and attorneys' eyes only documents;

and (v) whether the Court should require each party to notify the other side when their experts are viewing a confidential document and notify the other side what confidential document their expert is viewing. The Court will grant in part and deny in part the Motion seeking a protective order. The Court concludes that Micron Technology has met its burden to show good cause that a protective order is appropriate. The Court will not require the parties to show good cause each time they designate a document as confidential, because such a requirement would be impracticable from a case administration standpoint and would be counterproductive to the speedy resolution of this case. The Court will require the parties to use Micron Technology's proposed protective order as a baseline for the protective order they submit to the Court, because the proposed protective order already provides for a two-tiered designation system for confidential information and attorneys' eyes only information. Such a two-tiered designation system is also appropriate in light of the intellectual property information and other sensitive commercial information, that the parties will be exchanging during discovery. The protective order the parties submit to the Court should not require parties to obtain the opposing side's prior approval to have their experts review attorneys' eyes only information or require parties to notify the opposing side which documents it is showing to its experts. Once the parties complete the protective order, they should submit it with the Court. If Plaintiff S2 Automation LLC concludes that it has good grounds to seek a modification of the protective order, in case Micron Technology is acting improperly during the discovery process, it may approach the Court with its request for modification.

## FACTUAL BACKGROUND

There have been two sets of claims asserted in this suit. First, S2 Automation asserts claims against Micron Technology. See Amended Complaint for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Conversion, Fraudulent Misrepresentation, Negligent

Misrepresentation, and Unjust Enrichment, filed April 12, 2012 (Doc. 36)("Amended Complaint"). Second, Intervenor Micron Semiconductor Israel, Ltd. proposes to assert claims against S2 Automation, S2 Automation Israel, Ltd. ("S2 Israel"), and Yosef Astanovsky.  See Counterclaim in Intervention by Micron Semiconductor Israel, Ltd, filed May 3, 2012 (Doc 42)("Proposed Counterclaim").

### 1.    Facts Underlying S2 Automation's Claims Against Micron Technology.

The Court recites the factual background in this section in the light most favorable to S2 Automation, the plaintiff.  "This case arises out of a dispute between the parties involving the operation of a Micron owned computer chip manufacturing facility in Qiryat-Gat, Israel," which the parties refer to as the "Fab 12" facility.  Amended Complaint ¶ 3, at 1.  S2 Automation is a New Mexico based company "with its principal place of business in Sandoval County, New Mexico." Amended Complaint ¶ 1, at 1.  It "provide[s] goods and services associated with chip manufacturing processes to Intel Corporation" for Intel's facilities at various locations throughout the world. Amended Complaint ¶ 6, at 2.  Intel previously owned the Fab 12 facility.  See Amended Complaint ¶ 8, at 2.  In 2008, "Intel sold their Fab 12 production facility to Numonyx."  Amended Complaint ¶ 9, at 2.  "In July 2008, S2 [Automation] entered in to a supplier agreement called the Total Spares Management Agreement ('TSM') for the Fab 12 facility."  Amended Complaint ¶ 10, at 2.  "On or about December 2, 2008, S2 [Automation] and Numonyx entered in to a second agreement called the Statement of Work ('SOW') memorializing the services to be provided by S2 [Automation]." Amended Complaint ¶ 11, at 2.  "Pursuant to the terms of the SOW, S2 [Automation] took ownership, possession, and control of all of Numonyx's parts and equipment inventory and laboratory tools," which the parties refer to as the "Inventory."  Amended Complaint ¶ 12, at 2. "The TSM gave S2 [Automation] the option of repairing, maintaining, or discarding the Inventory

it acquired from Numonyx." Amended Complaint ¶ 13, at 2.

Micron Technology "subsequently purchased Fab 12 from Numonyx in 2010 and assumed all of Numonyx's contract obligations, including the S2 TSM and SOW agreements," which the parties refer to as the "S2 Agreements." Amended Complaint ¶ 17, at 3. "Micron [Technology] did not disclose to S2 [Automation] that [Micron Israel] or any other entity was acquiring the Numonyx assets or that the existing contracts would be assigned to any entity other than Micron [Technology]." Amended Complaint ¶ 21, at 4. "S2 [Automation] was never informed prior to termination of the S2 Agreements that Micron Israel was a party to any agreement and that Micron Israel was anything other that a shipping destination, billing and payment agent performing services for Micron [Technology]." Amended Complaint ¶ 24, at 4. "S2 [Automation] was misled by the affirmative representations as set forth above regarding Micron [Technology]'s purchase of the Numonyx and contracts and its affirmative representations that nothing would change." Amended Complaint ¶ 25, at 4. S2 Automation represents, that following the transfer, Micron Technology "attempted to impose repair and service obligations on S2 [Automation] that were not part of the S2 Agreements." Amended Complaint ¶ 30, at 5. "S2 [Automation] refused to undertake the out of scope work not set forth in the S2 Agreements without amendments to the S2 Agreements, resulting in a deterioration of the S2 [Automation]'s relationship with Micron [Technology]." Amended Complaint ¶ 31, at 5. "On November 30, 2010, Micron [Technology] purported to terminate S2 [Automation] 'for cause' in order to attempt to escape its termination payment obligations pursuant to the SOW." Amended Complaint ¶ 37, at 6. S2 Automation represents, however, that "S2 [Automation] was meeting the measurable performance requirements set forth in the SOW and the metrics establishing S2 Agreement compliance were reported to Micron [Technology] in weekly meetings." Amended Complaint ¶ 38, at 6.

-4-

"As the S2 Agreements termination date approached, Micron [Technology]'s representatives . . . arranged for a meeting to conduct a review of S2 [Automation]'s Inventory." Amended Complaint ¶ 41, at 6.  "The stated purpose of the review process was to determine what part of the Inventory Micron [Technology] would purchase so that S2 [Automation] could make arrangements to remove the remaining portion of the Inventory."  Amended Complaint ¶ 41, at 6. Micron Technology representatives acknowledged that S2 Automation owned some of the Inventory stored at the Fab 12 facility.  See Amended Complaint ¶ 42, at 6.  Further, no Micron Technology representatives indicated that Micron Technology challenged S2 Automation's ownership of the Inventory.  See Amended Complaint ¶ 44, at 7.  Following the Inventory review process, "Micron [Technology] took the position that S2 [Automation] would need to document its ownership of the Inventory" and that "S2 [Automation] no longer had access to Fab 12 or the Micron [Technology] computer systems that would assist it" in documenting ownership.  Amended Complaint ¶ 52, at 8. "Micron [Technology] has failed and refused to pay for any Inventory amounts despite demands that it do so."  Amended Complaint ¶ 57, at 9.

"In mid-May 2011, just prior to the termination of S2 [Automation]'s Agreements, Micron [Technology]'s Operational Manager, Or Bessor, became concerned that Micron [Technology] would not have enough Aero Track Car Kits and Batteries (collectively 'Track Cars')[1] to continue to operate after S2 [Automation] was no longer under contract."  Amended Complaint ¶ 63, at 9-10. "The uninterrupted operation of the Track Cars production process is critical to the semiconductor fabrication process."  Amended Complaint ¶ 63, at 10.  "Bessor therefore directed S2 [Automation] to order Track Cars and represented that Micron [Technology] would pay S2 [Automation] for

---

[1]Track Cars are "small transport vehicles that carry semiconductor wafers around the production facility."  Amended Complaint ¶ 63, at 10.

unused Track Car part kits and battery packs . . . ."  Amended Complaint ¶ 66, at 10.  "Following delivery of the parts, Micron [Technology] has refused to pay for the Track Cars it ordered but has instead attempted to use the payment as leverage to reduce the termination fees due to S2 [Automation] pursuant to the terms of the S2 Agreements."  Amended Complaint ¶ 69, at 10.

In support of its Breach of Contract claim, S2 Automation asserts that Micron Technology "assumed the S2 Agreements from Numonyx and has breached those agreements by failing to pay amounts owed to S2 [Automation]."  Amended Complaint ¶ 78, at 11.  S2 Automation also asserts that Micron Technology "breached its duty of good faith and fair dealing with respect to its agreements with S2 [Automation]."  Amended Complaint ¶ 82, at 12.  S2 Automation further contends that Micron Technology "has improperly converted the Inventory, Aero Track Cars, and Tool Kits."  Amended Complaint ¶ 86, at 12.  In support of its fraudulent misrepresentation claim, S2 Automation asserts that Micron Technology "intentionally failed to disclose key facts to S2 [Automation] in conjunction with the S2 Agreements."  Amended Complaint ¶ 89, at 12.  In the alternative, S2 Automation contends that the material misrepresentations "were negligent misrepresentations and omissions made with the intent to deceive S2 [Automation] into cooperating during the S2 Agreement termination period."  Amended Complaint ¶ 97 at 14.  Finally, S2 Automation asserts that Micron Technology "has been unjustly enriched by use of the S2 Inventory, Aero Track Cars, and Tool Boxes without paying for the items."  Amended Complaint ¶ 102, at 14.

## 2.   Facts Underlying Micron Israel's Proposed Claims Against S2 Automation.

The Court recites the factual background in this section in the light most favorable to Micron Israel, who has intervened to assert counterclaims.  "Micron Israel, a wholly-owned subsidiary of Micron [Technology], owns and operates a semiconductor manufacturing facility based in Kiryat Gat, Israel," which the parties refer to as Fab 12.  Proposed Counterclaim ¶¶ 1, 17, at 6, 8.  "In 2010,

Micron Semiconductor B.V. entered into an agreement whereby it received all of the shares in Numonyx." Proposed Counterclaim ¶ 20, at 8. "Micron Semiconductor B.V. is a wholly owned subsidiary of Micron Technology." Proposed Counterclaim ¶ 19, at 8. "Through that transaction, Micron Israel . . . assumed the rights of Numonyx Israel related to Fab 12, including all rights against S2 [Automation], S2 Israel, and Astanovsky." Proposed Counterclaim ¶ 21, at 8. "From mid-2010, after the Numonyx transaction closed, to the present, Micron Israel has owned and operated Fab 12, where it develops and produces semiconductor wafers in a highly automated environment." Proposed Counterclaim ¶ 22, at 8.

"Fab 12 uses a system known as Automated Materials Handling System ('AMHS') to transport the wafers through the automated manufacturing process." Proposed Counterclaim ¶ 23, at 8. Astanovsky served as the manager of the AMHS at Fab 12 since approximately March 2008. See Proposed Counterclaim ¶ 27 at 9. Micron Israel asserts that, in locating a vendor for the AMHS, Astanovsky "knowingly and purposefully directed the work to S2 [Automation] and S2 Israel for his own personal gain." Proposed Complaint ¶ 29, at 9. "The parties memorialized their agreement in a document styled as Additional Commercial Terms and Conditions to Numonyx Corporation Purchase Agreement Goods & Services Number XXX ('TSM Agreement')." Proposed Counterclaim ¶ 32, at 9. "The TSM agreement required S2 [Automation] to maintain the proper inventory of spare parts at Fab 12 in case they were needed for repair or maintenance so that Fab 12 could operate without risk of unscheduled downtime." Proposed Counterclaim ¶ 33, at 10. "The TSM agreement did not transfer ownership of the parts owned by Numonyx Israel to S2 [Automation]." Proposed Counterclaim ¶ 35, at 10.

"Throughout the late summer and fall 2008, Numonyx Israel and S2 [Automation] explored the possibility of expanding S2 [Automation]'s relationship to a full service contract, which meant

that S2 [Automation] would be responsible for providing all necessary parts and maintenance on the AMHS."  Proposed Counterclaim ¶ 37, at 10.  "In December 2008, Numonyx Israel and S2 [Automation] entered into a series of agreements memorializing this new relationship including a Scope of Work Agreement for Equipment Service ('SOW') and a document styled as Numonyx Corporation Purchase Agreement ('Purchase Agreement')."  Proposed Counterclaim ¶ 40, at 10-11.  "The SOW required S2 [Automation] to provide preventative and sustaining service and maintenance . . . ."  Proposed Counterclaim ¶ 41, at 11.  "S2 [Automation] assumed the risk of production increases under the SOW, and was responsible for providing appropriate parts and service to accommodate increase or decreases in production at Fab 12."  Proposed Counterclaim ¶ 45, at 11.

    "S2 [Automation] failed to perform as agreed and breached its agreements."  Proposed Counterclaim ¶ 49, at 12.  "Instead, S2 [Automation], S2 Israel, and Astanovsky conspired with each other to defraud Micron Israel, cannibalize parts and equipment owned by Micron Israel, manipulate maintenance records, and otherwise act to harm Micron Israel's interests."  Proposed Counterclaim ¶ 50, at 12.  Micron Israel asserts that the "misrepresentations and acts of concealment by S2 [Automation], S2 Israel, and Astanovsky occurred at Fab 12 between 2008 and 2011."  Proposed Counterclaim ¶ 53, at 14.  As an example, "in 2009, S2 [Automation], S2 Israel, and Astanovsky . . . knowingly and intentionally concealed the fact that upgrades had not been installed as represented."  Proposed Counterclaim ¶ 52, at 13.

    "In November 2010, Micron Israel provided notice to S2 [Automation] of its intent to terminate the parties' contractual relationship, which termination was effective May 2011."  Proposed Counterclaim ¶ 55, at 14.  "After Micron Israel provided S2 [Automation] with notice of termination, S2 [Automation] began further sabotaging Micron Israel and acting to cause damage

-8-

to Micron Israel." Proposed Counterclaim ¶ 56, at 14. As an example of these actions, "S2 [Automation], S2 Israel, and Astanovsky wrongfully, willfully, and without Micron Israel's consent discarded or destroyed valuable parts and equipment owned by Micron Israel." Proposed Counterclaim ¶ 57, at 14. The "wrongful conduct forced Micron Israel to terminate the contractual relationship between Micron Israel and S2 [Automation]." Proposed Counterclaim ¶ 59, at 15. Micron Israel was "forced at a substantial cost to hire a replacement vendor to restore the damage caused by S2 [Automation]'s misrepresentations, breaches of contract, and unfair trade practices and to purchase additional spare parts that had been wrongfully depleted and not replaced by S2 [Automation], S2 Israel, and Astanovsky." Proposed Counterclaim ¶ 59, at 15. "The replacement vendor has charged Micron Israel additional monies to perform maintenance and service that should have been performed by S2 [Automation] under the full service agreements." Proposed Counterclaim ¶ 60, at 15. "Micron Israel would not have had to expend these funds had S2 [Automation] properly maintained and repaired the AMHS and not engaged in the wrongful conduct alleged." Proposed Counterclaim ¶ 62, at 16. "At times relevant to [Micron Israel's] claim, the AMHS experienced numerous system and equipment failures that could have been prevented had S2 [Automation] properly maintained and serviced the AMHS." Proposed Counterclaim ¶ 67, at 16.

## PROCEDURAL BACKGROUND

On October 3, 2011, S2 Automation filed its Complaint for Breach of Contract, Conversion, Misrepresentation and Unjust Enrichment. See Doc. 1 ("Original Complaint"). On April 12, 2012, S2 Automation filed its Amended Complaint. See Doc. 36 ("Amended Complaint"). S2 Automation asserts six causes of action against Micron Technology: (i) Breach of Contract; (ii) Breach of Duty of Good Faith and Fair Dealing; (iii) Conversion; (iv) Fraudulent

Misrepresentation; (v) Negligent Misrepresentation; and (vi) Unjust Enrichment.  See Amended Complaint at 11-15.

On May 10, 2012, Micron Technology filed its Motion seeking a protective order.  See Doc. 45.  It relates that "S2 [Automation] continues to resist entry of an acceptable protective order." Motion at 1.  Micron Technology states that it has "proposed a protective order that would have protected both parties from a disclosure of their confidential information while allowing the parties to move forward with litigating their claims and defenses as efficiently as possible."  Motion at 1. It notes that S2 Automation has insisted "on terms that are unreasonable and not calculated to protect Micron from the risk of improper disclosure of its confidential information and that of its subsidiaries and suppliers."  Motion at 2.  Micron Technology requests: (i) "that the Court enter a protective order, in the form attached hereto as Exhibit 'A'"; and (ii) "that the Court order that the parties may submit documents containing confidential information under seal, in the manner permitted by the Court's electronic filing system."  Motion at 2.  Micron Technology asserts that rule 26(c) of the Federal Rules of Civil Procedure contemplates the use of protective orders for confidential information that the parties must exchange during information, including "a trade secret or other confidential research, development, or commercial information."  Motion at 4.  It contends that "[h]aving a blanket protective order in place can alleviate the burden on the Court and the parties, who would otherwise be forced to litigate motions for protective order on a piecemeal basis."  Motion at 4.  Micron Technology explains that it "is a global technology company that operates in the highly competitive semiconductor sector."  Motion at 5.  It relates that "one of [its] chief concerns is preserving the confidentiality of its manufacturing processes and operations." Motion at 5.  It notes that the "Fab 12 [facility] has rigorous security and confidentiality procedures in place that are consistent with Micron [Technology]'s need to protect its intellectual property."

Motion at 5.  Micron Technology asserts that it "has proposed a two-tier protective order that adequately protects its need to preserve confidentiality while allowing the parties to engage in discovery in connection with this case."  Motion at 5.

More specifically, the proposed Protective Order, filed May 10, 2012 (Doc. 45-1), states:

1.      Each party to this litigation or third party that produces or discloses any documents, materials, answers to interrogatories, responses to requests for admission, trial testimony and transcripts thereof, deposition testimony and transcripts thereof, or any other information that the disclosing party believes contains Confidential Information may designate such information as "Confidential" or "Highly Confidential -- Attorneys' Eyes Only."

    a.      A disclosing party may designate information as "Confidential" only if, in the good faith belief of such party and its counsel, the unrestricted disclosure of such information could be potentially prejudicial to the business or operations of the party; and

    b.      A disclosing party may designate information as "Highly Confidential -- Attorneys' Eyes Only" only if, in the good faith belief of such party and its counsel, the document or information contains information considered to be most sensitive by the party, including without limitation trade secret or other highly confidential research, development, financial or other commercial information.

Protective Order ¶ 1, at 2-3.  The proposed Protective Order also provides:

4.      Information designated "Highly Confidential -- Attorneys' Eyes Only" shall be viewed only by:

    a.      Outside counsel of record for the parties;

    b.      Micron in-house legal personnel with a need to know the information in connection with alternative dispute resolution proceedings, settlement negotiations, discovery, preparation for trial, or trial; and

    c.      Independent experts under the conditions set forth herein.

Protective Order ¶ 4, at 4.  The proposed Protective Order also requires a party to seek the other party's approval to have its expert view information designated as highly confidential and attorneys' eyes only.  See Protective Order ¶ 5, at 4.  A broader range of individuals can view information

"designated as 'Confidential.'"  Protective Order ¶ 6, at 4-5.

Micron Technology relates that S2 Automation's proposed changes to the Protective Order

are "unacceptable":

> For example, S2's proposed protective order would only allow for designation of information as attorneys' eyes only where "there is a real and justifiable basis for needing to protect the information when balanced against the other Parties['] need to have access to the information in order to pursue and/or to protect its interest in the litigation." S2 also proposed that the party seeking to designate documents under the protective order would be forced to pay expert costs incurred by the other party resulting from the designation.  S2 proposed that the confidentiality designation terminate automatically if the information becomes "otherwise known within the public domain."  This is in contrast to Micron's proposed form, which would require the parties' agreement or this Court's order before the designation may be removed. (Ex. A ¶ 3.)
>
> Additionally, S2's proposed order eliminated the restrictions on who may review information designated as "Confidential" and would allow any person who had already had "access" to information designated as "Confidential" or "Highly Confidential -- Attorneys' Eyes Only" to review the information without limitation. S2 also proposed that "This Order shall not be binding upon the independent decision regarding these matters by any other court in any related litigation."  S2 also eliminated the limitation that designated materials only be used in connection with the litigation, further raising the specter that S2 intends to use information obtained in this action for its own unrelated purposes.  Finally, S2 proposed that designated materials could continue to be used by the parties in "any related litigation occurring within or without the United States[.]"  Such a provision is particularly problematic given that S2 has requested that the order not be binding on courts in other jurisdictions.

Motion at 7-8 (citations omitted).

On May 23, 2012, S2 Automation filed its S2's Response to Motion for Protective Order and

Motion for Clawback.  See Doc. 59 ("Response").  S2 Automation "disagrees with Micron

[Technology]'s insistence that it should be allowed to self designate virtually all of the documents

in the litigation as confidential without any showing of good cause and to impose restrictions on

their use in a manner that will impair S2's ability to prosecute its claims against Micron

[Technology]."  Response at 1.  It argues that "Micron [Technology] bears the burden to

demonstrate that particular documents deserve protection as trade secrets or confidential information." Response at 2. S2 Automation relates that, "[d]espite numerous requests that [Micron Technology] produce documents it does not claim are confidential, it has refused to produce anything at all." Response at 2. S2 Automation contends that the "Non Disclosure Agreement . . . executed by S2 [Automation] and Micron [Technology]'s predecessor in interest illustrates the appropriate level of confidentiality and protection that should be given the documents at issue herein." Response at 2.[2] S2 Automation asserts that the applicable limits under any protective order should be that "the receiving party agrees to limit disclosure to its own employees and related companies and to outsiders with both a need to know and a willingness to abide by the non-disclosure provisions." Response at 3. S2 Automation contends that Micron Technology "has

---

[2]The Corporate Non-Disclosure Agreement (dated December 1, 2008), filed May 23, 2012 (Doc. 59-1), contains the following provision regarding handling confidential information:

Exceptions to the Obligation of Confidentiality. The receiving party will not be liable for the disclosure of any Confidential Information which is:

(a)   generally made available publicly or to third parties by the disclosing party without restriction on disclosure;

(b)   rightfully received from a third party without any obligation of confidentiality;

(c)   rightfully known to the receiving party without any limitation on disclosure prior to its receipt from the disclosing party;

(d)   independently developed by employees of the receiving party; or

(e)   required to be disclosed in accordance with applicable laws, regulations, court, judicial or other government order, provided that the receiving party shall give to the disclosing party reasonable notice prior to such disclosure and shall comply with any applicable protective order.

Corporate Non-Disclosure Agreement ¶ 4, at 2.

summarily rejected [its] proposed Order, largely on the basis of bald statements regarding the 'competitive business climate' in which it operates."  Response at 3.  S2 Automation asserts that it and Micron Technology "are not direct competitors, and there is simply no need for 'eyes only' protection for any of the documents at issue."  Response at 7.  It argues that "[e]stablishing a two tiered 'Attorney Eyes Only' category for documents does nothing more than complicate the litigation process and increase the cost and difficulty of pursuing the litigation."  Response at 7.  S2 Automation argues that Micron Technology "should not be permitted to designate documents as confidential without making the required showing of good cause and probability of specific harm from disclosure," and asserts that "entire documents are not necessarily entitled to blanket confidentiality designation," as the designation should "be limited to those portions of a document for which the required showing is made."  Response at 9.  S2 Automation opposes any requirement that it obtain prior approval from Micron Technology to show documents to its experts.  See Response at 11-12.  On June 11, 2012, Micron Technology filed its Reply in Support of Micron Technology, Inc.'s Motion for Entry of Protective Order.  See Doc. 67.

At the hearing on June 15, 2012, the Court stated that, in situations where the parties cannot agree on a confidentiality order, it typically directs them to the one provided in section 40.27 of the Manual for Complex Litigation (Fourth).  See Transcript of Hearing at 74:1-19 (taken June 15, 2012)(Court)("Tr.").[3]  The Court stated that it was inclined to permit a two-tiered system that included a tier for attorneys' eyes only information.  See Tr. at 75:7-23 (Court).  The Court noted that, if this system does not work for S2 Automation, it could come back to the Court and seek modification of the protective order.  See Tr. at 75:7-23 (Court).  S2 Automation stated that it would

_____

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

prefer that Micron Technology justify each time it designates a document as confidential.  See Tr. at 76:8-10 (Holland).  The Court responded that the problem with that approach is that it is more efficient to make a confidentiality order self-executing rather than having Micron Technology justify to the Court each time it seeks to make a document confidential.  See Tr. at 76:11-13 (Court).  The Court stated that, if S2 Automation believes that Micron Technology is acting improperly and designating every document as confidential, it may return to the Court, and the Court will address the situation.  See Tr. at 76:11-77:3 (Court).  The Court noted that, while parties sometimes initially resist a two-tiered protective order, it often works for them without any need to bring any disputes before the Court.  See Tr. at 76:18-77:3 (Court).  S2 Automation noted that Micron Technology has indicated that it intends to designate over 800 documents as confidential.  See Tr. at 77:6-9 (Holland).  The Court responded that such a practice is not unusual and related that merely because the documents may be designated as confidential does not mean they will be restricted to attorneys' eyes only.  See Tr. at 77:10-20 (Court, Holland).  The Court explained that a standard non-disclosure agreement in a contract is much different than a judicial confidentiality order necessary to effectuate the litigation process.  See Tr. at 77:21-78:3 (Holland, Court).

S2 Automation expressed concern about having to receive Micron Technology's prior approval to have experts look at the documents and telling Micron Technology which documents it will show its experts.  See Tr. at 78:22-79:11 (Holland, Court).  The Court asked Micron Technology if it could remove those provisions, and Micron Technology said that it could remove these provisions.  See Tr. at 79:24-80:3 (Court, Berge).  S2 Automation noted that it had some concerns about the effect of provisions in the protective order that would limit it in other jurisdictions, such as an Israeli court.  See Tr. at 80:4-14 (Court).  The Court responded that S2 Automation could tell the other court that it has obligations with which it must comply pursuant to

an order from this Court.  See Tr. at 80:15-21 (Court).  S2 Automation stated that it would prefer to have some time to look at the example protective order in the <u>Manual for Complex Litigation Fourth,</u> and the Court responded that the example in that resource will not be helpful, because it does not have a two-tiered designation system.  See Tr. at 82:5-82:10 (Holland, Court).  The Court related that it would not preclude S2 Automation from returning to the Court with modifications to the protective order but said that the parties must use the basic form Micron Technology has proposed rather than some other form.  See Tr. at 82:14-25 (Court).  Micron Technology related that it has only identified a small number of documents that it intends to designate as attorneys' eyes only.  See Tr. at 83:1-5 (Berge, Court).

## LAW REGARDING PROTECTIVE ORDERS

"Federal district courts have broad discretion over discovery."  <u>Morales v. E.D. Etnyre & Co.,</u> 229 F.R.D. 661, 662 (D.N.M. 2005)(Browning, J).  Rule 26(c) provides that, upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," which order may include forbidding disclosure or discovery.  Fed. R. Civ. P. 26(c)(1)(A).  <u>Accord</u> <u>Miller v. Regents of the Univ. of Colo.,</u> 188 F.3d 518, 1999 WL 506520, at *12 (10th Cir. 1999)(unpublished table decision)("The district court is in the best position to weigh these variables and determine the appropriate limits because, unlike an appellate court, the district court has the ability to view firsthand the progression of the case, the litigants, and the impact of discovery on parties and nonparties.").  "Federal Rule of Civil Procedure 26(c) expressly limits who may move for a protective order to parties or the person from whom discovery is sought."  <u>SEC v. Dowdell,</u> 144 F.App'x 716, 722-23 (10th Cir. 2005)(unpublished)(noting that a third party may not move for a rule 26(c) protective order if it is not a party to the underlying action, has not intervened, or has not been served a subpoena seeking

discovery).  "It is the party seeking the protective order who has the burden to show good cause for a protective order."  Velasquez v. Frontier Med. Inc., 229 F.R.D. 197, 200 (D.N.M. 2005)(Browning, J.).  Accord Murphy v. Gorman, 271 F.R.D. 296, 303 (D.N.M. 2010)(Browning, J.).  The party seeking the protective order must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16 (1981)(internal quotation marks omitted).  Although rule 26(c) is silent as to the time within which the movant must file for a protective order, the United States Court of Appeals for the Tenth Circuit has held that "a motion under [rule] 26(c) for protection . . . is timely filed if made before the date set for production."  In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 669 F.2d 620, 622 n.2 (10th Cir. 1982)(quoting language from In re Halkin, 598 F.2d 176, 193 (D.C. Cir. 1979), overruled on other grounds by Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984)).

## ANALYSIS

The Court will grant the Motion seeking a protective order in part and deny it in part.  The Court concludes that Micron Technology has met its burden to show good cause that a protective order is appropriate.  The Court will not require the parties to show good cause each time they designate a document as confidential, because such a requirement would be impracticable from a case administration standpoint and would be counterproductive to the speedy resolution of this case. The Court will require the parties to use Micron Technology's proposed Protective Order as a baseline for the protective order they submit to the Court, because the proposed Protective Order already provides for a two-tiered designation system for confidential information and attorneys' eyes only information.  Such a two-tiered designation system is also appropriate in light of the intellectual property information and other sensitive commercial information that the parties will be exchanging

-17-

during discovery. The protective order the parties submit to the Court should not require parties to obtain the opposing side's prior approval to have their experts review attorneys' eyes only information or require parties to notify the opposing side which documents it is showing to its experts. Once the parties complete the protective order, they should submit it with the Court. If S2 Automation concludes that it has good grounds to seek a modification of the protective order, in case Micron Technology is acting improperly during the discovery process, it may approach the Court with its request for modification.

## I.   A PROTECTIVE ORDER IS APPROPRIATE TO PROTECT CONFIDENTIAL INFORMATION.

Rule 26(c) provides that, upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," which order may include forbidding disclosure or discovery. Fed. R. Civ. P. 26(c)(1)(A). Rule 26(c) also permits a court to enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). "It is the party seeking the protective order who has the burden to show good cause for a protective order." Velasquez v. Frontier Med. Inc., 229 F.R.D. at 200.

Micron Technology has shown good cause for entering a protective order. Gregory C. Tollefson, Senior Assistant General Counsel for Micron Technology, has stated the following in a declaration he has submitted with the Court:

> 5.   One of Micron's wholly-owned subsidiaries, Micron Semiconductor Israel, Ltd. ("Micron Israel"), owns and operates the manufacturing facility ("Fab 12") that is at-issue in this case.
>
> 6.   Fab 12 has rigorous security and confidentiality procedures in place that are consistent with Micron's and Micron Israel's need to protect their intellectual property, manufacturing processes, and operations. For example, Fab 12 is restricted from the public and all employees, contractors or other visitors

must be pre-screened and sign confidentiality agreements. These restrictive measures extend to subcontractors engaged by Micron Israel to perform services at Fab 12. Suppliers are required by Micron and its subsidiaries to sign non-disclosure agreements and, in the case of S2, sign additional agreements providing for confidentiality. As a supplier to Fab 12, S2 was subject to these strict confidentiality requirements.

Declaration of Gregory C. Tollefson in Support of Micron Technology, Inc.'s Motion for Entry of Protective Order and Motion for Entry of a Non-Waiver and Claw-Back Order at 2-3 (dated May 9, 2012)(Doc. 47)("Tollefson Declaration"). According to a declaration Scott E. Randolph, an attorney in Holland & Hart's Boise, Idaho office, has submitted, "[t]he two-tier approach was particularly important to Micron given that S2 has requested that Micron produce documents, including confidential contracts and pricing information of S2's competitors and other highly confidential and protected information." Declaration of Scott E. Randolph in Support of Micron Technology, Inc.'s Motion for Entry of Protective Order and Motion for Entry of a Non-Waiver and Claw-Back Order (dated May 10, 2012), filed May 10, 2012 (Doc. 48)("Randolph Declaration").

Intellectual property, trade secrets, and other sensitive commercial information, such as those Micron Technology seeks to protect, fall within the scope of permissible protective orders under rule 26(c). See Fed. R. Civ. P. 26(c)(1)(G); Am. Standard, Inc. v. Pfizer, Inc., 828 F.2d 734, 740 (Fed. Cir. 1987)(stating that confidential information includes trade secrets and marketing plans); Diamond State Ins. Co. v. Rebel Oil Co., Inc., 157 F.R.D. 691, 697 (D. Nev.1994)(holding that confidential information includes that which would cause substantial economic harm to a producer's competitive position). The Court acknowledges that there is no absolute privilege for trade secrets and similar confidential commercial information, see Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill, 443 U.S. 340, 362 (1979)("As with most evidentiary and discovery privileges recognized by law, 'there is no absolute privilege for trade secrets and similar confidential information.'"), but

that law does not mean that they are not the proper subject of a protective order, see Fed. R. Civ. P. 26(c)(1)(G) (permitting a court to enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way"); 6 J. Moore, Moore's Federal Practice § 26.104[1], at 26-511 (3d ed. 2012)("For example, competitive disadvantage is one type of harm cognizable under Rule 26(c), and a court may issue a protective order restricting disclosure of discovery materials to protect a party from being put at a competitive disadvantage.").  Other confidential commercial information that gives a competitive advantage is generally subject to protection under this rule as well.  See GTE Prods. Corp. v. Gee, 112 F.R.D. 169, 172 (D. Mass. 1986)("In short, I find no basis in law for the defendants' contention that they have the right to have confidential commercial information of competitors disclosed to them in addition to having the information disclosed to their attorneys.").

S2 Automation has expressed hesitancy to enter into a protective order, but the Court concludes that one is appropriate.  Micron Technology has provided evidence supporting the conclusion that it has sensitive commercial information that relates to the Fab 12 facility, which is heavily implicated in this case and which it takes significant precautions to protect.  Without the proper procedures in place in this litigation, particularly given that the federal court's docket is open to the public and that trade secrets may be lost if a party does not take precautions to protect them, the Court recognizes that not having a protective order in place could compromise Micron Technology's commercial position and legal rights.  It is much easier to address this situation preemptively, which is the underlying purpose of protective orders, rather than after Micron Technology has suffered harm.  The scope of discovery is broad, and, given that broad scope, it is sometimes necessary to have a protective order to reduce the risk that sensitive information parties produce to the other side remains confidential:

> The broad definition of relevance under Rule 26(b), reaching material that might lead to admissible evidence, and largely checked only by any applicable privileges, reduces the need for judicial rulings by leaving little basis for resisting most discovery demands.  At the same time, the seining effect of the broad definition of relevance can step hard on privacy.  The protective order, with its ability to limit the use of material produced in discovery, allows discovery to continue with little judicial involvement.  For example, a business might resist producing records disclosing its profit margins on products, understandably concerned about loss of competitive advantage.  Production under an order limiting use of the data can solve the problem.  It is quickly apparent that protective orders agreed to by counsel are of great utility.

6 J. Moore, supra § 26.101[1][a], at 26-499.  Discovery has gotten off track in this case, and one of the ways for the Court to put the case back on track to a speedy resolution, without requiring the Court to supervise every step of the discovery process, is to enter a protective order.  See 6 J. Moore, supra § 26.101[1][a], at 26-499 ("The protective order, with its ability to limit the use of material produced in discovery, allows discovery to continue with little judicial involvement.").

Furthermore, courts, as a practical matter, are more willing to find good cause to enter a protective order in complex commercial litigation:

> Nevertheless, most courts take a less stringent view of the "good cause" requirement for stipulated protective orders, particularly in complex litigation.  Under this more relaxed view, while it is technically correct that the burden of justifying the confidentiality of each document sought to be covered by the protective order is on the party seeking the order, that party need not make a document-by-document initial showing.  Instead, the court may enter a broad "umbrella" protective order on a threshold showing of good cause.  After documents are delivered, the opposing party may challenge the confidentiality of particular documents.  The party originally seeking the protective order would then have the burden of justifying the order with respect to the challenged documents.

6 J. Moore, supra § 26.104[2], at 26-514.  Accord Poliquin v. Garden Way, Inc., 989 F.2d 527, 532 (1st Cir. 1993)("But, in coping with the torrent of material often discovered but never used at trial, other judges require some general showing [for a protective order] by affidavit and then protect materials designated by one side, subject to challenge by the other.").  As the United States Court

of Appeals for the Third Circuit has similarly explained:

> It is correct that the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn Rule 26(c) on its head.  That does not mean, however, that the party seeking the protective order must necessarily demonstrate to the court in the first instance on a document-by-document basis that each item should be protected.  It is equally consistent with the proper allocation of evidentiary burdens for the court to construct a broad "umbrella" protective order upon a threshold showing by one party (the movant) of good cause.  Under this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential.  After the documents delivered under this umbrella order, the opposing party could indicate precisely which documents it believed to be not confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents.  The burden of proof would be at all times on the movant; only the burden of raising the issue with respect to certain documents would shift to the other party.

Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1122 (3d Cir. 1986).[4]  The toll on the federal court system's docket would indeed be severe if district courts had to review, on a document-by-document basis, materials to determine whether they were confidential each time one party sought a protective order.  Protective orders facilitate production.  Corporations are quicker to release their documents if they know the information will not be revealed in the Wall Street Journal or in the local paper's

---

[4]The example protective order in the Manual for Complex Litigation (Fourth) has a similar structure:

> If a party believes that a document designated or sought to be designated confidential by the producing party does not warrant such designation, the party shall first make a good-faith effort to resolve such a dispute with opposing counsel.  In the event that such a dispute cannot be resolved by the parties, either party may apply to the court or special master for a determination as to whether the designation is appropriate.  The burden rests on the party seeking confidentiality to demonstrate that such designation is proper.

Manual for Complex Litigation (Fourth) § 40.27, at 753 (2004).  The Federal Judicial Center is an entity Congress created "to promote improvements in judicial administration in the courts of the United States."  Fed. Judicial Ctr., Federal Judicial Center, http://www.fjc.gov/ (last visited July 23, 2012).

business section the next day.  Consequently, the Court will not adopt S2 Automation's proposal that Micron Technology must show good cause each time it seeks to designate a document as confidential.  Such a process would be counterproductive and would frustrate an important goal of the litigation process -- getting cases to a point where courts can decide the merits of a parties' dispute without the case facing derailment in the discovery process.  See Montoya v. Sheldon, No. 10-0360, 2012 WL 1132505, at *3 (D.N.M. Mar. 20, 2012)(Browning, J.)("Discovery is also, ideally, a self-executing system.  A spirit of cooperation between opposing counsel is thus important and generally results in the filing of fewer discovery motions, reduction in the costs of litigation, and conservation of limited judicial resources." (citations omitted)(internal quotation marks omitted)). If S2 Automation concludes that Micron Technology has begun to abuse the protective order, it may approach the Court at a later date with its concerns.

## II.   THE COURT WILL REQUIRE THE PARTIES' TO USE MICRON TECHNOLOGY'S PROPOSED PROTECTIVE ORDER TO DRAFT THE PROTECTIVE ORDER THEY ULTIMATELY SUBMIT TO THE COURT.

As a general practice, when parties cannot agree on the terms of a protective order that covers confidential information, the Court directs the parties to the Manuel for Complex Litigation (Fourth)'s form protective order on this matter.  See Manuel for Complex Litigation (Fourth) § 40.27, at 752-53 (2004).  This form, however, does not provide for a two-tiered system of: (i) confidential documents; and (ii) attorneys' eyes only documents.  See Manuel for Complex Litigation (Fourth), supra § 40.27, at 752-53 ("Documents designated confidential shall be shown only to the attorneys, the parties, parties' experts, actual or proposed witnesses, and other persons whom the attorneys deem necessary to review the documents . . . .").  Additionally, the non-disclosure provisions into which the parties earlier entered as part of some of the contracts arising out of this limitation is not suited to litigation, as it involves a different relationship between the

parties than that of a plaintiff and defendant. See Corporate Non-Disclosure Agreement ¶ 4, at 2.

For instance, Micron Technology's proposed Protective Order provides procedures to deal with

confidential information disclosed during depositions, including how to handle the transcripts from

those depositions if the deposition discusses confidential information. See Protective Order at 3.

Micron Technology's proposed Protective Order also discusses how to handle providing confidential

information to experts. See Protective Order at 4-5. The other protective orders S2 Automation has

stated are acceptable to it are likely to generate as many disputes as they solve by requiring parties

to litigate the confidentiality of documents on an individualized basis. See Response at 13 ("S2

[Automation] does not object to the entry of a Protective Order in the form attached as Exhibit B

to Micron's Motion or to an Order substantially in the redlined form as set forth in Exhibit E.").

One is less comprehensive than the form Micron Technology has proposed, see Stipulated Order for

Confidentiality of Documents and Information, filed May 10, 2012 (Doc. 48-2), and the other would

result in too many threshold disputes about designating documents as confidential, see Redlined

Protective Order at 3-4, filed May 10, 2012 (Doc. 48-5). The goal of a protective order is to reduce

the number of disputes, not increase them. Thus, S2 Automation's proposed suggestions create

more problems than they solve and would require combining various documents designed to suit

different purposes. Ultimately, Micron Technology's proposed Protective Order is a better starting

point.

   S2 Automation disputes the necessity of a two-tiered system, noting that such a system will

require it to incur additional costs and is subject to abuse. In the context of intellectual property,

including trade secrets and other sensitive commercial information that gives a party a competitive

advantage, a two-tiered system can be appropriate. Protective orders under rule 26(c)(1)(G), which

governs protective orders for these categories of information, have become "[o]ne of the most

frequently invoked protective order provisions."  6 J. Moore, supra § 26.105[8][a], at 26-548.1.

The provisions regarding attorneys' eyes only documents in the proposed Protective Order are as follows:

> 4.   Information designated "Highly Confidential -- Attorneys' Eyes Only" shall be viewed only by:
>
> > a.   Outside counsel of record for the parties;
> >
> > b.   Micron in-house legal personnel with a need to know the information in connection with alternative dispute resolution proceedings, settlement negotiations, discovery, preparation for trial, or trial; and
> >
> > c.   Independent experts under the conditions set forth herein.

Protective Order ¶ 4, at 4.  The proposed Protective Order also requires a party to seek the other party's approval to have its expert view information designated as highly confidential and attorneys' eyes only.  See Protective Order ¶ 5, at 4.  The Court asked Micron Technology if it could remove those provisions placing additional limitations on experts, and Micron Technology said that it could remove these provisions.  See Tr. at 79:24-80:3 (Court, Berge).  The Court concludes that removing those provisions limiting disclosing documents to experts is appropriate, because Micron Technology has made no showing that imposing such restrictive conditions on experts is necessary in this case.  See MGP Ingredients, Inc. v. Mars, Inc., 245 F.R.D. 497, 501 (D. Kan. 2007)("It is well settled that defendants have the burden of proving the competitive harm that would befall them by virtue of plaintiff's disclosure to in-house personnel and outside consultants.").  Furthermore, such requirements could run into conflict with work-product protections for consulting experts.  See Fed. R. Civ. P. 26(b)(3)(D) ("Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness

at trial.").

Permitting attorneys' eyes only restrictions as a general matter, however, in light of the intellectual property concerns Micron Technology faces, is appropriate. Again, this is not an uncommon feature in protective orders in modern complex commercial litigation. These provisions are as much a protection for the party receiving the documents as for the party producing the documents. Such a mechanism highlights for everyone the most sensitive documents, and assures that leaks by the receiving sides are rare and, if they occur, can be more easily traced to the source. Provisions such as these can prevent litigation over improper use of information disclosed under a protective order by clarifying the most sensitive information that the parties disclose. The receiving attorney is rarely in a competitive position with the producing party, and is unlikely to have an incentive to use the information or otherwise disclose it. Clients, already at war with the opposing side, may not feel as limited by professional standards as an attorney, who has separate obligations to the court system and to society to obey court orders.

Once Micron Technology begins to disclose trade secrets to a wider group of people, there is a stronger argument that the information no longer has protection. As the <u>Restatement (Third) of Unfair Competition</u> relates in comment f: "When information is no longer sufficiently secret to qualify for protection as a trade secret, its use should not serve as a basis for the imposition of liability under [a misappropriation theory]." <u>Restatement (Third) of Unfair Competition</u> § 39 cmt. f (1995). Furthermore, with other commercial information Micron Technology has that is confidential but not entitled to any intellectual property protection, allowing that information to get in the hands of others who could be competitors would cause harm to Micron Technology. S2 Automation alleges that it contracts with companies, like Micron Technology, to supply them parts. In light of the nature of its business, it is entirely plausible that S2 Automation works with similar

companies who compete with Micron Technology.  Furthermore, this litigation has already been contentious so far.  The parties have not shown a tendency to work well together.

More importantly, Micron Technology has not opposed production of the material entirely, which a protective order could permit if the circumstances were appropriate.  See Fed. R. Civ. P. 26(c)(1)(G) (stating that a court may enter and order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way" (emphasis added)).  It has simply requested the lesser protection that production take place in a particular manner.  If Micron Technology had opposed production entirely, it would have a higher burden to show "that the information sought is a trade secret and then demonstrate that its disclosure might be harmful." Centurion Indus., Inc. v. Warren Steurer & Assocs., 665 F.2d 323, 325 (10th Cir. 1981).  When a court permits production of sensitive commercial information, such as trade secrets, "the appropriate safeguards that should attend their disclosure by means of a protective order are also a matter within the trial court's discretion."  Centurion Indus., Inc. v. Warren Steurer & Assocs., 665 F.2d 323, 326 (10th Cir. 1981).  Furthermore, S2 Automation has not shown any reason why, assuming only a small portion of documents are designated as attorneys' eyes only, working with a two-tiered system would be impracticable.  See Centurion Indus., Inc. v. Warren Steurer & Assocs., 665 F.2d at 326 ("It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure."). The technology sector is a fast growing and dynamic one, and sensitive information can carry a lot of value. If Micron Technology were opposing production entirely, the Court would be more critical of Micron Technology's position.  But it is only requesting a specific method of production under a protective order.  It has shown good cause for the protective order, and the Court does not believe it is sound to have them exhaustively set out the nuances of the harm it would face if there is no two-

tiered production system.

The Court takes into account that Micron Technology has represented that it plans to designate only a small portion of documents as attorneys' eyes only. The Court will hold Micron Technology to that representation. If only a small amount of information is subject to this attorneys' eyes only category, S2 Automation will not face appreciable difficulty in litigating this case. If Micron Technology begins abusing the two-tiered system in a way that frustrates S2 Automation from bringing its case, the Court will be receptive to S2 Automation approaching the Court to raise those concerns. See Arvco Container Corp. v. Weyerhaeuser Co., No. 1:08-cv-548, 2009 WL 311125, at *6 (W.D. Mich. Feb. 9, 2009)("It is clear to this court that the indiscriminate use of 'attorney's eyes only' protective orders does pose a significant handicap on the restricted litigant."). The Court also acknowledges S2 Automation's concern that parties should not designate entire documents as confidential when only a small portion of the document as confidential. To the extent practicable, the parties may want to work with one another not to designate entire documents as confidential when only a small portion of the document is confidential. The Court will not, however, require such procedures. Such a procedure could increase the cost of production dramatically and make production more time consuming. Sometimes it is better and more simple just to designate a document as confidential to facilitate speedy production of discovery. The Court's main interest is to allow this litigation to move forward in as efficiently a manner as possible, and it asks the parties to work out their differences so that no side must face undue delay in the speedy resolution of this case.

Lastly, it is not appropriate for the Court to require a provision in the protective order that the protective order is not binding upon another courts' decisions on related matters in other litigation. Such a provision could undermine the protective order in this case and allow parties to

circumvent its protections.  As the Court has stated in the past, quoting from an advisory committee

note:

> Confidentiality orders are becoming increasingly important in limiting the costs of
> privilege review and retention, especially in cases involving electronic discovery.
> But the utility of a confidentiality order in reducing discovery costs is substantially
> diminished if it provides no protection outside the particular litigation in which the
> order is entered.  Parties are unlikely to be able to reduce the costs of pre-production
> review for privilege and work product if the consequence of disclosure is that the
> communications or information could be used by non-parties to the litigation.

Radian Asset Assurance, Inc. v. Coll. of the Christian Bros. of N.M., No. 09-0885, 2010 WL

4928866, at *8 (D.N.M. Oct. 22, 2010)(Browning, J.)(emphasis omitted)(quoting Fed. R. Evid.

502(d) advisory committee's note).  If S2 Automation is in a position where it thinks it needs to

disclose information subject to this protective order in other litigation, it can tell the other tribunal

that it is under a court order that it may not disclose that information.  S2 Automation may also

approach the Court and ask to modify the protective order if this situation becomes unworkable in

light of other litigation that occurs.  The parties have not indicated that there are any other lawsuits

currently pending between the same parties involved in this case.  In the end, given the discovery

stalemate, and the level of discovery that has ended up in S2 Automation's hands, it is important to

get a reasonable protective order in place to facilitate the flow of documents from Micron

Technology and Micron Israel to S2 Automation.  The protective order benefits S2 Automation as

much or more than Micron Technology and Micron Israel.  S2 Automation is frustrated with the lack

of discovery from Micron Technology, but it must realize that protective orders like the one Micron

Technology has proposed are relatively common in modern complex commercial litigation, and for

good reason.  They rarely create significant hurdles to moving forward in litigation.  If the order is

the exception and creates problems for S2 Automation's facilitation of the discovery process, it can

return to the Court and request appropriate modifications.

**IT IS ORDERED** that Micron Technology, Inc.'s Motion for Entry of Protective Order, filed May 10, 2012 (Doc. 45), is granted in part and denied in part.  The Court will require the parties to submit a protective order with the Court and to use Defendant Micron Technology, Inc.'s proposed protective order as the baseline for their agreement.  The Court will not require the parties to show good cause each time they designate a document as confidential.  The Court will require the parties to include a two-tiered system for designating confidential documents.  The protective order the parties submit to the Court should not require parties to obtain the opposing side's prior approval to have their experts review attorneys' eyes only information or require parties to notify the opposing side which documents it is showing to its experts.  The protective order should state that it is binding on the parties even when they are participating in other litigation.


_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Or Baron Gil
Meitar Liquomik Geva & Leshem Brandwein
Ramat Gan, Israel

-- and --

Alicia L. Gutierrez
Moses, Dunn, Farmer & Tuthill, P.C.
Albuquerque, New Mexico

-- and --

Martin K. Holland
Holland Law, P.C.
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Bradford C. Berge
Holland & Hart LLP
Santa Fe, New Mexico

-- and --

Erik F. Stidham
Scott E. Randolph
Holland & Hart LLP
Boise, Idaho

   *Attorneys for the Defendant and the Intervenor*