## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

S2 AUTOMATION LLC,

    Plaintiff,

vs.              No. CIV 11-0884 JB/WDS

MICRON TECHNOLOGY, INC.,

    Defendant.

and

MICRON SEMICONDUCTOR ISRAEL, LTD,

    Counterclaimant in Intervention,

vs.

S2 AUTOMATION, LLC, S2 AUTOMATION
ISRAEL, LTD, YOSEF ASTANOVSKY,

    Counterdefendants in Intervention.

### MEMORANDUM OPINION AND ORDER

  **THIS MATTER** comes before the Court on Micron Technology, Inc.'s Motion to Compel,

filed May 3, 2012 (Doc. 43)("Motion to Compel"). The Court held a hearing on June 15, 2012. The

primary issues are: (i) whether Plaintiff S2 Automation LLC has satisfied its obligation to produce

a privilege log; (ii) whether S2 Automation must produce electronically stored information ("ESI")

in the format Defendant Micron Technology, Inc. has requested; (iii) whether S2 Automation must

separately produce metadata;[1] (iv) whether S2 Automation must identify the search strategy it used

---

[1]"Metadata, which is commonly described as 'data about data,' is defined as '[s]econdary data that organize, manage, and facilitate the use and understanding of primary data.'" United States v. Haymond, 672 F.3d 948, 952 n.10 (10th Cir. 2012)(alteration in original).

to produce documents in response to requests for production ("RFP"); (v) whether S2 Automation has provided adequate responses to Micron Technology's first requests for production; and (vi) whether Micron Technology is entitled to an award of attorney's fees and costs incurred in bringing the Motion to Compel. The Court will grant in part and deny in part the Motion to Compel. Given that the parties' have resolved their differences regarding the privilege log S2 Automation has produced, the Court will direct the parties to separately produce a privilege log, separate from responsive document, in the future. The Court will require S2 Automation to produce ESI either in native format or in the format Micron Technology has requested. The Court will require S2 Automation to produce electronic mail transmissions along with their attachments. If S2 Automation chooses to produce ESI in the format Micron Technology has requested, the Court will not require S2 Automation to separately produce metadata from that ESI. Nevertheless, if Micron Technology makes a good faith request to obtain metadata from a given set of ESI, the parties are advised that the Court will be inclined to provide Micron Technology with the metadata it seeks. Consistent with the discussion at the hearing on July 24, 2012, S2 Automation has twenty-four hours from the filing of this opinion to request a specific format for production if it has a preferred format for production. The Court will require S2 Automation to provide the search strategy it used to obtain responsive documents. The Court will require S2 Automation to produce all responsive documents in its possession or control. Accordingly, it should amend and/or supplement its discovery responses consistent with that standard. The Court will require S2 Automation to separately answer each request for production. The Court will compel production on the RFP's -- RFP Nos. 25 through 28, 47, 50, and 51 -- that Micron Technology specifically pursued at the June 15, 2012 hearing. The Court will require S2 Automation to pay eighty percent of the attorney's fees and costs that Micron Technology incurred in bringing the Motion to Compel. Micron Technology

will bear twenty percent of its own attorney's fees and costs incurred in bringing the Motion to Compel.

**PROCEDURAL BACKGROUND**

On October 3, 2011, S2 Automation filed its Complaint for Breach of Contract, Conversion, Misrepresentation and Unjust Enrichment.  See Doc.  1 ("Original Complaint").  On March 14, 2012, Micron Technology served its Micron Technology, Inc.'s First Set of Interrogatories and Requests for Production to S2 Automation LLC, filed May 3, 2012 (Doc. 43-2)("Discovery Request"), on S2 Automation.  See Certificate of Service at 1, filed March 14, 2012 (Doc. 30). Micron Technology stated the following in its Discovery Request regarding the production of ESI:

> With respect to the format of production of hard-copy documents and ESI requested herein:
>
> a.      Produce, on media (CD/DVD, Flash Drive, etc.) all responsive Excel, Access, database records, and audio files (such as voice mail) in their native formats retaining all metadata.  For database records in proprietary systems, produce the records in Excel format;
>
> b.      Produce, on media (CD/DVD, Flash Drive, etc.), all responsive ESI in single-paged Tagged Image Filed Format ("TIFF," Type 4, 300 DPI resolution),[2] with an accompanying load file, an extracted text file of electronic documents that are not redacted, and an Optical Character Recognition ("OCR")[3] text file of unredacted portions of redacted documents

---

[2]"Tagged Image File Format (TIFF) is [a] widely used and supported graphic file format[] for storing bit-mapped images, with many different compression formats and resolutions."  Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 161 n.2 (3d Cir. 2012)(quoting The Sedona Conference Glossary: E-Discovery & Digital Information Management 12 (S. Harris  ed., 3d ed. 2010) [hereinafter Sedona Glossary] (alterations in original)(internal quotation marks omitted)).

[3]The Sedona Conference defines optical character recognition as:

A technology process that translates and converts printed matter on an image into a format that a computer can manipulate (ASCII codes, for example) and, therefore, renders that matter text searchable. OCR software evaluates scanned data for shapes

including document breaks and in a Ringtail format, preferably.  Preserve and produce all extracted text, embedded edits,[4] and all metadata as part of the collection and production of electronic documents.  If possible, the load file should be compatible with Concordance, Summation, and Ringtail (an .lfp and corresponding .csv file would suffice).  If you used a search strategy to cull a responsive set of documents from your ESI, then also provide the search terms/strategies used in your collection efforts; and

c.       Produce all responsive hard-copy documents either in paper format, or electronically on media (CD/DVD, Flash Drive, etc.), in single-page TIFF with an accompanying load file, an extracted text file of electronic documents that are unredacted, and OCR text files of unredacted portions of redacted hard-copy documents (including document breaks and in a Ringtail format, preferably).  Ringtail's preferred format is single-page TIFF with multi-page OCR per document (Child level).

Discovery Request at 3-4.

RFP No. 25 provides: "Please produce all documents depicting any payment(s) you received for the parts or inventory referenced in the preceding request."  Discovery Request at 7.[5]  RFP No.

---

it recognizes as letters or numerals.  All OCR systems include an optical scanner for reading text and software for analyzing images. Most OCR systems use a combination of hardware (specialized circuit boards) and software to recognize characters, although some inexpensive systems operate entirely through software. Advanced OCR systems can read text in a large variety of fonts, but still have difficulty with handwritten text.

Sedona Glossary, supra, at 37.  "The Sedona Conference® (TSC) is a nonprofit, 501(c)(3) research and educational institute dedicated to the advanced study of law and policy in the areas of antitrust law, complex litigation, and intellectual property rights."  The Sedona Conference, The Sedona Conference, The Sedona Conference, https://thesedonaconference.org/ (last visited August 7, 2012)[hereinafter Sedona Website].

[4]"Computer programs may retain draft language, editorial comments, and other deleted matter (sometimes referred to as 'embedded data' or 'embedded edits') in an electronic file but not make them apparent to the reader."  Fed. R. Civ. P. 26(f) advisory committee's note to 2006 amendment.

[5]In their written filings, the parties dispute whether the responses to a large number of requests for production were adequate.  Based on guidance the Court gave the parties at the hearing on June 15, 2012, regarding what documents are in a party's possession for discovery purposes, Micron Technology stated that the Court's statements had resolved the dispute over a large number

26 provides: "Please produce payroll records for any person who you employed or caused to work at [the] Fab 12 [facility in Israel] from January 1, 2008 to the present."  Discovery Request at 7.  RFP No. 27 provides: "Please produce time sheets for any person who you employed or caused to work at Fab 12 from January 1, 2008 to the present."  Discovery Request at 7.  RFP No. 28 provides: "Please produce all shipping records, manifests, bills of lading, or other documents that identify any parts, equipment, tools, or other movable object that you caused to be transported to Fab 12."  Discovery Request at 8 (emphasis in original).  RFP No. 47 provides: "Please produce all documents relating to the cannibalization of Fab 12 AMHS equipment by you or your representative."  Discovery Request at 10.  RFP No. 50 provides: "Please produce all correspondence (including electronically stored information) from Yosef Astanovsky to any S2 representative relating to Fab 12 including (but not limited to) any correspondence while Mr. Astanovsky was employed by Numonyx."  Discovery Request at 10.  RFP No. 51 provides: "Please produce all documents (including electronically stored information) relating to the termination of the Scope of Work agreement between you and Numonyx Semiconductor, Israel, Ltd."  Discovery Request at 10.

On April 12, 2012, S2 Automation filed its Amended Complaint.  See Doc. 36.  S2 Automation asserts six causes of action against Micron Technology: (i) Breach of Contract; (ii) Breach of Duty of Good Faith and Fair Dealing; (iii) Conversion; (iv) Fraudulent Misrepresentation; (v) Negligent Misrepresentation; and (vi) Unjust Enrichment.  See Amended Complaint at 11-15.

---

of the requests for production.  See Transcript of Hearing at 57:11-17 (taken June 15, 2012)(Randolph).  Micron Technology then further pursued compelling discovery responses on other requests for production that the Court's guidance did not resolve.  Consequently, the Court does not recite here the contents of every request for production and response that the parties initially disputed, given that Micron Technology, at the hearing, needed to specifically seek a resolution of a dispute regarding a much smaller number of requests for production.

On April 12, 2012, S2 Automation served its S2 Automation LLC's Answers and Responses to Defendant's First Set of Interrogatories and Requests for Production, filed May 3, 2012 (Doc. 43-3)("Discovery Response"), on Micron Technology.  See Certificate of Service at 1, filed April 12, 2012 (Doc. 37).  A variety of S2 Automation's responses to requests for production cross-reference other portions of its Discovery Response.  See, e.g., Discovery Response at 11 ("See Answer to Interrogatory No. 7.").  Some of S2 Automation's responses to requests for production state that S2 Automation has no responsive discovery in its possession.  See, e.g., Discovery Response at 19 ("None currently in S2 [Automation]'s possession.").  S2 Automation's response to RFP No. 25 is as follows:

> Object as Request for Production No. 25 is not reasonably calculated to lead to the discovery of admissible evidence, is not relevant to the subject matter involved in the pending action, is unduly burdensome, is obtainable from some other source that is more convenient, less burdensome and less expensive and is not limited by time frame.  Micron [Technology] has documents reflecting payments under the terms of the S2 Agreements which it can readily retrieve from its own files.  Subject to that objection, S2 is producing accounting documents (QuickReport printout) marked as S2.2558-S2.2571 showing the payments received from Micron.

Discovery Response at 16-17.  S2 Automation's response to RFP No. 26 is as follows: "Object as Request for Production No. 26 requests information that is not relevant to the subject matter involved in the pending action and the information sought does not appear to be reasonably calculated to lead to the discovery of admissible evidence."  Discovery Response at 17.  S2 Automation's response to RFP No. 27 is as follows:

> Object as Request for Production No. 27 requests information that is not relevant to the subject matter involved in the pending action, the information sought does not appear to be reasonably calculated to the discovery of admissible evidence and are obtainable from some other source that is more convenient, less burdensome and less expensive.  Without waiving these objections S2 does not have any documents responsive to this request.  The time records and similar documents are in the possession of Micron [Technology].  If S2 is provided access to Micron [Technology]'s computer systems, the documents can be retrieved.

Discovery Response at 17.  S2 Automation's response to RFP No. 28 is as follows:

> Object as Request for Production No. 24 [sic] is not reasonably calculated to lead to the discovery of admissible evidence, is not relevant to the subject matter involved in the pending action, is unduly burdensome, overly broad as it is not limited by any time frame.  Without waiving this objection see bates stamped documents S2.2135-S2.2302.

Discovery Response at 18.  S2 Automation's response to RFP No. 47 is as follows: "See response to Request For Production No. 23."  Discovery Response at 22.  S2 Automation's response to RFP No. 50 is as follows:

> Object as Request for Production No. 50 is not reasonably calculated to lead to the discovery of admissible evidence, is not relevant to the subject matter involved in the pending action, is unduly burdensome, are obtainable from some other source that is more convenient, less burdensome and less expensive and is not limited by any time frame.  Micron [Technology] has such correspondence on its intra net server and can recover the information.  A number of e-mails involving Mr. Astanovsky as a sender, receiver or a party copied are being produce as S2.0001-1691.  S2 [Automation] does not interpret the Request to seek information and communications between S2 [Automation] and counsel for S2 [Automation] as such communications are deemed attorney client privileged and work product information.

Discovery Response at 23-24.  S2 Automation's response to RFP No. 51 is as follows: "S2.0100 is the termination notice.  See also response to Interrogatory No. 5.  S2 [Automation] is continuing to search for additional information and this response will be supplemented if additional documents are located."  Discovery Response at 24.

On May 3, 2012, Micron Technology filed its Motion to Compel.  Micron Technology argues that S2 Automation "has utterly failed to meet its obligation to meaningfully respond to discovery in this matter."  Motion to Compel at 1.  First, Micron Technology asserts that the Court should order S2 Automation to produce a more detailed privilege log.  See Motion to Compel at 3. Micron Technology contends that S2 Automation has failed to produce a privilege log as rule 26(b)(5) of the Federal Rules of Civil Procedure requires when a party withholds information based

on an assertion of privilege.  <u>See</u> Motion to Compel at 4.  Micron Technology, therefore, requests

that the Court order S2 Automation to produce a privilege log that sets forth: (i) the general nature

of the document; (ii) the identity and position of its author; (iii) the date it was drafted; (iv) the

identity and position of all recipients; (v) the document's present location; and (vi) the specific

reasons for withholding the document.  <u>See</u> Motion to Compel at 4 n.3.  Micron Technology argues

that this information is necessary "so that Micron [Technology] can evaluate the applicability of any

privilege claimed."  Motion to Compel at 4.

        Second, Micron Technology argues that the Court should order S2 Automation to produce

ESI in the format it has requested.  <u>See</u> Motion to Compel at 5.  Micron Technology argues that S2

Automation has not produced ESI in the format that Micron Technology requests.  <u>See</u> Motion to

Compel at 5.  According to Micron Technology, S2 Automation "has instead produced documents

in a format that is not reasonably nor readily usable by Micron [Technology]."  Motion to Compel

at 5.  As an example, Micron Technology states that S2 Automation produced electronic mail

transmission messages separated from the attachments sent with each electronic mail transmission.

<u>See</u> Motion to Compel at 5.  Micron Technology argues that S2 Automation's production is

improper under rule 34(b)(2)(E)(ii), because Micron Technology "was entitled to 'specify the form

or forms in which electronically stored information is to be produced.'"  Motion to Compel at 5.

Micron Technology, therefore, asserts that "S2 [Automation] should be ordered to produce e-mail

messages and other documents in the format requested by Micron [Technology] and produce email

messages with attachments, if any."  Motion to Compel at 5-6.

        Third, Micron Technology asserts that the Court should order S2 Automation to identify the

search strategy it used to provide responsive documents to its requests for production.  <u>See</u> Motion

to Compel at 6.  Micron Technology represents that "S2 [Automation]'s counsel stated he was not

familiar with the content of the documents provided by S2 [Automation] in response to discovery and was not aware that the attachments had been separated from the source messages." Motion to Compel at 6. Micron Technology argues that "it is not proper for counsel to sit back and allow the client to search for documents without active direction and participation by counsel; to the contrary, counsel must be actively involved in the search to ensure that all responsive documents have been located, preserved, and produced." Motion to Compel at 6 (citing Metro. Opera Ass'n, Inc. v. Local 100 Hotel Emps. and Rest. Int'l, 212 F.R.D. 178, 222 (S.D.N.Y. 2003)). Micron Technology asserts that the approach S2 Automation's counsel has taken "carries significant risk that responsive information will not be discovered and/or disclosed, as has happened here." Motion to Compel at 6. Micron Technology emphasizes that "based on S2 [Automation]'s counsel's statement, it appears that S2 [Automation] may not fully appreciate the extent of its legal obligations to search for and produce all responsive non-privileged information in response to Micron [Technology]'s request." Motion to Compel at 7 (emphasis in original). Micron Technology argues that the approach S2 Automation's counsel has taken is not consistent with the discovery obligations counsel have under rule 26(g). See Motion to Compel at 6. Micron Technology "requests that the Court order S2 [Automation] to identify what protocol it used so that Micron [Technology] can evaluate what further efforts are required." Motion to Compel at 7. Micron Technology also presents a sworn declaration from one of its counsel voicing these concerns:

> 6.      On April 25, 2012, I prepared and sent a detailed deficiency letter, which identified the various shortcomings in S2 [Automation]'s production. I asked S2 [Automation] to respond to the letter by Monday, April 30, given the 21 day requirement under District of New Mexico Local Rule 26.6 for filing motions to compel. A true and correct copy of my letter is attached hereto as Exhibit D. The letter recites each specific request for production and identifies the deficiency in each request. The numbering used in my letter was in error, in that the numbering in the letter is sequential, whereas the letter identifies defects in the specific requests.

7.     On April 27, 2012, counsel participated in a discovery conference in an attempt to discuss various discovery issues that remain unresolved, including the lack of a protective order and clawback agreement, which Micron [Technology] has been requesting since March 2012 when it served its initial disclosures.  During that call, we discussed the April 25 deficiency letter and Micron [Technology]'s request that S2 [Automation] supplement its production.  Counsel for S2 [Automation] stated that he had not yet reviewed the letter in detail.  We then discussed the format for production of S2 [Automation]'s documents.  Counsel stated that he was not aware that S2 [Automation] had separated attachments from e-mails, that he had delegated the process of gathering documents to S2 [Automation], and that he was generally unaware of the manner in which S2 [Automation] had provided the documents.  Counsel also stated that he was unsure what protocol S2 [Automation] followed to locate responsive documents.

Declaration of Scott E. Randolph in Support of Micron Technology, Inc.'s Motion to Compel ¶¶ 6-7, at 3 (executed May 3, 2012), filed May 3, 2012 (Doc. 43-1)("Randolph Declaration").

Fourth, Micron Technology argues that the Court should order S2 Automation to flesh out its responses to Micron Technology's first set of requests for production.  See Motion to Compel at 7.  Micron Technology asserts that S2 Automation's "responses to Micron Technology's First Set of Requests for Production are inadequate, incomplete, and evasive."  Motion to Compel at 7.  Micron Technology contends that, "under Federal Rule 37(a)(3), 'an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer or respond.'"  Motion to Compel at 7-8 (citing Cabot v. Wal-Mart Stores, Inc., No. 11-0260, 2012 WL 592874, at *9 (D.N.M. Feb. 16, 2012)(Browning, J.)).  Micron Technology emphasizes that "S2 [Automation] is obligated 'to show specifically how each request is not relevant or how each request is overly broad, burdensome, or oppressive.'"  Motion to Compel at 8.

Regarding the response to RFP No. 2, Micron Technology argues that "S2 [Automation] has failed to produce all correspondence between S2 [Automation] or its management team, S2 Israel and its management team, Yosef Astanovsky, and any other representatives of S2 relating to this litigation."  Motion to Compel at 8.  Micron Technology asserts that "there is no basis for S2

[Automation] to have withheld this information because it is within S2 [Automation]'s possession, custody, or control." Motion to Compel at 8. Micron Technology emphasizes that it was improper for S2 Automation to produce a self-selected sample of electronic mail transmissions in response to the request. See Motion to Compel at 8-9. Micron Technology requests that the Court compel S2 Automation to produce all correspondence responsive to RFP No. 2. See Motion to Compel at 9.

Regarding the responses to RFP Nos. 12, 13, 15, 18, 19, 40, 42, and 47, Micron Technology contends that "incorporation by reference of prior objections and response by S2 is unduly burdensome and improper." Motion to Compel at 9. Micron Technology argues that S2 Automation's "pattern of objecting by reference to another response . . . does not comply with the requirement to 'either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons.'" Motion to Compel at 9 (quoting Fed. R. Civ. P. 34(b)(2)(B)-(C)). Micron Technology requests that the Court require S2 Automation to produce all documents responsive to RFP Nos. 12, 13, 15, 18, 19, 40, 42, and 47. See Motion to Compel at 10-13, 22-24. "Micron [Technology] also requests that S2 be ordered to amend its response[s] to eliminate the improper objections." Motion to Compel at 10.

With respect to the responses to RFP Nos. 14, 24, 25, 26, 27, and 28, Micron Technology asserts that the documents it has requested are relevant to the dispute and that the documents are reasonably calculated to lead to the discovery of admissible evidence. See Motion to Compel at 11, 15. Micron Technology contends that the Court should overrule S2 Automation's objections to these RFP's, because "S2 has done nothing more than interpose a blanket objection." Motion to Compel at 14, 24. Micron Technology further emphasizes that "it is unclear from the objection[s] and response[s] what items have been produced." Motion to Compel at 11. Micron Technology

argues that S2 Automation's "objection[s] as to the documents being obtainable from Micron Technology [are] not well stated," because "S2 is required by rule 34 to produce responsive documents it has in its possession, custody or control."   Motion to Compel at 16.   Micron Technology requests that the Court overrule the objections to RFP Nos. 14, 24, 25, 26, 27, and 28 and order that S2 Automation provide all responsive documents Micron Technology has requested. See Motion to Compel at 11, 14-17, 24.

Regarding the response to RFP No. 20, Micron Technology argues that the objection is unfounded, because S2 Automation has access to the information sought.  See Motion to Compel at 13-14.  Micron Technology contends that "it is not satisfactory for S2 [Automation] to produce amounts billed for some of the inventory . . . because that has no relationship to the prices actually paid by S2 [Automation] for the items in question."  Motion to Compel at 14.

 With respect to the responses to RFP Nos. 30, 31, 32, and 33, Micron Technology argues that "Micron [Technology] is entitled to documents to understand the relationship between S2 [Automation] and S2 Israel," and Counterdefendant Yosef Astanovsky.  Motion to Compel at 18. In support of its argument, Micron Technology emphasizes that S2 Automation must have documents in its possession that explain its relationship with S2 Israel and Astanovsky.  See Motion to Compel at 18.  Micron Technology argues that "it is disingenuous for S2 [Automation] to state in response to discovery that no responsive documents are 'currently in S2 [Automation]'s possession' when it is obvious that responsive documents must exist."  Motion to Compel at 19. Micron Technology requests that the Court order S2 Automation to produce "any responsive documents that it once, but no longer, had in its possession, custody, and control."  Motion to Compel at 18-20.

Regarding the responses to RFP Nos. 37, 38, 39, and 41, Micron Technology argues that they

are "inadequate and a violation of discovery obligations for a party to object on the basis that the other party may (or may not) have information requested." Motion to Compel at 20. Micron Technology contends that, "to the extent that S2 [Automation] maintained any records regarding [preventative maintenance,] warranty service activities, [and performance requirements], then it should be ordered to produce all of them in S2 Automation's possession, custody, or control." Motion to Compel at 20-22. Regarding the response to RFP Nos. 44 and 45, Micron Technology argues that it "is entitled to know specific documents, if any are still to be reviewed and produced." Motion to Compel at 23. Micron Technology emphasizes that this clarification is necessary, because "the parties have begun to schedule depositions." Motion to Compel at 23. Regarding the response to RFP No. 50, Micron Technology argues that: (i) "S2 [Automation] was obligated to search and provide all responsive information"; (ii) "the request is limited to communications to S2 [Automation] while Mr. Astanovsky was employed by Numonyx Israel . . . there is no basis for S2 [Automation] to have interposed an attorney-client privilege objection"; and (iii) "there is no basis for S2 [Automation] to avoid its obligation to respond to discovery based on the assertion that the documents could be recovered." Motion to Compel at 25.

Regarding the responses to RFP Nos. 51 and 54, Micron Technology argues that it is entitled to all responsive documents on the subject of the requests, because, "unless privileged, these documents would clearly be discoverable." Motion to Compel at 26. Micron Technology states that it is entitled to have all responsive documents given that depositions have been scheduled and noticed. See Motion to Compel at 26. Micron Technology requests an award of fees and costs incurred in bringing the Motion to Compel. See Motion to Compel at 26. Micron Technology argues that it is entitled to an award of fees and costs, because: (i) "Micron [Technology] attempted to meet and confer with S2 [Automation] in good faith regarding its deficient discovery responses

-13-

but was unsuccessful"; (ii) "S2 [Automation] has taken positions in discovery that are unsupported by the law and have caused Micron [Technology] to incur expenses"; and (iii) "S2 [Automation]'s conduct in refusing to provide discoverable information will likely jeopardize the upcoming rule 30(b)(6) deposition of S2 [Automation]." Motion to Compel at 27. Micron Technology asserts that, "pursuant to Federal Rule of Civil Procedure 37(a)(5), 'the court must. . . require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses in making the motion, including attorneys fees." Motion to Compel at 26-27.

On May 16, 2012, S2 Automation filed S2's Response to Micron's Motion to Compel. See Doc. 50 ("Response"). S2 Automation argues that Micron Technology's Motion to Compel "must be evaluated in the overall context in which this litigation is occurring and the strategy being play out by Micron [Technology] through this Motion [to Compel] and other actions designed to delay the litigation and increase the cost." Response at 1. S2 Automation asserts that Micron Technology is "engaged in a legal war of attrition using its superior financial position to prevent or delay S2 [Automation] from having its day in Court." Response at 2. S2 Automation represents that Micron Technology has not produced any documents in response to discovery requests, which contrasts with the documents S2 Automation has delivered to Micron Technology. See Response at 2. S2 Automation asserts that the documents it produced were "organized by e-mail and by documents and represented by 150 hours of work by the four owners of S2 [Automation] to retrieve and produce . . . the documents in the universally recognized PDF and Excel spreadsheet format." Response at 2. S2 Automation also represents that "the owners of S2 [Automation] opened and reviewed every e-mail in their possession between S2 Numonyx and Micron [Technology]." Response at 2 n.2. S2 Automation states that it produced groups of documents in response to the requests for production, and argues that "the production was organized, comprehensive, and

-14-

thorough." Response at 3.

S2 Automation contends that Micron Technology's arguments with regards to a privilege log "suggest that Micron [Technology] has either not reviewed the document production or has unilaterally determined that the privilege log must be in some format deemed by Micron [Technology] to be appropriate." Response at 4. S2 Automation states that it is withholding five pages of electronic mail transmissions and a draft letter. See Response at 4. It relates that "the replacement document setting forth the basis of the privilege was placed in the document production exactly in the numeric sequence in which it was retained in S2 [Automation]'s files." Response at 4. S2 Automation argues, therefore, it "has met its obligations to identify protected information." Response at 4.

Next, S2 Automation argues that Micron Technology's objection as to the document production format is not well founded, because S2 Automation "went to considerable effort and expense to organize and produce the documents and to do so in a format that preserves the integrity of the documents." Response at 4. S2 Automation contends that Micron Technology's arguments are "without factual support and disingenuous at best." Response at 5. In support of this argument, S2 Automation emphasizes that "Micron [Technology] did not identify a single attachment that had been separated from its attached e-mail in a manner that would not allow the documents to be correlated." Response at 5. S2 Automation asserts that "to imply there was some scheme to produce the documents in a jumbled form that could not be reconstructed is inaccurate and misleading." Response at 5. S2 Automation contends that "the real objection to the document production is that Micron [Technology] apparently desires to have the documents produced in some format that allows the documents to be searched and data mined." Response at 6. S2 Automation argues that "if Micron [Technology] wants to have access to the documents in some particular

format so that can be data mined, Micron [Technology] can retrieve the documents from their own files."  Response at 6.

Third, S2 Automation argues that "Micron [Technology]'s counsel has engaged in an unwarranted leap of conjecture in its assumption that S2 [Automation]'s counsel passively allowed S2 [Automation] to determine and produce documents and response to discovery."  Response at 6. S2 Automation asserts "nothing could be further from the truth," because counsel for S2 Automation "met with the client on multiple occasions during the discovery process in order to organize and respond to discovery."  Response at 6.  S2 Automation also contends that, "if there was legitimacy to the argument, Micron [Technology] would have produced an e-mail or document from its own files in order to prove that S2 [Automation] did not produce a responsive document."  Response at 6.  S2 Automation emphasizes that Micron Technology has not produced any documents since the litigation was filed.  See Response at 6.

Regarding the response to RFP No. 2, S2 Automation argues that "the document production is replete with communications between S2 [Automation] and its representatives in Israel." Response at 7.  S2 Automation represents that "there are hundreds of communications between S2 [Automation] and its subcontractor by direct communication, by the forwarding of e-mails or by copying the individuals on the e-mails and those documents have been produced."  Response at 8. S2 Automation requests that the Court "consider appropriate sanctions for a representation under oath that S2 [Automation] did not produce intra-company communications when even a cursory review of the documents demonstrates that statement to be false."  Response at 8.

With respect to the responses to RFP Nos. 12, 13, 15, 18, 19, 40, 42, and 47, S2 Automation asserts that Micron Technology "asked a series of questions and made a series of requests that asked for the same information over and over and in some instances were virtually identical."  Response

at 8.  S2 Automation argues that "the responses therefore logically referred to prior responses." Response at 8.  S2 Automation emphasizes that, "had Micron [Technology] taken the time to review the production, it would have realized the documents were produced."  Response at 10.  S2 Automation contends that their responses are complete.  See Response at 21.  S2 Automation represents that the records Micron Technology seeks are within Micron Technology's computer database and that "S2 would be happy to retrieve the information from Micron [Technology]'s computer systems if Micron [Technology] will allow access to those data bases."  Response at 22.

Regarding the responses to RFP Nos. 14, 24, 25, 26, 27, and 28, S2 Automation argues that its "objection[s were] made because Micron [Technology] put no time limitation on its request[s]." Response at 10.  S2 Automation represents that "Micron [Technology] can retrieve the information at will."  Response at 11.  "S2 [Automation] therefore questions whether the purpose of the request was for harassment or simply a lack of understanding of Micron [Technology]'s own computer systems."  Response at 11.  S2 Automation argues that, "if the request was truly for the purpose of obtaining information as opposed to for purposes of harassment, Micron [Technology] could have simply obtained the information from its own accounting offices."  Response at 15.  S2 Automation contends that it objected to the requests, because the requests sought discovery relating to a too broad period of time.  See Response at 14, 17. S2 Automation also argues that the objections that the requests are not reasonably calculated to lead to the discovery of admissible evidence is relevant, because the requests do not pertain to an affirmative defense or affirmative claim asserted in the lawsuit.  See Response at 15, 17.  S2 Automation asserts that, "in spite of the deficiency of the request[s], the documents were identified and produced."  Response at 14.

Regarding the response to RFP No. 20, S2 Automation argues that the documents it produced provided the relevant information that Micron Technology sought and that what S2 Automation paid

-17-

for the items is not relevant to the cause of action.  See Response at 13.  S2 Automation asserts that
"in spite of the fact that the request seems to have been interposed for harassment purposes, S2
[Automation] produced the documents."  Response at 14.  Regarding the response to RFP No. 29,
S2 Automation represents that "S2 does not have documents regarding S2 Israel" and that "S2 Israel
is not a wholly owned subsidiary of S2 [Automation]."  Response at 18.  S2 Automation argues that
if Micron Technology "wants to request documents in another country from a foreign company it
should do so under the laws of the country which has jurisdiction over that company."  Response
at 18.  Regarding the responses to RFP Nos. 31, 32, and 33, S2 Automation asserts that "Astanovsky
is not an employee of S2 [Automation] and does not have any documents like an employment
contract."  Response at 18.  S2 Automation argues that the responses are accurate, because "S2
[Automation] does not have documents responsive to the requests."  Response at 18.  S2 Automation
also argues that, "if there is any basis for requesting information from Astanovsky, that information
should be requested in Israel."  Response at 19.

Regarding the responses to RFP Nos. 37 and 41, S2 Automation asserts that it "did not
independently track the activities."  Response at 19.  S2 Automation represents that "Micron
[Technology] has the records and S2 [Automation] has asked that they be produced in conjunction
with the rule 26 disclosure obligations of Micron [Technology]."  Response at 19.  S2 Automation
argues that "perhaps no other set of requests more pointedly illustrates Micron [Technology]'s
conduct to date in this litigation."  Response at 19.  S2 Automation asserts that Micron Technology
has refused to give it access to the computer database where the documents which Micron
Technology seeks are located.  See Response at 19.  Regarding the responses to RFP Nos. 44 and
45, S2 Automation argues that the "the responses are complete and thorough."  Response at 21.  S2
Automation represents that "the e-mails in which the Track Cars and Tool Kits are discussed are

-18-

specifically identified . . . as are the documents that set out item by item which tools were in each tool kit." Response at 21. Regarding the response to RFP No. 50, S2 Automation asserts that "the response is self explanatory." Response at 23. S2 Automation argues that "the documents" in its possession "involving communication to and from Astanovsky in S2 [Automation]'s possession . . . have been produced." Response at 23. S2 Automation also contends that "the limited communications involving attorney client communications were properly identified." Response at 23. Regarding the response to RFP No. 51, S2 Automation argues that "Micron [Technology] has simply made a misrepresentation to the Court," because S2 Automation produced the documents. Response at 23. Regarding the response to RFP No. 54, S2 Automation argues that, "if there was some . . . basis for the request, it might arguably lead to the discovery of admissible evidence." Response at 24. S2 Automation represents, however, that "those facts and defenses do not exist and the request is burdensome and appears to have been interposed for harassment purposes." Response at 24.

S2 Automation argues, in conclusion, that "Micron [Technology]'s actions in filing this Motion To Compel could not have been entered in to in good faith." Response at 24. S2 Automation asserts that "the arguments and associated affidavit in Micron [Technology]'s Motion contain a number of misrepresentations that the Court should evaluate in determining whether sanctions against Micron [Technology] are appropriate." Response at 24. S2 Automation requests "the Court to deny the Motion to Compel, award S2 [Automation] its attorney fees and costs as the Court determines appropriate, [and] deny any attempt by Micron [Technology] to delay this litigation." Response at 24.

On June 4, 2012, Micron Technology filed Micron Technology, Inc.'s Reply Brief in Support of Motion to Compel. See Doc. 62 ("Reply"). Micron Technology asserts that "S2 [Automation]

concedes its failure to provide a proper privilege log." Reply at 1. Micron Technology argues that "the problem with S2 [Automation]'s argument is that when it first interposed a privilege objection as part of its original production, S2 [Automation] did not reference the page of the production where the 'log' was." Reply at 2. Micron Technology asserts that "it is inappropriate for S2 [Automation] to contend that it provided a proper log for all privileged documents when the only item even resembling a privilege log was buried (without indication) within 2,000 plus pages of documents and not referenced specifically in the responses." Reply at 2. Micron Technology "requests that the Court order S2 [Automation] to generate a proper and adequate privilege log in the form requested in Micron [Technology]'s opening brief." Reply at 2.

At the hearing on June 15, 2012, Micron Technology argued that S2 Automation did not produce the privilege log separately from other responsive documents, such that it was difficult to easily locate. See Transcript of Hearing at 27:9-28:5 (taken June 15, 2012)(Court)("Tr.").[6] Micron Technology stated that it would be better practice if, in the future, S2 Automation provides its privilege log separately rather than along with responsive documents. See Tr. at 28:8-17 (Randolph, Court). S2 Automation stated that it would do so in the future. See Tr. at 28:21-25 (Court, Gutierrez). Micron Technology stated that it otherwise had adequate information regarding the withheld documents and that it did not need to pursue any further relief regarding the privilege log. See Tr. at 29:3-8 (Court, Randolph).

Micron Technology asserted that it has the right, under rule 34(b)(2)(E)(ii), to specify certain formats in which a party will produce ESI. See Tr. at 29:22-30:2 (Randolph). It related that S2 Automation has produced various electronic mail transmissions in a form other than the one Micron

_____

[6]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Technology requested and in a form that makes them difficult to make useful for this litigation.  See Tr. at 31:7-17 (Court).  Micron Technology noted that modern electronic mail transmission systems and other computer programs permit a party to sort through electronic mail transmissions in their native format to make them searchable.  See Tr. at 32:6-11 (Randolph).  S2 Automation confirmed that it produced the emails in PDF.  See Tr. at 35:11-14 (Court, Gutierrez).  Micron Technology acknowledged that it was not seeking additional electronic mail transmissions, but rather production of those electronic mail transmissions in their native format.  See Tr. at 36:18-22 (Court, Randolph).  Micron Technology noted that production of the electronic mail transmissions in native format would also provide them with metadata information about the documents.  See Tr. at 36:25-37:3 (Randolph).  S2 Automation argued that it should not have to produce metadata, because there may be sensitive information about who viewed certain electronic mail transmissions.  See Tr. at 37:17-39:9 (Gutierrez).  The Court questioned S2 Automation how any of that information would be privileged, and S2 Automation asserted that some of the electronic email transmissions may have been drafted in preparation for litigation.  See Tr. at 40:2-22 (Court, Gutierrez).  The Court stated that it did not appear there would be much additional burden on S2 Automation to produce these electronic mail transmissions in their native format if it has already identified what electronic mail transmissions it needs to produce.  See Tr. at 40:23-41:1 (Court).

Regarding the search strategy which S2 Automation took when determining what documents to produce, the Court noted that an interrogatory would likely be a better tool to obtain this information than a request for production.  See Tr. at 44:24-45:10 (Court).  The Court related that, if S2 Automation certifies it has produced all responsive documents, there is little more that the Court can do now to require them to produce documents, unless further discovery reveals that the search was inadequate.  See Tr. at 44:24-45:10 (Court).  Micron Technology noted that S2

Automation has taken the position that it has no obligation to disclose documents in S2 Israel's and

Astanovsky's possession.  See Tr. at 45:11-18 (Randolph).  The Court provided the parties guidance

that, on the issue of what documents are in a parties' control, it considers a document to be in a

parent corporation's control if it can pick up the telephone and have a related entity send it a given

document.  See Tr. at 45:21-46:9 (Court).  The Court stated that, if S2 Automation does not have

the power to make Counterdefendant S2 Automation Israel, LLC ("S2 Israel") provide documents

to it under that standard, the Court would require S2 Automation to have a corporate official with

S2 Automation provide an affidavit to that effect.  Tr. at 46:14-21 (Court).  The Court informed S2

Automation that drafts of documents, along with the final version of documents, can be responsive

discovery and that it must produce drafts if the final version of the document is responsive.  See Tr.

at 48:20-49:22 (Court, Gutierrez).  Micron Technology noted that it is highly difficult to make

productive use of S2 Automation's responses to requests for production based on the overuse of

cross references to responses to other discovery requests.  See Tr. at 51:22-52:11 (Randolph, Court).

Micron Technology asserted that this pattern of responses will make it difficult to sort through

discovery if the need for supplementation of these responses ever arises.  See Tr. at 55:1-10

(Randolph).  The Court agreed and stated that S2 Automation must amend its responses to

individually answer each discovery request.  See Tr. at 55:17-56:1 (Court).  Micron Technology

related that the Court's guidance on the standards for what documents are in a party's possession

or control has resolved many of its specific objections to discovery responses that it raised in its

Motion to Compel.  See Tr. at 57:11-17 (Randolph).

Micron Technology then pursued rulings from the Court on the remaining issues it had with

S2 Automation's responses to requests for production.  Regarding RFP No. 27, Micron Technology

contended that an objection that the documents are in Micron Technology's possession is not a valid

objection to a discovery request.  See Tr. at 57:25-58:6 (Randolph).  The Court stated that it has confronted this issue in prior cases, and told S2 Automation that it must produce any documents it has that are responsive to the request.  See Tr. at 58:7-14 (Court).  The Court noted that S2 Automation has no obligation to produce documents that it does not have, but related that S2 Automation cannot object to discovery responses on the basis that Micron Technology already has the information. See Tr. at 58:23-59:1 (Court). The Court also stated that, in the amended responses S2 Automation provides to Micron Technology, it must state clearly that it has no responsive documents to a discovery request if that is S2 Automation's position.  See Tr. at 59:8-23 (Randolph, Court, Gutierrez).  Regarding RFP No. 25, Micron Technology stated that it has received only twelve pages of documents regarding payments which S2 Automation has received for inventory and that it believes there are likely more payment records out there which S2 Automation has not produced.  See Tr. at 59:25-60:16 (Randolph).  The Court discussed with Micron Technology what a proper timeframe would be in terms of what payment data S2 Automation must produce, and the Court set a date of documents generated starting January 1, 2006, as the furthest back date from which S2 Automation must provide documents.  See Tr. at 65:9-23 (Court, Randolph).  Micron Technology suggested a timeframe of five years before the termination of the contracts at issue.  See Tr. at 65:16-18 (Randolph).  The Court denied the Motion to Compel as it relates to RFP No. 25 without prejudice to Micron Technology renewing its requests if it concludes that it needs documents generated before that date.  See Tr. at 65:25-66:3 (Court).

The Court stated it was inclined to require additional production on the dispute over ESI but stated that it would consult the applicable Sedona Conference[7] guidance and the applicable case law.

---

[7] "The Sedona Conference® (TSC) is a nonprofit, 501(c)(3) research and educational institute dedicated to the advanced study of law and policy in the areas of antitrust law, complex litigation,

See Tr. at 73:4-13 (Court).  The Court stated that S2 Automation could discuss with its consultants the potential costs for producing ESI as Micron Technology has requested and provide that information to the Court and opposing counsel by letter.  See Tr. at 43:22-44:2 (Court).  The Court related that Micron Technology could send a letter to the Court and opposing counsel to more fully discuss some of the authority S2 Automation has cited.  See Tr. at 44:2-6 (Court).

With respect to RFP Nos. 26 and 27, Micron Technology related that information regarding employee payroll and timesheets for the facility where S2 Automation had a contract in Israel is relevant, because one of Micron Technology's contentions is that there was good cause to terminate a contractual relationship with S2 Automation.  See Tr. at 66:18-67:7 (Randolph).  Micron Technology noted that the lack of proper personnel at the facility would be relevant to a factfinder deciding that issue.  See Tr. at 66:18-67:7 (Randolph).  The Court then overruled S2 Automation's objection that this information is not relevant and required production of any responsive documents in its possession.  See Tr. at 67:8-19 (Court, Gutierrez).  Regarding RFP No. 28, Micron Technology made a similar argument that shipping and other records related to materials S2 Automation transported to the facility would be relevant on the issue of good cause.  See Tr. at 67:20-68:3 (Randolph).  The Court overruled S2 Automation's objection that this information was not relevant and stated that it must produce all responsive documents in its possession.  See Tr. at 68:7-9 (Court).  Regarding RFP No. 47, Micron Technology asserted that it believes that there are documents out there that relate to S2 Automation's improper use of equipment at the facility in Israel and argued that S2 Automation should amend its response to provide this information.  See Tr. at 68:11-23 (Randolph).  The Court ordered S2 Automation to supplement its response given that Micron

---

and intellectual property rights."  Sedona Website, supra.

Technology has alleged that S2 Automation improperly used materials at the Israeli facility.  See Tr. at 68:24-69:4 (Court).  The Court stated that S2 Automation was free to deny any assertion that it has improperly used the materials at this facility, but informed S2 Automation that it still needed to produce any documents that are responsive to RFP No. 47.  See Tr. at 72:4-16 (Gutierrez, Court). Regarding RFP No. 50, it argued that conversations between S2 Automation representatives and Astanovsky are relevant given the allegations that S2 Automation and Astanovsky collaborated to injure Micron Israel.  See Tr. at 76:7-22 (Randolph).  S2 Automation responded that Micron Technology's predecessor employed Astanovsky and that Micron Technology likely has this information already.  See Tr. at 69:23-70:2 (Gutierrez).  The Court overruled S2 Automation's objections to RFP No. 50 and told it to produce any responsive documents in its possession.  See Tr. at 70:3-11 (Court).  Regarding RFP No. 51, Micron Technology asked the Court, consistent with the Court's earlier statements at the hearing, to require S2 Automation to produce any responsive documents that are in its possession.  See Tr. at 70:14-71:2 (Randolph).  The Court stated that S2 Automation needs to amend its responses to identify responsive documents it has and, if it does not have responsive documents, to state that it has no responsive documents.  See Tr. at 71:9-12 (Court).

On June 27, 2012, Alicia Gutierrez, counsel for S2 Automation, sent a letter to the Court as part of a facsimile transmission.  See Letter from Alicia L. Gutierrez to the Court (dated June 27, 2012), filed June 27, 2012 (Doc. 75)("June 27, 2012 Letter").  The June 27, 2012 Letter provides "the estimated cost S2 Automation . . . would incur to produce the approximate 1,700 pages of electronically stored information . . . in the format requested by Micron Technology." June 27, 2012 Letter at 2.  Ms. Gutierrez states that she has "spoken with the individual that is most knowledgeable at S2 [Automation] regarding the cost of such additional production of ESI," and notes that "[h]e indicated that the major costs are re-identifying ESI regarding Micron [Technology] and then

converting the ESI to the desired formats, including all extracted OCR texts, embedded edits and all metadata."   June 27, 2012 Letter at 3.   She relates that "[h]e estimates this will take approximately 350 man hours because S2 [Automation] has no automated way to search and recover the requested documents."   June 27, 2012 Letter at 3.   Ms. Gutierrez states that, "[a]t a minimum charge of $100 per man hour to carry out this task, it will cost approximately $35,000.00 to fulfill the production request in this manner."   June 27, 2012 Letter at 3.   The June 27, 2012 Letter provides, for database information and audio requests, the following cost estimate: (i) $7,200.00 for the time required to perform a search, re-identify, and collect pertinent materials; and (ii) $3,000.00 for the time to convert the materials to Micron Technology's desired format.   See June 27, 2012 Letter at 3.   The June 27, 2012 Letter provides the following cost estimate for extracting text from electronic documents: (i) $9,600.00 for the time to convert to TIFF format; and (ii) $9,600.00 for the time to create all materials as searchable text from source formats.   See June 27, 2012 Letter at 3.   The June 27, 2012 Letter provides the following cost estimate for copying or scanning hardcopy documents to produce them electronically: $5,600.00.   See June 27, 2012 Letter at 3.   Ms. Gutierrez asserts that "the parties in this case did not agree that electronic files would be produced in any particular format during the Rule 26(f) conference" and that Micron Technology "has not made a specific showing of a particularized need for the metadata."   June 27, 2012 Letter at 3.   Ms Gutierrez represents that, "if Micron [Technology] seeks metadata for a specific document or a limited number of documents where 'information about a particular data set which describes how, when and by whom it was collected, created, accessed, or modified and how it was formatted is necessary," it will be "willing to produce the information regarding" those documents.   June 27, 2012 Letter at 3.

On June 29, 2012, Scott Randolph, counsel for Micron Technology, sent through facsimile transmission a letter to the Court.   See Letter from Scott E. Randolph to the Court (dated June 29,

2012), filed June 29, 2012 (Doc. 77)("June 29, 2012 Letter").  Mr. Randolph emphasizes that S2

Automation has not timely objected to Micron Technology's "requested format for production and

chose to provide ESI in a format that degrades the usefulness of the information provided."  June

29, 2012 Letter at 3.  He notes that, "[a]fter processing by S2 [Automation], the responsive ESI was

no longer term searchable, was not organized by custodian, and, in many cases, resulted in

attachments being separated from source messages." June 29, 2012 Letter at 3.  Mr. Randolph states

that, "[t]o facilitate resolution of this dispute, Micron [Technology] is willing to accept responsive

ESI in native format, which is how ESI is maintained on S2 [Automation]'s computer systems and

network." June 29, 2012 Letter at 3.  He relates that, "[u]pon receipt, Micron [Technology] will

process the responsive ESI into its preferred format, assign Bates numbers to the production, and

provide a disc to S2 [Automation] with the documents including Bates numbers."  June 29, 2012

Letter at 4.  He states that, "[b]ecause S2 [Automation] has indicated a preference for .pdf, Micron

[Technology] will provide the documents in .pdf format."  June 29, 2012 Letter at 4.  He contends

that "[a]ny suggestion that S2 [Automation] maintains its ESI in paper or .pdf format defies common

sense," because, "[b]y its nature, ESI is maintained electronically." June 29, 2012 Letter at 3. n.1.

He asserts that, "by reviewing what S2 [Automation] did produce, it is apparent that S2

[Automation] searched through its e-mail and electronic folders, printed the files to .pdf in a non-

searchable manner, and assigned bates numbers to the information produced." June 29, 2012 Letter

at 3 n.1.  Mr. Randolph relates that this process will not be unduly burdensome, because "S2

[Automation] has already located responsive information" and "[t]here is no reason for S2

[Automation] to spend hundreds of hours searching for that information again when it could simply

re-produce the information already gathered in the proper format." June 29, 2012 Letter at 5.

      At the hearing on July 24, 2012, Micron Technology restated much of what Mr. Randolph

stated in his June 29, 2012 Letter, including that there have been continuing issues with the format

for production of ESI.[8]   See Federal Digital Tape Recorder at 10:08:43-10:38 (July 24,

2012)(Randolph)("FTR").  Micron Technology, on its own, raised the question of what format S2

Automation wanted once the Court entered a protective order and Micron Technology began

producing documents.  See FTR at 10:08:42-10:38 (Randolph).  Micron Technology noted that this

problem could recur throughout discovery if the Court does not provide some guidance, which

would result in more disputes.  See FTR at 10:10:50-11:42 (Randolph, Court).  S2 Automation

stated that it has produced documents in the manner it has, because it believes it is necessary to

Bates stamp the documents.  See FTR at 10:12:01-13:42 (Gutierrez, Court).  Micron Technology

reiterated that it was willing to bear the burden of accepting ESI from S2 Automation in native

format, converting that ESI to appropriate formats, providing Bates stamps for those documents, and

providing S2 Automation with the processed documents.  See FTR at 10:14:20-15:05 (Randolph).

S2 Automation said it would accept PDF format pending the Court's decision on the Motion to

Compel and would revisit that issue if necessary when the Court rules.  See FTR at 10:22:55-23:12

(Holland).  Following the discussion of the issue, Micron Technology appears to have realized that

it had potentially boxed itself in on the format for production, balking at S2 Automation's response,

saying it did not want to produce information now in PDF format and then have to produce

documents in another format later.  See FTR at 10:25:25-26:12 (Randolph).  Micron Technology

stated it had already done the work to prepare for document production and did not know, given the

formatting process necessary to get the ESI ready for production, if it could produce the information

in as broad a range of formats if S2 Automation requested a format different than PDF.  See FTR

---

[8]At the hearing on July 24, 2012, the Court was scheduled to hear a different discovery motion, but the parties also discussed issues related to the Motion to Compel.  See Doc. 80.

at 10:25:25-26:12, 10:27:02-28:18 (Randolph).  The Court stated that, if S2 Automation decides to

request a different format, it should do so within twenty-four hours of when the Court issues its

opinion on the Motion to Compel.  See FTR at 10:26:30-26:50 (Court).  Micron Technology noted

that parties have an obligation to designate in advance along with a discovery request a particular

format if they request a particular format.  See FTR at 10:25:40-26:00 (Randolph).

## RELEVANT LAW REGARDING DISCOVERY

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's

claim or defense."  Fed. R. Civ. P. 26(b)(1).  Information sought is relevant "if the discovery appears

reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

Federal courts have held that the scope of discovery under rule 26 is broad.  See Gomez v. Martin

Marietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995); Sanchez v. Matta, 229 F.R.D. 649, 654

(D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be

broadly and liberally construed to achieve the full disclosure of all potentially relevant

information.").  The federal discovery rules reflect the courts' and Congress' recognition that

"mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."

Hickman v. Taylor, 329 U.S. 495, 507 (1947).  As a result, rule 26 "contemplates discovery into any

matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that

is or may be raised in a case."  Anaya v. CBS Broad., Inc., 251 F.R.D. 645, 649-650 (D.N.M.

2007)(Browning, J.)(internal quotation marks and citation omitted).

Parties may use several methods, set forth in the Federal Rules of Civil Procedure, to conduct

discovery.  Parties may "serve on any other party no more than 25 written interrogatories."  Fed. R.

Civ. P. 33(a)(1).  "An interrogatory may relate to any matter that may be inquired into under Rule

26(b)."  Fed. R. Civ. P. 33(a)(1).  Parties may also "serve on any other party a request within the

-29-

scope of Rule 26(b)" for production of documents in the "responding party's possession, custody, or control." Fed. R. Civ. P. 34(a).  "Control comprehends not only possession, 'but also the right, authority, or ability to obtain the documents.'" Walker v. THI of N.M. at Hobbs Ctr., No. 09-0060, 2010 WL 4929069, at *5 (D.N.M. Oct. 20, 2010)(Browning, J.)(quoting Ice Corp. v. Hamilton Sundstrand Corp., 245 F.R.D. 513, 516 (D. Kan. 2007)).  Courts will find documents to be within a party's control if the party has actual possession, custody, control, or the legal right to obtain the documents on demand.  See In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995); Abreu v. N.M. Children, No. 08-1006, 2010 WL 4053978, at *25 (D.N.M. Sept. 30, 2010)(Browning, J.); Ice Corp. v. Hamilton Sundstrand Corp., 245 F.R.D. at 516-17.  Courts will also find that documents are within a party's control when it has "the . . . practical ability to obtain the documents," particularly when the opposing party does not have the same practical ability to do so. Scherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 138 (2d Cir. 2007).  Accord R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 24 (S.D.N.Y. 2010)(Dolinger, M.J.)("Evidence in a party's 'control' has been interpreted to mean evidence that the party has the legal right, authority, or practical ability to obtain by virtue of its relationship with the party in possession of the evidence."); Huggins v. Fed. Express Corp., 250 F.R.D. 404, 408 (E.D. Mo. 2008)("Control is defined broadly as the ability to obtain upon demand documents in the possession of another.  The party to whom the discovery is directed need not have legal ownership or actual physical possession, but rather a practical ability to obtain the documents." (internal quotation marks omitted)).  As the United States Court of Appeals for the Second Circuit has stated:

> We also think it fairly obvious that a party also need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents.  However, if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required.

Scherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d at 138.

## LAW REGARDING MOTIONS TO COMPEL

Rule 37(a) of the Federal Rules of Civil Procedure provides:

On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person party failing to make disclosure or discovery in an effort to obtain it without court action.

Under rule 37(a)(4), "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  If a party refuses to turn over documents through proper discovery, a defendant should move to compel production pursuant to rule 37.  See Lane v. Page, 727 F.Supp.2d 1214, 1236 n.15 (D.N.M. 2010)(Browning, J.).

## RELEVANT LAW REGARDING PRIVILEGE LOGS

The scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense," and information sought is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  It is the burden of the party invoking the attorney-client privilege to establish the applicability of that privilege, which is "narrowly construed."  Foster v. Hill, 188 F.3d 1259, 1264 (10th Cir. 1999).  Accord Motley v. Marathon Oil Co., 71 F.3d 1547, 1550 (10th Cir. 1995).  It is therefore insufficient for a party to assert, without more, that documents sought are privileged.  See FDIC v. United Pac. Ins. Co., 152 F.3d 1266, 1276 n.6 (10th Cir. 1998).  "The same rule is true for assertions that the work-product doctrine protects documents."  United States v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, No. 08-0501, 2009 WL 2426194, at *4 (D.N.M. July 20, 2009)(Browning, J.).  Accord Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).

"Rule 26(b)(5) requires that a party which withholds information on the grounds that it is

privileged or subject to protection as trial-preparation material must identify, in some detail, which information is privileged and describe it in a way that allows the opposing party to ascertain the applicability of the privilege."   United States v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, 2009 WL 2426194, at *4.  It is "well settled that failure to produce a privilege log . . . may be deemed waiver of the privilege." Anaya v. CBS Broad., Inc., 251 F.R.D. at 651.  Accord Fed. R. Civ. P. 26(b)(5) advisory committee's note to 1993 amendment (explaining that to withhold material without providing the information required may be viewed as a waiver of the privilege or protection).  "Although 'minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances bear against finding a waiver,' the absence of evidence that the violating party ever produced a privilege log may justify a waiver of the privilege." United States v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, 2009 WL 2426194, at *4.

## RELEVANT LAW REGARDING ELECTRONIC DISCOVERY

Rule 34(b)(1) provides:

(1)     **Contents of the Request.**  The request:

    (A)     must describe with reasonable particularity each item or category of items to be inspected;

    (B)     must specify a reasonable time, place, and manner for the inspection and for performing the related acts; and

    (C)     may specify the form or forms in which electronically stored information is to be produced.

Fed. R. Civ. P. 34(b)(1).  Rule 34(b)(2)(E) provides:

    (E)     **Producing the Documents or Electronically Stored Information.**  Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

        (i)     A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the

-32-

categories in the request;

(ii)     If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii)    A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E).  The advisory committee notes to the 2006 amendments to subsection

(b) provide in relevant part:

The amendment to Rule 34(b) permits the requesting party to designate the form or forms in which it wants electronically stored information produced.  The form of production is more important to the exchange of electronically stored information than of hard-copy materials, although a party might specify hard copy as the requested form.  Specification of the desired form or forms may facilitate the orderly, efficient, and cost-effective discovery of electronically stored information. The rule recognizes that different forms of production may be appropriate for different types of electronically stored information.  Using current technology, for example, a party might be called upon to produce word processing documents, e-mail messages, electronic spreadsheets, different image or sound files, and material from databases.   Requiring that such diverse types of electronically stored information all be produced in the same form could prove impossible, and even if possible could increase the cost and burdens of producing and using the information. The rule therefore provides that the requesting party may ask for different forms of production for different types of electronically stored information.

The rule does not require that the requesting party choose a form or forms of production.  The requesting party may not have a preference.  In some cases, the requesting party may not know what form the producing party uses to maintain its electronically stored information, although Rule 26(f)(3) is amended to call for discussion of the form of production in the parties' prediscovery conference.

The responding party also is involved in determining the form of production. In the written response to the production request that Rule 34 requires, the responding party must state the form it intends to use for producing electronically stored information if the requesting party does not specify a form or if the responding party objects to a form that the requesting party specifies.  Stating the intended form before the production occurs may permit the parties to identify and seek to resolve disputes before the expense and work of the production occurs.  A party that responds to a discovery request by simply producing electronically stored information in a form of its choice, without identifying that form in advance of the

production in the response required by Rule 34(b), runs a risk that the requesting party can show that the produced form is not reasonably usable and that it is entitled to production of some or all of the information in an additional form. Additional time might be required to permit a responding party to assess the appropriate form or forms of production.

      If the requesting party is not satisfied with the form stated by the responding party, or if the responding party has objected to the form specified by the requesting party, the parties must meet and confer under Rule 37(a)(2)(B) in an effort to resolve the matter before the requesting party can file a motion to compel. If they cannot agree and the court resolves the dispute, the court is not limited to the forms initially chosen by the requesting party, stated by the responding party, or specified in this rule for situations in which there is no court order or party agreement.

      If the form of production is not specified by party agreement or court order, the responding party must produce electronically stored information either in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable. Rule 34(a) requires that, if necessary, a responding party "translate" information it produces into a "reasonably usable" form. Under some circumstances, the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information. The rule does not require a party to produce electronically stored information in the form it which it is ordinarily maintained, as long as it is produced in a reasonably usable form. But the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation. If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.

Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendment.

      As Professor James Moore has stated:

      Ultimately, the cost and burden of supplying [requested] data may determine what form the requested information will take; however, the party requested to produce electronic data generally has the burden of showing undue expense or burden before the courts will shift the cost of producing the data to the requesting party.

7 J. Moore, Moore's Federal Practice § 34.12[3][b], at 34-44 (3d ed. 2012)(citing Bills v. Kennecott

Corp., 108 F.R.D. 459, 462 (D. Utah 1985)). Before the adoption of modern electronic discovery

rules, the Supreme Court of the United States opined:

> [A]lthough it may be expensive to retrieve information stored in computers when no program yet exists for the particular job, there is no reason to think that the same information could be extracted any less expensively if the records were kept in less modern forms.   Indeed, one might expect the reverse to be true, for otherwise computers would not have gained such widespread use in the storing and handling of information.  Finally, the suggestion that petitioners should have used "different systems" to keep their records  borders on the frivolous.  Apart from the fact that no one has suggested what "different systems" petitioners should have used, we do not think a defendant should be penalized for not maintaining his records in the form most convenient to some potential future litigants whose identity and perceived needs could not have been anticipated.

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 362 (1978).

## ANALYSIS

Given that the parties' have resolved their differences regarding the privilege log S2 Automation has produced, the Court will direct the parties to separately produce a privilege log, separate from responsive document, in the future.  The Court will require S2 Automation to produce ESI either in native format or in the format Micron Technology has requested.  The Court will require S2 Automation to produce electronic mail transmissions along with their attachments.  If S2 Automation chooses to produce ESI in the format Micron Technology has requested, the Court will not require S2 Automation to separately produce metadata from that ESI.  Nevertheless, if Micron Technology makes a good faith request to obtain metadata from a given set of ESI, the parties are advised that the Court will be inclined to provide Micron Technology with the metadata it seeks. Consistent with the discussion at the hearing on July 24, 2012, S2 Automation has twenty-four hours from the filing of this opinion to request a specific format for production if it has a preferred format for production.  The Court will require S2 Automation to provide the search strategy it used to obtain responsive documents.  The Court will require S2 Automation to produce all responsive documents in its possession or control.  Accordingly, it should amend and/or supplement its

discovery responses consistent with that standard.  The Court will require S2 Automation to separately answer each request for production.  The Court will compel production on the RFP's -- RFP Nos. 25 through 28, 47, 50, and 51 -- that Micron Technology specifically pursued at the June 15, 2012 hearing.  The Court will require S2 Automation to pay eighty percent of the attorney's fees and costs that Micron Technology incurred in bringing the Motion to Compel.  Micron Technology will bear twenty percent of its own attorney's fees and costs incurred in bringing the Motion to Compel.

**I.  THE COURT WILL DENY THE MOTION TO COMPEL AS MOOT REGARDING THE DISPUTE OVER THE PRIVILEGE LOG, BECAUSE THE PARTIES RESOLVED THIS DISPUTE AT THE HEARING ON JUNE 15, 2012.**

"Rule 26(b)(5) requires that a party which withholds information on the grounds that it is privileged or subject to protection as trial-preparation material must identify, in some detail, which information is privileged and describe it in a way that allows the opposing party to ascertain the applicability of the privilege."  United States v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, 2009 WL 2426194, at *4.  Micron Technology requests that the Court order S2 Automation to produce a privilege log that sets forth: (i) the general nature of the document; (ii) the identity and position of its author; (iii) the date it was drafted; (iv) the identity and position of all recipients; (v) the document's present location; and (vi) the specific reasons for withholding the document. See Motion to Compel at 4 n.3.  Micron Technology argues that this information is necessary "so that Micron [Technology] can evaluate the applicability of any privilege claimed."  Motion to Compel at 4.  S2 Automation contends that Micron Technology's arguments with regards to a privilege log "suggest that Micron [Technology] has either not reviewed the document production or has unilaterally determined that the privilege log must be in some format deemed by Micron [Technology] to be appropriate."  Response at 4.  S2 Automation states that it withheld five pages

of electronic mail transmissions and a draft letter.  See Response at 4.  It relates that "the replacement document setting forth the basis of the privilege was placed in the document production exactly in the numeric sequence in which it was retained in S2's files."  Response at 4.  S2 Automation argues, therefore, it "has met its obligations to identify protected information."  Response at 4.  Micron Technology asserts that "S2 concedes its failure to provide a proper privilege log."  Reply at 1.  Micron Technology argues that "the problem with S2 [Automation]'s argument is that when it first interposed a privilege objection as part of its original production, S2 [Automation] did not reference the page of the production where the 'log' was."  Reply at 2.  Micron Technology asserts that "it is inappropriate for S2 [Automation] to contend that it provided a proper log for all privileged documents when the only item even resembling a privilege log was buried (without indication) within 2,000 plus pages of documents and not referenced specifically in the responses."  Reply at 2.  Micron Technology "requests that the Court order S2 [Automation] to generate a proper and adequate privilege log in the form requested in Micron [Technology]'s opening brief."  Reply at 2.

At the hearing on June 15, 2012, Micron Technology argued that S2 Automation did not produce the privilege log separately from other responsive documents, such that it was difficult to easily locate.  See Tr. at 27:9-28:5 (Court).  Micron Technology stated that it would be better practice if, in the future, S2 Automation provides its privilege log separately rather than along with responsive documents.  See Tr. at 28:8-17 (Randolph, Court).  S2 Automation stated that it would do so in the future.  See Tr. at 28:21-25 (Court, Gutierrez).  Micron Technology stated that it otherwise had adequate information regarding the withheld documents and that it did not need to pursue any further relief regarding the privilege log.  See Tr. at 29:3-8 (Court, Randolph).

The parties have largely resolved their differences regarding the privilege log, and Micron

Technology has stated that it need not pursue further relief regarding its argument that S2 Automation did not produce an adequate privilege log. The parties are advised that, in the future, they should produce a privilege log in such a way that it is easy for opposing counsel to locate the privilege log -- ideally separately from any other responsive documents. Doing so will avoid disputes. The parties should also ensure that they provide sufficient information regarding withheld documents to opposing counsel so that opposing counsel can properly assess whether to challenge an assertion of privilege. Thus, the Court will deny the portion of the Motion to Compel related to the privilege log as moot.

## II.     THE COURT WILL REQUIRE S2 AUTOMATION TO PRODUCE THE ELECTRONIC MAIL TRANSMISSIONS AT ISSUE IN EITHER NATIVE FORMAT OR IN THE FORMAT MICRON TECHNOLOGY HAS REQUESTED.

The Court will require S2 Automation to produce the electronic mail transmissions that Micron Technology finds objectionable either in: (i) their native format; or (ii) the format Micron Technology has requested. Micron Technology requested a specific format in its Discovery Request, but has also given S2 Automation the option to produce ESI natively. The Court will not require S2 Automation, to the extent it chooses to produce in a format that does not still contain embedded metadata, to separately produce metadata for a given piece of ESI. Nevertheless, if Micron Technology makes a good faith request to obtain metadata from a given set of ESI, the parties are advised that the Court will be inclined to provide Micron Technology with the metadata it seeks. Consistent with the discussion at the hearing on July 24, 2012, S2 Automation has twenty-four hours from the filing of this opinion to request a specific format for production if it has a preferred format for production.

### A.   S2 AUTOMATION MAY PRODUCE ESI IN NATIVE FORMAT OR IN THE FORMAT MICRON TECHNOLOGY HAS REQUESTED.

Rule 34(b)(1) provides:

(1)   **Contents of the Request.**  The request:

    (A)   must describe with reasonable particularity each item or category of items to be inspected;

    (B)   must specify a reasonable time, place, and manner for the inspection and for performing the related acts; and

    (C)   <u>may specify the form or forms in which electronically stored information is to be produced</u>.

Fed. R. Civ. P. 34(b)(1) (emphasis added).  The advisory committee notes to this rule confirm that a requesting party may specify a format for production of ESI.  <u>See</u> Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendments ("The amendment to Rule 34(b) permits the requesting party to designate the form or forms in which it wants electronically stored information produced.").  The applicable guidance from the Sedona Conference reflects that "the revised Rule 34(b) provides that a request may specify the form or forms in which electronically stored information is to be produced."  The Sedona Conference, <u>The Sedona Principles: Second Edition -- Best Practice Recommendations & Principles for Addressing Electronic Document Production</u> 22 (2d ed. 2007) [hereinafter <u>Sedona Best Practices</u>], <u>available at</u> https://thesedonaconference.org/download-pub/81.  Micron Technology has invoked rule 34(b) by specifically requesting a format in its Discovery Request:

    With respect to the format of production of hard-copy documents and ESI requested herein:

    a.   Produce, on media (CD/DVD, Flash Drive, etc.) all responsive Excel, Access, database records, and audio files (such as voice mail) in their native formats retaining all metadata.  For database records in proprietary systems, produce the records in Excel format;

b.     Produce, on media (CD/DVD, Flash Drive, etc.), all responsive ESI in single-paged Tagged Image Filed Format ("TIFF," Type 4, 300 DPI resolution), with an accompanying load file, an extracted text file of electronic documents that are not redacted, and an Optical Character Recognition ("OCR") text file of unredacted portions of redacted documents including document breaks and in a Ringtail format, preferably.  Preserve and produce all extracted text, embedded edits, and all metadata as part of the collection and production of electronic documents.  If possible, the load file should be compatible with Concordance, Summation, and Ringtail (an .lfp and corresponding .csv file would suffice).  If you used a search strategy to cull a responsive set of documents from your ESI, then also provide the search terms/strategies used in your collection efforts; and

c.     Produce all responsive hard-copy documents either in paper format, or electronically on media (CD/DVD, Flash Drive, etc.), in single-page TIFF with an accompanying load file, an extracted text file of electronic documents that are unredacted, and OCR text files of unredacted portions of redacted hard-copy documents (including document breaks and in a Ringtail format, preferably).  Ringtail's preferred format is single-page TIFF with multi-page OCR per document (Child level).

Discovery Request at 3-4.  S2 Automation never filed any objection to the requested format for production, and the time for objecting was thirty days from the date it received service of the Discovery Request.  See Fed. R. Civ. P. 34(b)(2) ("The party to whom the request is directed must respond in writing within 30 days after being served. . . . The response may state an objection to a requested form for producing electronically stored information.").

In responsive to discovery requests, S2 Automation produced responsive discovery in PDF format.  That format is not the one that Micron Technology requested, as it requested TIFF format[9] and extracted text files.[10]  As the United States Court of Appeals for the Third Circuit has stated, TIFF's are a common file format.  See Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d

---

[9]Micron Technology asserts that TIFF format is more compatible with one of its ESI-related computer programs, Ringtail.  See Discovery Request at 3-4.

[10]"An extracted text file is a file containing text taken from an original electronic document."  Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d at 161 n.4.

158, 161 n.2 (3d Cir. 2012)("Tagged Image File Format (TIFF) is [a] widely used and supported graphic file format[] for storing bit-mapped images, with many different compression formats and resolutions." (quoting The Sedona Conference, The Sedona Conference Glossary: E-Discovery & Digital Information Management 12 (S. Harris ed., 3d ed. 2010) [hereinafter Sedona Glossary] (alterations in original)(internal quotation marks omitted)).   Micron Technology has also offered a compromise to facilitate speedier production.   More specifically, it has stated that, "[t]o facilitate resolution of this dispute, Micron [Technology] is willing to accept responsive ESI in native format, which is how ESI is maintained on S2 [Automation]'s computer systems and network."   June 29, 2012 Letter at 3.   Micron Technology relates that, "[u]pon receipt, Micron [Technology] will process the responsive ESI into its preferred format, assign Bates numbers to the production, and provide a disc to S2 [Automation] with the documents including Bates numbers."   June 29, 2012 Letter at 4.

S2 Automation has argued that the format in which it keeps its electronic mail transmissions in the ordinary course of its business is PDF.   That assertion is inconsistent with how electronic mail systems generally work.   A "native file format is the 'file structure defined by the original creating application,' such as a document created and opened in a word processing application."   Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 161 n.2 (3d Cir. 2012)(quoting Sedona Glossary, supra, at 35).   While there is no uniform file format for electronic mail transmissions, no major electronic mail service of which the Court is aware stores electronic mail transmissions in PDF format:

> Upon reception of email messages, email client applications save messages in operating system files in the file system.   Some clients save individual messages as separate files, while others use various database formats, often proprietary, for collective storage.   A historical standard of storage is the mbox format.   The specific format used is often indicated by special filename extensions:

**eml**

Used by many email clients including Microsoft Outlook Express, Windows Mail and Mozilla Thunderbird.  The files are plain text in MIME format, containing the email header as well as the message contents and attachments in one or more of several formats.

**emlx**

Used by Apple Mail.

**msg**

Used by Microsoft Office Outlook and OfficeLogic Groupware.

**mbx**

Used by Opera Mail, KMail, and Apple Mail based on the mbox format.

Some applications (like Apple Mail) leave attachments encoded in messages for searching while also saving separate copies of the attachments.  Others separate attachments from messages and save them in a specific directory.

Email, Wikipedia, http://en.wikipedia.org/wiki/Email (last visited July 21, 2012)(emphasis in original).  Furthermore, PDF is a "static" or "imaged format," rather than a native format:

"Static" format (often called "imaged format"), such as TIFF or PDF, are designed to retain an image of the document as it would look viewed in the original creating application but do not allow metadata to be viewed or the document information to be manipulated unless agreed-upon metadata and extracted text are preserved.

Sedona Glossary, supra, at 35.  S2 Automation may commonly transfer the contents of its electronic mail transmissions into PDF files as part of its business, but that does not mean that the native format for its electronic mail transmissions is PDF format.

S2 Automation has raised concerns about the costs of providing discovery in the manner Micron Technology has requested.  S2 Automation relates that one of its employees "estimates this [process] will take approximately 350 man hours because S2 [Automation] has no automated way to search and recover the requested documents."  June 27, 2012 Letter at 3.  It states that, "[a]t a

-42-

minimum charge of $100 per man hour to carry out this task, it will cost approximately $35,000.00

to fulfill the production request in this manner." June 27, 2012 Letter at 3.  The June 27, 2012 Letter

provides, for database information and audio requests, the following cost estimate: (i) $7,200.00 for

the time required to perform a search, re-identify, and collect pertinent materials; and (ii) $3,000.00

for the time to convert the materials to Micron Technology's desired format.  See June 27, 2012

Letter at 3.  The June 27, 2012 Letter provides the following cost estimate for extracting text from

electronic documents: (i) $9,600.00 for the time to convert to TIFF format; and (ii) $9,600.00 for

the time to create all materials as searchable text from source formats.  See June 27, 2012 Letter at

3.  The June 27, 2012 Letter provides the following cost estimate for copying or scanning hardcopy

documents to produce them electronically: $5,600.00.  See June 27, 2012 Letter at 3.

Some of the costs that S2 Automation has provided are not relevant.  For instance, Micron

Technology never requested that S2 Automation produce hardcopy documents specifically in

electronic format, as it gave S2 Automation the option to produce either hard copies of those

documents or electronic versions of those documents.  See Discovery Request at 4 ("Produce all

responsive hard-copy documents either in paper format, or electronically on media (CD/DVD, Flash

Drive, etc.), in single-page TIFF . . . .").  Thus, there is no need to incur $5,600.00 to produce

hardcopy documents in electronic form.  An additional $21,600.00 of those costs, which S2

Automation states are necessary to transform the ESI to the format Micron Technology has

requested, is also avoidable.  Micron Technology has stated that it will accept native format for ESI

rather than requiring production in TIFF format along with extractable text files.  Thus, according

to its own calculation, S2 Automation will incur at most $7,200.00 for the time required to perform

a search, re-identify, and collect pertinent materials.  S2 Automation has estimated that it will

require forty-eight hours to gather this ESI.  See June 27, 2012 Letter at 3.  Given that S2

Automation has already produced this discovery in PDF format, the Court believes that this forty-eight hour estimate is likely on the high end. It has already identified the responsive ESI. S2 Automation never objected to Micron Technology's requested format and does not appear to have communicated with Micron Technology to avoid some of the additional costs it is now facing. See Fed. R. Civ. P. 26(f) advisory committee's note to 2006 amendment ("When the parties do anticipate disclosure or discovery of electronically stored information, discussion at the outset may avoid later difficulties or ease their resolution."). If S2 Automation must incur $7,200.00 to produce this discovery, those costs are in part the result of its own conduct in not complying with Micron Technology's discovery requests. See Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendments ("Specification of the desired form or forms may facilitate the orderly, efficient, and cost-effective discovery of electronically stored information.").

Regarding the electronic mail transmissions, whichever format S2 Automation chooses for production, it should produce the attachments along with the electronic mail transmissions. The advisory committee's notes to rule 34(b) provide some guidance on this matter:

> But the option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation. If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.

Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendment. By separating electronic mail transmissions from their attachments, S2 Automation has made "it more difficult or burdensome for the requesting party to use the information efficiently in the litigation." Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendment. As another court has stated when specifically addressing the matter of attachments to electronic mail transmissions: "Context matters. The

attachments can only be fully understood and evaluated when read in the context of the emails to which they are attached.  That is the way they were sent and the way they were received.  It is also the way in which they should be produced."  Families for Freedom v. U.S. Customs and Border Prot., No. 10 Civ. 2705(SAS), 2011 WL 4599592, at *5 (S.D.N.Y. Sept. 30, 2011).

Furthermore, S2 Automation should err on the side of producing all messages that are part of a given electronic-mail-transmission chain.  As an evidentiary matter, every part of a conversation can become admissible upon the admission of other portions of the conversation.  See Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part -- or any other writing or recorded statement -- that in fairness ought to be considered at the same time.").  Failing to produce an entire conversation could lead to a situation where the opposing party may feel the omission of part of a conversation in discovery is misleading.  Generally, parties are entitled to present an entire part of a conversation to avoid leaving the jury or factfinder with a false impression:

> The district court agreed that Wright had opened the door by leaving the jury with a false impression about the conversation between Wright and Crawford and that the government was entitled to correct that false impression.
>
> . . . We have carefully reviewed the trial transcript and conclude that the district court did not abuse its discretion in allowing the government to more fully develop the nature of the conversation between Wright and Crawford, including the fact that Wright had admitted to being involved in other drug transactions.

United States v. Wright, 92 F.3d 1197, 1996 WL 446912, at *5 (10th Cir. 1996).  Rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case."  Anaya v. CBS Broad., Inc., 251 F.R.D. at 649-650.

-45-

**B.   S2 AUTOMATION IS NOT AUTOMATICALLY REQUIRED TO SEPARATELY PRODUCE METADATA IF IT PRODUCES IN TIFF FORMAT.**

The Sedona Conference has provided the following definition for metadata:

Data typically stored electronically that describes characteristics of ESI, found in different places in different forms.  Can be supplied by applications, users or the file system.  Metadata can describe how, when, and by whom ESI was collected, created, accessed, modified, and how it is formatted.  Can be altered intentionally or inadvertently.  Certain metadata can be extracted when native files are processed for litigation.  Some metadata, such as file dates and sizes, can easily be seen by users; other metadata can be hidden or embedded and unavailable to computer users who are not technically adept.  Metadata is generally not reproduced in full form when a document is printed to paper or electronic image.

Sedona Glossary, supra, at 34.  The Tenth Circuit has defined metadata as follows: "Metadata, which is commonly described as 'data about data,' is defined as '[s]econdary data that organize, manage, and facilitate the use and understanding of primary data.'"  United States v. Haymond, 672 F.3d 948, 952 n.10 (10th Cir. 2012)(alteration in original).  Principle 12 of the Sedona Principles addressing electronic document production provides:

Absent party agreement or court order specifying the form or forms of production, production should be made in the form or forms in which the information is ordinarily maintained or in a reasonably usable form, taking into account the need to produce reasonably accessible metadata that will enable the receiving party to have the same ability to access, search, and display the information as the producing party where appropriate or necessary in light of the nature of the information and the needs of the case.

Sedona Best Practices, supra, at 60.  Comment 12.a to Principle 12 provides in relevant part:

Aside from its potential relation to the facts of the case, metadata may also play a functional role in the usability of electronically stored information.  For example, system metadata may allow for the quick and efficient sorting of a multitude of files by virtue of the dates or other information captured in metadata.  In addition, application metadata may be critical to allow the functioning of routines within the file, such as cell formulae in spreadsheets.

Sedona Best Practices, supra, at 60.  Comment 12.b to Principle 12 provides in relevant part:

-46-

The routine preservation of metadata pending agreements or decisions on the ultimate form of production may be beneficial in a number of ways. Preservation of metadata may provide better protection against inadvertent or deliberate modification of evidence by others and the systematic removal or deletion of certain metadata may involve significant additional costs that are not justified by any tangible benefit. Moreover, the failure to preserve and produce metadata may deprive the producing party of the opportunity later to contest the authenticity of the document if the metadata would be material to that determination.

Sedona Best Practices, supra, at 63.

Professor James Moore has stated the following about metadata:

A party may request an electronic document in its native format. The courts appear to be moving toward a general presumption against the production of metadata, however. Most metadata is of limited evidentiary value, and reviewing it can waste litigation resources. However, if the requesting party can demonstrate a particularized need for the native format of an electronic document, a court may order it produced.

Furthermore, a party may request the production of metadata, or the parties may agree to the production of electronic documents in a format that preserves metadata. In such cases, the court is likely to compel production of metadata unless it finds such production to be overly burdensome or costly. On the other hand, in the absence of a specific request, if a party produces documents in a non-native format, it is unlikely that the courts will later require production of the same documents in native format with metadata.

7 J. Moore, supra § 34.12[3][c], at 34-48 to 34-49 (footnotes omitted). Professors Charles Wright and Arthur Miller have stated the following about metadata:

The problem of form of production therefore assumes additional importance with electronically stored information. As a starting point, there could be a question whether the receiving party can even access or make use of information produced in electronic format. Often, there may be questions about inclusion of "metadata" or "embedded data" with electronically stored information that is produced. Metadata describes the various instructional software directives, usually not visible on the screen, that permit a computer program to access and manipulate data. Embedded data describes additional information, also not usually visible on the screen, that tracks prior versions of the visible material and may contain notes about the visible material. Altogether, electronically stored information with metadata and embedded data intact may be said to be in "native format."

Parties producing electronically stored information may be reluctant to

provide it in native format.  If a party has a proprietary software program for using its own data, aspects of the metadata may contain proprietary information. Producing embedded data may cause difficulties in reviewing the material for responsiveness and for privilege before production.   In addition, producing information in native format presents challenges regarding making a record of what was produced (sometimes using a numbering system such as "Bates numbering"), and may make the electronic material manipulable in ways that could raise issues of authenticity.  As a result, parties may favor converting their electronically stored information into formats that more closely resemble hard copies in terms of the varieties of information produced, such as TIFF or PDF images.  But receiving parties may find such images inadequate, either because they lack possibly relevant information contained in the original electronically stored information or because they cannot be organized or searched by computer without being input again as is necessary with hard-copy materials.

8B C. Wright, A. Miller, M. Kane, R. Marcus, Federal Practice and Procedure § 2219, at 231-32

(2010)(footnote omitted).

Ultimately, it is difficult for the Court to make any broad proscriptions about the utility of

metadata.  In some instances, particularly when the native format of a document contains a large

amount of dynamic information, an image format of electronic discovery may severely reduce its

utility.  A good example would be formulas that apply to cells in a spreadsheet.  See Sedona Best

Practices, supra, at 60 ("In addition, application metadata may be critical to allow the functioning

of routines within the file, such as cell formulae in spreadsheets.").  In other circumstances, metadata

may have virtually no evidentiary value, such as when there is no dispute about custodians of a

document:

> The Shareholders seek all of the metadata associated with emails and word documents produced by the PE Firms.  The PE Firms refuse to produce all metadata and instead offer to provide 12 fields of metadata.  The court rules in favor of the PE Firms for two reasons. First, case law shows wariness about metadata's value in litigation.  Many courts have expressed reservations about the utility of metadata, explaining that it does not lead to admissible evidence and that it can waste parties' time and money.  Wyeth v. Impax Lab., Inc., 248 F.R.D. 169, 171 (D. Del. 2006); Williams v. Sprint/United Mgmt. Co., 230 F.R.D. 640, 651 (D. Kan. 2005).  Second, Rule 34 militates against the broad, open disclosure of metadata that the Shareholders seek. The Rule 34 Advisory Committee Notes to the 2006 Amendment

express concern that producing diverse types of electronically stored information in the same format would be costly, burdensome, and ultimately fruitless. Fed.R.Civ.P. 34 advisory committee's notes. Instead, the notes explain that requests should be tailored to each type of program, so only necessary data is produced.

The court applies this principle to the metadata requests here. Rather than a sweeping request for metadata, the Shareholders should tailor their requests to specific word documents, specific emails or specific sets of email, an arrangement that, according to their memorandum, suits the PE Firms. This more focused approach will, the court hopes, reduce the parties' costs and work. Furthermore, it reflects the general uneasiness that courts hold over metadata's contribution in assuring prudent and efficient litigation.

Dahl v. Bain Capital Partners, LLC, 655 F.Supp.2d 146, 149-50 (D. Mass. 2009). In other cases, it may be important who had custody of a given document. The safest practice for parties seeking metadata is likely to request ESI in native format to preserve metadata. The dispute ultimately may be irrelevant, because if S2 Automation produces documents to Micron Technology in native format -- what appears to be the cheaper course of action for S2 Automation -- it will give Micron Technology the metadata it seeks. See 8B C. Wright, A. Miller, M. Kane, R. Marcus, supra § 2219, at 231-32 ("Altogether, electronically stored information with metadata and embedded data intact may be said to be in 'native format.'"). S2 Automation also stated in its June 27, 2012 Letter that, "if Micron [Technology] seeks metadata for a specific document or a limited number of documents where 'information about a particular data set which describes how, when and by whom it was collected, created, accessed, or modified and how it was formatted is necessary," it would be "willing to produce the information regarding" those documents. June 27, 2012 Letter at 3. The Court is mindful of reducing the costs that parties incur during discovery when they are chasing after information which is of questionable utility. See 7 J. Moore, supra § 34.12[3][c], at 34-48 ("Most metadata is of limited evidentiary value, and reviewing it can waste litigation resources."). For the circumstances of this case, given that Micron Technology has not argued that it has a "particularized

need" for metadata, 7 J. Moore, <u>supra</u> § 34.12[3][c], at 34-48, the Court concludes that S2 Automation has proposed an acceptable solution that, if it produces the ESI in the format that Micron Technology has requested rather than in native format, it will provide metadata to Micron Technology for a limited number of documents for which metadata would be significant -- such as if custody of an electronic mail transmission was an important issue.  The Court has trouble stating that, when a party seeking electronic discovery has requested a format that strips out most metadata -- such as TIFF or PDF format -- parties have an absolute obligation to preserve and separately produce all metadata from the ESI.  Nevertheless, metadata could be important information for some of that electronic discovery to establish various matters, including to determine custody or to determine what modifications to the document have occurred over time.  If S2 Automation chooses to produce electronic discovery in TIFF format and does not separately produce metadata, the Court will be receptive to grant any reasonable request from Micron Technology to obtain metadata.  The parties may be able to avoid bringing another motion to resolve the issue, as meeting and conferring with one another may likely resolve the dispute given the Court's inclination to grant a request seeking production of metadata on particular documents.  To the extent S2 Automation concludes that disclosing metadata will reveal privileged information, the rules governing assertion of privilege provide it with a method to protect privileged information.

## C. S2 AUTOMATION HAS TWENTY-FOUR HOURS FROM THE FILING OF THIS OPINION TO REQUEST A FORMAT FOR PRODUCTION, IF IT REQUESTS A FORMAT THAT IS DIFFERENT THAN PDF.

Rule 34(b)(2)(E) provides:

(E)   **Producing the Documents or Electronically Stored Information.**  Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(i)    A party must produce documents as they are kept in the usual course

> of business or must organize and label them to correspond to the
> categories in the request;
>
> (ii)   If a request does not specify a form for producing electronically
>        stored information, a party must produce it in a form or forms in
>        which it is ordinarily maintained or in a reasonably usable form or
>        forms; and
>
> (iii)  A party need not produce the same electronically stored information
>        in more than one form.

Fed. R. Civ. P. 34(b)(2)(E).  The advisory committee notes to this rule discuss the potential

complications that arise when the party requesting ESI does not specify a format for production:

> The responding party also is involved in determining the form of production.  In the
> written response to the production request that Rule 34 requires, the responding party
> must state the form it intends to use for producing electronically stored information
> if the requesting party does not specify a form or if the responding party objects to
> a form that the requesting party specifies.  Stating the intended form before the
> production occurs may permit the parties to identify and seek to resolve disputes
> before the expense and work of the production occurs.  A party that responds to a
> discovery request by simply producing electronically stored information in a form
> of its choice, without identifying that form in advance of the production in the
> response required by Rule 34(b), runs a risk that the requesting party can show that
> the produced form is not reasonably usable and that it is entitled to production of
> some or all of the information in an additional form.  Additional time might be
> required to permit a responding party to assess the appropriate form or forms of
> production.

Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendment.

It does not appear that, when S2 Automation filed its requests for production, it specified a

particular format.  Thus, under Fed. R. Civ. P. 34(b)(2)(E), Micron Technology may technically

produce ESI in the form in which it is ordinarily maintained or in a reasonably usable form.  At the

hearing on July 24, 2012, however, Micron Technology, on its own, raised the question of what

format S2 Automation wanted once the Court entered a protective order and Micron Technology

began producing documents.  See FTR at 10:08:42-10:38 (Randolph).  S2 Automation said it would

accept PDF format pending the Court's decision on the Motion to Compel and would revisit that

issue if necessary when the Court rules.  <u>See</u> FTR at 10:22:55-23:12 (Holland).  Following the discussion of the issue, Micron Technology appears to have realized that it had potentially boxed itself in on the format for production, balking at S2 Automation's response, saying it did not want to produce information now in PDF format and then have to produce documents in another format later.  <u>See</u> FTR at 10:25:25-26:12 (Randolph).  Micron Technology stated it had already done the work to prepare for document production and did not know, given the formatting process necessary to get the ESI ready for production, if it could produce the information in as broad a range of formats if S2 Automation requested a format different than PDF.  <u>See</u> FTR at 10:25:25-26:12, 10:27:02-28:18 (Randolph).  The Court stated that, if S2 Automation decides to request a different format, it should do so within twenty-four hours of when the Court issues its opinion on the Motion to Compel.  <u>See</u> FTR at 10:26:30-26:50 (Court).  Given that Micron Technology raised the issue at the hearing on July 24, 2012, the Court will require Micron Technology to produce in the format S2 Automation requests, but S2 Automation must do so within twenty-four hours after the Court issues this opinion.  If Micron Technology has already produced the responsive ESI, the Court has already stated that S2 Automation has twenty-four hours from the issuance of the opinion to request a specific format.  If the costs of production at this date are prohibitive, Micron Technology can approach the Court and explain why it raised the issue at the July 24, 2012 hearing, but now cannot produce the ESI in the format that S2 Automation requests. Ideally, given that S2 Automation has indicated that PDF format is an acceptable format, Micron Technology may be able to continue to produce its ESI in PDF format or in another format that is not cost-prohibitive.  Resolving this issue before any production will avoid a potential dispute down the road.

### III.   S2 AUTOMATION MUST IDENTIFY THE SEARCH STRATEGY IT USED TO LOCATE RESPONSIVE DOCUMENTS.

Micron Technology asserts that the Court should order S2 Automation to identify the search strategy it used to provide responsive documents to its requests for production.  See Motion to Compel at 6.  Micron Technology represents that "S2 [Automation]'s counsel stated he was not familiar with the content of the documents provided by S2 [Automation] in response to discovery and was not aware that the attachments had been separated from the source messages."  Motion to Compel at 6.  Micron Technology argues that "it is not proper for counsel to sit back and allow the client to search for documents without active direction and participation by counsel; to the contrary, counsel must be actively involved in the search to ensure that all responsive documents have been located, preserved, and produced."  Motion to Compel at 6.  Micron Technology asserts that the approach S2 Automation's counsel has taken "carries significant risk that responsive information will not be discovered and/or disclosed, as has happened here."  Motion to Compel at 6.  Micron Technology emphasizes that "based on S2 [Automation]'s counsel's statement, it appears that S2 [Automation] may not fully appreciate the extent of its legal obligations to search for and produce all responsive non-privileged information in response to Micron [Technology]'s request."  Motion to Compel at 7 (emphasis in original).   Micron Technology argues that the approach S2 Automation's counsel has taken is not consistent with the discovery obligations counsel have under rule 26(g).  See Motion to Compel at 6.  Micron Technology "requests that the Court order S2 [Automation] to identify what protocol it used so that Micron [Technology] can evaluate what further efforts are required."  Motion to Compel at 7.

S2 Automation argues that "Micron [Technology]'s counsel has engaged in an unwarranted leap of conjecture in its assumption that S2 [Automation]'s counsel passively allowed S2

[Automation] to determine and produce documents and response to discovery." Response at 6. S2 Automation asserts "nothing could be further from the truth," because counsel for S2 Automation "met with the client on multiple occasions during the discovery process in order to organize and respond to discovery." Response at 6. S2 Automation also contends that, "if there was legitimacy to the argument, Micron [Technology] would have produced an e-mail or document from its own files in order to prove that S2 did not produce a responsive document." Response at 6. S2 Automation emphasizes that Micron Technology has not produced any documents since the litigation was filed. See Response at 6.

Regarding the search strategy S2 Automation took when determining what documents to produce, the Court noted that an interrogatory would likely be a better tool to obtain this information than a request for production. See Tr. at 44:24-45:10 (Court). The Court related that, if S2 Automation certifies it has produced all responsive documents, there is little more that the Court can do now to require them to produce documents, unless further discovery reveals that the search was inadequate. See Tr. at 44:24-45:10 (Court). The Court provided the parties guidance that, on the issue of what documents are in a parties' possession, it considers a document to be in a parent corporation's control if it can pick up the telephone and have a related entity send it a given document. See Tr. at 45:21-46:9 (Court).

Rule 26(g)(1) provides in relevant part:

(1)     **Signature Required; Effect of Signature.** Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name -- or by the party personally, if unrepresented -- and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

(A)     with respect to a disclosure, it is complete and correct as of the time

it is made . . . .

Fed. R. Civ. P. 26(g)(1).  The Tenth Circuit has recognized that case law interpreting rule 11 is applicable to cases implicating rule 26(g).  See In re Byrd, Inc., 927 F.2d 1135, 1137 (10th Cir. 1991)("Although this circuit has not specifically addressed interpretation of the sanctions language in Rule 26(g), other courts have applied case law applicable to Fed.R.Civ.P. 11.  We likewise adopt this approach and apply Rule 11 case law here." (citations omitted)).  "[T]he central issue [under rule 26(g)] is whether 'the person who signed the pleading conducted a reasonable inquiry into the facts and law supporting the pleading.'"  In re Byrd, Inc., 927 F.2d at 1137.  Accordingly, it can become necessary to evaluate whether an attorney complied with his rule 26(g) obligations and to evaluate the strategy an attorney used to provide responsive discovery, with relevant circumstances including: (i)  "[t]he number and complexity of the issues"; (ii) "[t]he location, nature, number and availability of potentially relevant witnesses or documents"; (iii) "[t]he extent of past working relationships between the attorney and the client, particularly in related or similar litigation"; and (iv) "[t]he time available to conduct an investigation."  6 J. Moore, Moore's Federal Practice, § 26.154[2][a], at 26-615 (3d ed. 2012).  Consequently, the analysis in which courts must engage to evaluate whether a party's discovery responses were adequate is often a fact-intensive inquiry that requires evaluation of the procedures the producing party adopted during discovery:

> It is not an excuse that defense counsel did not know about the retention of the cover sheets.  Counsel had a duty to explain to their client what types of information would be relevant and responsive to discovery requests and ask how and where relevant documents may be maintained.  The client is charged with knowledge of what documents it possesses.  It was not their option to simply react to plaintiff's fortuitous discovery of the existence of relevant documents by making disjointed searches, each time coming up with a few more documents, and each time representing that was all they had.  Under the federal rules, the burden does not fall on plaintiff to learn whether, how and where defendant keeps relevant documents.

Tarlton v. Cumberland Cnty. Corr. Facility, 192 F.R.D. 165, 170 (D.N.J. 2000).  Accord Metro.

Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union, 212 F.R.D. at 222-23 ("Instead, as is crystal clear in hindsight, counsel's responses to the Met's discovery requests, in formal responses, in letters and to the Court -- particularly counsel's repeated representations that all responsive documents had been produced -- were made without any real reflection or concern for their obligations under the rules governing discovery . . . .").

Micron Technology has raised concerns that S2 Automation's counsel did not work with their client sufficiently during the discovery process and may have failed to provide a number of responsive documents. It has come forward with a sworn declaration from one of its counsel voicing these concerns:

> 6.    On April 25, 2012, I prepared and sent a detailed deficiency letter, which identified the various shortcomings in S2 [Automation]'s production. I asked S2 [Automation] to respond to the letter by Monday, April 30, given the 21 day requirement under District of New Mexico Local Rule 26.6 for filing motions to compel. A true and correct copy of my letter is attached hereto as Exhibit D. The letter recites each specific request for production and identifies the deficiency in each request. The numbering used in my letter was in error, in that the numbering in the letter is sequential, whereas the letter identifies defects in the specific requests.

> 7.    On April 27, 2012, counsel participated in a discovery conference in an attempt to discuss various discovery issues that remain unresolved, including the lack of a protective order and clawback agreement, which Micron [Technology] has been requesting since March 2012 when it served its initial disclosures. During that call, we discussed the April 25 deficiency letter and Micron [Technology]'s request that S2 [Automation] supplement its production. Counsel for S2 [Automation] stated that he had not yet reviewed the letter in detail. We then discussed the format for production of S2 [Automation]'s documents. Counsel stated that he was not aware that S2 [Automation] had separated attachments from e-mails, that he had delegated the process of gathering documents to S2 [Automation], and that he was generally unaware of the manner in which S2 [Automation] had provided the documents. Counsel also stated that he was unsure what protocol S2 [Automation] followed to locate responsive documents.

Randolph Declaration ¶¶ 6-7, at 3. The contents of the Randolph Declaration cause the Court concern about the adequacy of S2 Automation's strategy for responding to discovery requests. The

Randolph Declaration suggests that S2 Automation's counsel were not working closely with their client during the document-production process. Without some information about the search strategy S2 Automation used to provide responsive documents to requests for production, neither the Court nor Micron Technology can have a full understanding of the adequacy of S2 Automation's search strategy. Thus, the Court concludes that it is appropriate to have S2 Automation provide to Micron Technology its search strategy for identifying pertinent documents, including the procedures it used and how it interacted with its counsel to facilitate the production process. Because Micron Technology properly raises this issue in the context of rule 26(g), the certification that the signature on these discovery responses signifies, the Court believes that S2 Automation needs to provide this information to Micron Technology without a further interrogatory and the delay that process will require. The parties need to resolve this problem as soon as possible, so that they can proceed to depositions.

## IV.   THE COURT WILL COMPEL S2 AUTOMATION TO AMEND OR SUPPLEMENT ITS RESPONSES TO VARIOUS REQUESTS FOR PRODUCTION.

The Court will require S2 Automation to produce all unprivileged and unprotected responsive documents in its possession or control. Accordingly, it should amend and/or supplement its discovery responses consistent with that standard. The Court will require S2 Automation to separately answer each request for production. Regarding Micron Technology's arguments as to specific requests for production, RFP Nos. 25 through 28, 47, 50, and 51, the Court will compel production.

### A.   S2 AUTOMATION HAS AN OBLIGATION TO PRODUCE ALL RESPONSIVE DOCUMENTS WITHIN ITS CUSTODY OR CONTROL.

Parties may also "serve on any other party a request within the scope of Rule 26(b)" for production of documents in the "responding party's possession, custody, or control." Fed. R. Civ.

P. 34(a).  "Control comprehends not only possession, 'but also the right, authority, or ability to obtain the documents.'"  Walker v. THI of N.M. at Hobbs Ctr., 2010 WL 4929069, at *5.  Courts will find documents to be within a party's control if the party has actual possession, custody, control, or the legal right to obtain the documents on demand.  See In re Bankers Trust Co., 61 F.3d at 469; Ice Corp. v. Hamilton Sundstrand Corp., 245 F.R.D. at 516-17.  Courts will also find that documents are within a party's control when it has "the . . . practical ability to obtain the documents," particularly when the opposing party does not have the same practical ability to do so.  Scherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d at 138.  Accord R.F.M.A.S., Inc. v. So, 271 F.R.D. at 24 ("Evidence in a party's 'control' has been interpreted to mean evidence that the party has the legal right, authority, or practical ability to obtain by virtue of its relationship with the party in possession of the evidence."); Huggins v. Fed. Express Corp., 250 F.R.D. at 408 ("Control is defined broadly as the ability to obtain upon demand documents in the possession of another.  The party to whom the discovery is directed need not have legal ownership or actual physical possession, but rather a practical ability to obtain the documents." (internal quotation marks omitted)).  As the Second Circuit has stated:

> We also think it fairly obvious that a party also need not seek such documents from third parties if compulsory process against the third parties is available to the party seeking the documents.  However, if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required.

Scherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d at 138.

Both parties must follow this standard for production and product all documents within their possession, custody, or control.  It may be that S2 Automation does not have the legal or practical right to obtain documents from S2 Israel.  If that is the case, it must file an affidavit from a corporate official to that effect.  Otherwise, S2 Automation must amend or supplement its discovery responses

to provide all responsive documents in its possession, custody, or control.  To the extent it does not

have any responsive documents in its possession, custody, or control, it must amend its answers to

the discovery requests to say so.

> **B.**    **S2 AUTOMATION MUST SEPARATELY ANSWER EACH REQUEST FOR PRODUCTION.**

A variety of S2 Automation's responses to requests for production cross-reference other

portions of its Discovery Response.  <u>See</u>, <u>e.g.</u>, Discovery Response at 11 ("See Answer to

Interrogatory No. 7.").  At the hearing on June 15, 2012, Micron Technology noted that it is highly

difficult to make productive use of S2 Automation's responses to requests for production based on

the overuse of cross references to responses to other discovery requests.  <u>See</u> Tr. at 51:22-52:11

(Randolph, Court).  Micron Technology asserted that this pattern of responses will make it difficult

to sort through discovery if the need for supplementation of these responses ever arises.  <u>See</u> Tr. at

55:1-10 (Randolph).  The Court agreed and stated that S2 Automation must amend its responses to

individually answer each discovery request.  <u>See</u> Tr. at 55:17-56:1 (Court).  Micron Technology

related that the Court's guidance on the standards for what documents are in a party's possession

or control has resolved many of its specific objections to discovery responses that it raised in its

Motion to Compel.  <u>See</u> Tr. at 57:11-17 (Randolph).

Rule 34(b)(2)(B) provides, regarding responses to requests for production: "For each item

or category, the response must either state that inspection and related activities will be permitted as

requested or state an objection to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(B).

<u>Cf</u>. <u>id</u>. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately

and fully in writing under oath.").  Ultimately, S2 Automation's failure to respond to each request

for production individually creates unnecessary risks for confusion later in the case.  It has

effectively not filed a proper response to Micron Technology's discovery request. See Fed. R. Civ. P. 37(a)(4) ("For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."); Smith v. Logansport Comm. Sch. Corp., 139 F.R.D. 637, 650 (N.D. Ind. 1991). If S2 Automation begins supplementing discovery responses, or amending responses, answers that cross-reference other portions of its Discovery Response may become inaccurate or incomplete. S2 Automation may be producing documents in response to one discovery request that are not in response to another cross-referenced discovery request. The case will proceed more smoothly if S2 Automation answers each request for production separately.

### C.   THE COURT WILL COMPEL PRODUCTION REGARDING THE RFP'S AND RESPECTIVE RESPONSES ON WHICH MICRON TECHNOLOGY SPECIFICALLY PURSUED A RULING AT THE JUNE 15, 2012 HEARING.

Micron Technology has related that the Court's guidance on the standards for what documents are in a party's possession or control resolves many of its specific objections to discovery responses that it raises in its Motion to Compel. See Tr. at 57:11-17 (Randolph). Thus, the Court will separately address only the RFP's addressed in the Motion to Compel if Micron Technology separately pursued a ruling on the response to that RFP at the June 15, 2012 hearing. Regarding Micron Technology's arguments as to these specific requests for production, RFP Nos. 25 through 28, 47, 50, and 51, and the respective responses, the Court will compel production.

### 1.   RFP No. 25.

Regarding RFP No. 25, Micron Technology stated that it has received only twelve pages of documents regarding payments which S2 Automation has received for inventory and that it believes there are likely more payment records out there that S2 Automation has not produced. See Tr. at 59:25-60:16 (Randolph). The Court discussed with Micron Technology what a proper timeframe

would be in terms of what payment data S2 Automation must produce, and the Court set a date of documents generated starting January 1, 2006 as the furthest back date from which S2 Automation must provide documents.  See Tr. at 65:9-23 (Court, Randolph).  Micron Technology suggested a timeframe of five years before the termination of the contracts at issue.  See Tr. at 65:16-18 (Randolph).  The Court denied the Motion to Compel as it relates to RFP No. 25 without prejudice for documents generated before that date.  See Tr. at 65:25-66:3 (Court).

RFP No. 25 provides: "Please produce all documents depicting any payment(s) you received for the parts or inventory referenced in the preceding request."  Discovery Request at 7.  S2 Automation's response to RFP No. 25 is as follows:

> Object as Request for Production No. 25 is not reasonably calculated to lead to the discovery of admissible evidence, is not relevant to the subject matter involved in the pending action, is unduly burdensome, is obtainable from some other source that is more convenient, less burdensome and less expensive and is not limited by time frame.  Micron [Technology] has documents reflecting payments under the terms of the S2 Agreements which it can readily retrieve from its own files.  Subject to that objection, S2 [Automation] is producing accounting documents (QuickReport printout) marked as S2.2558-S2.2571 showing the payments received from Micron [Technology].

Discovery Response at 16-17.

The requested information is discoverable.  The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Information sought is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  As a result, rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case."  Anaya v. CBS Broad., Inc., 251 F.R.D. at 649-650 (internal quotation marks omitted).  S2 Automation seeks damages for conversion of inventory that it allegedly owns.  See Amended Complaint ¶¶ 41-60, at 6-9.  Thus, payments that

S2 Automation received for inventory it transported to the Israeli facility could impact the damages which S2 Automation receives. One of Micron Technology's defenses is that "Plaintiff's claims are barred by payment," and another is that "Plaintiff's claims are barred because it has not suffered any damages." Micron Technology, Inc.'s Answer to First Amended Complaint at 13-14, filed April 26, 2012 (Doc. 39)("Answer"). Thus, the information is properly discoverable. As discussed at the June 15, 2012, hearing, the Court will limit production to any payments that occurred on or after January 1, 2006, and will otherwise deny the Motion to Compel on this issue without prejudice. Limiting production in this manner will reduce S2 Automation's burden in responding.

**2.      RFP Nos. 26 and 27.**

Regarding RFP No. 27, Micron Technology contended that an objection that the documents are in Micron Technology's possession is not a valid objection to a discovery request. See Tr. at 57:25-58:6 (Randolph). The Court stated that it has confronted this issue in prior cases and orally ordered that S2 Automation must produce any documents which it has that are responsive to the request. See Tr. at 58:7-14 (Court). The Court noted that S2 Automation has no obligation to produce documents which it does not have, but related that S2 Automation cannot object to discovery responses on the basis that Micron Technology already has the information. See Tr. at 58:23-59:1 (Court). The Court also stated that, in the amended responses S2 Automation provides to Micron Technology, it must state clearly that it has no responsive documents to a discovery request if that is S2 Automation's position. See Tr. at 59:8-23 (Randolph, Court, Gutierrez). Regarding RFP Nos. 26 and 27, Micron Technology related that information regarding employee payroll and timesheets for the facility where S2 Automation had a contract in Israel is relevant, because one of Micron Technology's contentions is that there was good cause to terminate a contractual relationship with S2 Automation. See Tr. at 66:18-67:7 (Randolph). Micron

-62-

Technology noted that the lack of proper personnel at the facility would be relevant to a factfinder

deciding that issue.  See Tr. at 66:18-67:7 (Randolph).  The Court then overruled S2 Automation's

objection that this information is not relevant and required production of any responsive documents

in its possession.  See Tr. at 67:8-19 (Court, Gutierrez).

RFP No. 26 provides: "Please produce payroll records for any person who you employed or

caused to work at [the] Fab 12 [facility in Israel] from January 1, 2008 to the present."  Discovery

Request at 7.  RFP No. 27 provides: "Please produce time sheets for any person who you employed

or caused to work at Fab 12 from January 1, 2008 to the present."  Discovery Request at 7.  S2

Automation's response to RFP No. 26 is as follows: "Object as Request for Production No. 26

requests information that is not relevant to the subject matter involved in the pending action and the

information sought does not appear to be reasonably calculated to lead to the discovery of

admissible evidence."  Discovery Response at 17.  S2 Automation's response to RFP No. 27 is as

follows:

> Object as Request for Production No. 27 requests information that is not relevant to
> the subject matter involved in the pending action, the information sought does not
> appear to be reasonably calculated to the discovery of admissible evidence and are
> obtainable from some other source that is more convenient, less burdensome and less
> expensive.  Without waiving these objections S2 [Automation] does not have any
> documents responsive to this request.  The time records and similar documents are
> in the possession of Micron [Technology].  If S2 [Automation] is provided access to
> Micron [Technology]'s computer systems, the documents can be retrieved.

Discovery Response at 17.

As the Court has already stated, courts will find documents to be within a party's control if

the party has actual possession, custody, control, or the legal right to obtain the documents on

demand.  See In re Bankers Trust Co., 61 F.3d at 469; Ice Corp. v. Hamilton Sundstrand Corp., 245

F.R.D. at 516-17.  It is also generally sufficient that a has a practical right to obtain the document.

See Scherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d at 138.  S2 Automation must produce any

responsive documents that are within S2 Automation's control, using the Court's interpretation of

the term control.  As a general matter, parties cannot avoid their discovery obligations by stating that

"the discovery sought . . . can be obtained from some other source." Jackson v. W. Va. Univ. Hosp.,

Inc., No. 1:10cv107, 2011 WL 1831591, at *2 (N.D. W. Va. May 12, 2011).  As the United States

District Court for the Northern District of Iowa has stated:

> The plaintiffs' fifth objection to CFC's request is based on the ground that it seeks
> information and documents equally available to the propounding parties from their
> own records or from records which are equally available to the propounding parties.
> However, with respect to this objection, courts have unambiguously stated that this
> exact objection is insufficient to resist a discovery request. See, e.g., City Consumer
> Services v. Horne, 100 F.R.D. 740, 747 (D. Utah 1983)(stating that it is "not usually
> a ground for objection that the information is equally available to the interrogator or
> is a matter of public record.")(citing Petruska v. Johns-Manville, 83 F.R.D. 32, 35
> (E.D. Pa. 1979)); Associated Wholesale Grocers, Inc. v. U.S., 1989 WL 110300, *3
> (D. Kan. June 7, 1989)(stating that defendant's argument of equal accessibility is not
> sufficient to resist discovery)(citing City Consumer Services).

St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 514 (N.D. Iowa 2000).

Thus, any such objection is generally improper absent a showing of undue burden.  Furthermore,

RFP Nos. 26 and 27 seek documents reasonably calculated to lead to the discovery of admissible

evidence.  The proper scope of discovery is "any nonprivileged matter that is relevant to any party's

claim or defense."  Fed. R. Civ. P. 26(b)(1).   Information sought is relevant "if the discovery

appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P.

26(b)(1).  As a result, rule 26 "contemplates discovery into any matter that bears on or that

reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a

case."  Anaya v. CBS Broad., Inc., 251 F.R.D. at 649-650 (internal quotation marks omitted).

Micron Technology has taken the position that it had good cause to terminate any contracts it had

with S2 Automation.  See Answer at 13 ("Plaintiff failed to comply with the terms and conditions

of the applicable agreements.").   In light of Micron Technology's position, it is relevant what employees S2 Automation employed at the Israeli facility and how often they were working there. Those facts could have a significant impact on Micron Technology's argument that it had good cause to terminate its contracts with S2 Automation.   Thus, this information is properly discoverable, and the Court will overrule S2 Automation's objections to RFP Nos. 26 and 27.

### 3.   RFP No. 28.

Regarding RFP No. 28, Micron Technology made a similar argument that shipping and other records related to materials S2 Automation transported to the facility would be relevant on the issue of good cause.   See Tr. at 67:20-68:3 (Randolph).   At the hearing on June 15, 2012, the Court overruled S2 Automation's objection that this information was not relevant and stated that it must produce all responsive documents in its possession.   See Tr. at 68:7-9 (Court).   RFP No. 28 provides: "Please produce all shipping records, manifests, bills of lading, or other documents that identify any parts, equipment, tools, or other movable object that you caused to be transported to Fab 12."   Discovery Request at 8 (emphasis in original).   S2 Automation's response to RFP No. 47 is as follows: "See response to Request For Production No. 23."   Discovery Response at 22.

The requested information is properly discoverable.   The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense."   Fed. R. Civ. P. 26(b)(1). Information sought is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."   Fed. R. Civ. P. 26(b)(1).   As a result, rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case."   Anaya v. CBS Broad., Inc., 251 F.R.D. at 649-650 (internal quotation marks omitted).   Micron Technology has taken the position that it had good cause to terminate any contracts it had with S2 Automation.   See Answer at 13 ("Plaintiff

failed to comply with the terms and conditions of the applicable agreements.").  In light of Micron

Technology's position, it is relevant what materials S2 Automation transported to the Israeli facility,

because those materials likely relate to S2 Automation performing its contractual obligations.  Those

facts could have a significant impact on Micron Technology's argument that it had good cause to

terminate its contracts with S2 Automation.  Thus, this information is properly discoverable, and the

Court will overrule S2 Automation's objections to RFP No. 28.

**4.      RFP No. 47.**

With respect to RFP No. 47, Micron Technology asserted that it believes that there are

documents out there which relate to S2 Automation's improper use of equipment at the facility in

Israel and argued that S2 Automation should amend its response to provide this information.  See

Tr. at 68:11-23 (Randolph).  The Court ordered S2 Automation to supplement its response, given

that Micron Technology has alleged that S2 Automation improperly used materials at the Israeli

facility.  See Tr. at 68:24-69:4 (Court).  The Court stated that S2 Automation was free to deny any

assertion that it has improperly used the materials at this facility but informed S2 Automation that

it still needed to produce any documents that are responsive to RFP No. 47.  See Tr. at 72:4-16

(Gutierrez, Court).

RFP No. 47 provides: "Please produce all documents relating to the cannibalization of Fab

12 AMHS equipment by you or your representative."  Discovery Request at 10.  S2 Automation's

response to RFP No. 47 is as follows: "See response to Request For Production No. 23."  Discovery

Response at 22.  S2 Automation's response to RFP No. 23 is as follows:

> Request for Production No. 23 request information is in [sic] possession and control
> of Micron [Technology] and this information has been requested to be produced to
> S2 [Automation] in Micron [Technology]'s Initial Disclosures.  The actual Inventory
> items identified during the walk through have previously been identified.  Unless the
> entire ending Inventory has been segregated at Fab 12, it is likely that Micron

[Technology] has been using S2 [Automation]'s Inventory.   S2 [Automation] anticipates obtaining Micron [Technology] documents to confirm that fact during discovery. If given access to Micron [Technology]'s computerized inventory control system, S2 [Automation] can produce the information validating the allegation.

Discovery Response at 16.

As a general matter, parties cannot avoid their discovery obligations by stating that "the discovery sought . . . can be obtained from some other source." Jackson v. W. Va. Univ. Hosp., Inc., 2011 WL 1831591, at *2.  As the Northern District of Iowa has stated:

> The plaintiffs' fifth objection to CFC's request is based on the ground that it seeks information and documents equally available to the propounding parties from their own records or from records which are equally available to the propounding parties. However, with respect to this objection, courts have unambiguously stated that this exact objection is insufficient to resist a discovery request.  See, e.g., City Consumer Services v. Horne, 100 F.R.D. 740, 747 (D. Utah 1983)(stating that it is "not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record.")(citing Petruska v. Johns-Manville, 83 F.R.D. 32, 35 (E.D. Pa. 1979)); Associated Wholesale Grocers, Inc. v. U.S., 1989 WL 110300, *3 (D. Kan. June 7, 1989)(stating that defendant's argument of equal accessibility is not sufficient to resist discovery)(citing City Consumer Services).

St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. at 514.   Thus, any such objection is generally improper absent a showing of undue burden.   Furthermore, the requested information is properly discoverable.   The parties dispute ownership of the inventory at the Israeli facility and dispute whether Micron Technology had good cause to terminate its contractual obligations with S2 Automation.   Whether S2 Automation acted improperly with the inventory at the facility is relevant to those issues.   To the extent that S2 Automation does not want to admit that it improperly used any inventory at the Israeli facility, it may deny that it did so in its discovery response.   It must still, however, respond to the discovery request with responsive documents.   Thus, the Court overrules S2 Automation's objections.

-67-

5.    **RFP No. 50.**

Regarding RFP No. 50, Micron Technology argued that conversations between S2 Automation representatives and Astanovsky are relevant given the allegations that S2 Automation and Astanovsky collaborated to injure Micron Israel.  See Tr. at 76:7-22 (Randolph).  S2 Automation responded that Micron Technology's predecessor employed Astanovsky and that Micron Technology likely has this information already.  See Tr. at 69:23-70:2 (Gutierrez).  At the hearing on June 15, 2012, the Court overruled S2 Automation's objections to RFP No. 50 and told it to produce any responsive documents in its possession.  See Tr. at 70:3-11 (Court).

RFP No. 50 provides: "Please produce all correspondence (including electronically stored information) from Yosef Astanovsky to any S2 representative relating to Fab 12 including (but not limited to) any correspondence while Mr. Astanovsky was employed by Numonyx."  Discovery Request at 10.  S2 Automation's response to RFP No. 50 is as follows:

> Object as Request for Production No. 50 is not reasonably calculated to lead to the discovery of admissible evidence, is not relevant to the subject matter involved in the pending action, is unduly burdensome, are obtainable from some other source that is more convenient, less burdensome and less expensive and is not limited by any time frame.  Micron [Technology] has such correspondence on its intra net server and can recover the information.  A number of e-mails involving Mr. Astanovsky as a sender, receiver or a party copied are being produce as S2.0001-1691.  S2 does not interpret the Request to seek information and communications between S2 and counsel for S2 as such communications are deemed attorney client privileged and work product information.

Discovery Response at 23-24.

As the Court has already held, an objection that responsive information is in another person's possession is generally not a proper objection.  See Jackson v. W. Va. Univ. Hosp., Inc., 2011 WL 1831591, at *2.  Furthermore, S2 Automation has not made a particularized showing of undue burden.  Generalized objections that production is overly burdensome are not sufficient.  See

Jackson v. W. Va. Univ. Hosp., Inc., 2011 WL 1831591, at *3 ("Further, the mere statement by a party that the interrogatory [or request for production] was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." (alteration in original)(internal quotation marks omitted)).  Accord United States v. Bd. of Cnty. Comm'rs of the Cnty. of Dona Ana, 2009 WL 2426194, at *10 ("[T]he Court also overruled the general objections that Dona Ana County has raised . . . .").  "On the contrary, the party resisting discovery must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive."  Jackson v. W. Va. Univ. Hosp., Inc., 2011 WL 1831591, at *3 (alterations in original)(quoting Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982))(internal quotation marks omitted).  Accordingly, the Court overrules S2 Automation's general objections. Furthermore, the requested information is relevant.  Astanovsky is now a party to this action, and Numonyx also has various connections to the underlying facts given that it is Micron Technology's predecessor.  RFP No. 50 acknowledges that Astanovsky did not work for S2 Automation for some period of time, and RFP No. 50 asks for communications he had with S2 Automation's representatives. Communications between Astanovsky and S2 Automation will likely yield relevant and admissible evidence, given that statements they have made would be admissions by party opponents against the respective parties.  Thus, the Court will overrule S2 Automation's objections and will compel production.

### 6.    RFP No. 51.

Regarding RFP No. 51, Micron Technology asked the Court, consistent with the Court's earlier statements at the hearing, to require S2 Automation to produce any responsive documents that are in its possession.  See Tr. at 70:14-71:2 (Randolph).  The Court stated that S2 Automation needs to amend its responses to identify responsive documents it has and, if it does not have

responsive documents, to state that it has no responsive documents.  See Tr. at 71:9-12 (Court).

RFP No. 51 provides: "Please produce all documents (including electronically stored information) relating to the termination of the Scope of Work agreement between you and Numonyx Semiconductor, Israel, Ltd."  Discovery Request at 10.  S2 Automation's response to RFP No. 51 is as follows: "S2.0100 is the termination notice.  See also response to Interrogatory No. 5.  S2 is continuing to search for additional information and this response will be supplemented if additional documents are located."  Discovery Response at 24.

As the Court has already stated, if S2 Automation does not have any additional responsive documents, its responses to discovery requests should state that it does not.  Accordingly, the Court will require S2 Automation to amend its response to RFP No. 51 to state that it has no additional responsive documents.

## V.   THE COURT WILL ORDER THAT S2 AUTOMATION PAY EIGHTY PERCENT OF MICRON TECHNOLOGY'S ATTORNEY'S FEES AND COSTS INCURRED IN BRINGING THE MOTION TO COMPEL.

Rule 37(a)(5)(A) through (C) provide:

(A)   **If the Motion is Granted (or Disclosure is Provided After Filing).**  If the motion [to compel] is granted -- or if the disclosure or requested discovery is provided after the motion was filed -- the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if:

(i)   the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii)   the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii)   other circumstances make an award of expenses unjust.

(B)   **If the Motion Is Denied.**  If the motion is denied, the court may issue any

-70-

protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

(C)   **If the Motion Is Granted in Part and Denied in Part.**  If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

Fed. R. Civ. P. 37(a)(5)(A)-(C). "After deciding a motion to compel discovery, a district court <u>must</u> award the prevailing party its reasonable expenses, including attorney's fees, unless one of three exceptions [listed in rule 37(a)(5)(A)] applies." 7 J. Moore, <u>supra</u> § 37.23[1], at 37-41 (emphasis in original).

Micron Technology has requested its attorney's fees and costs for having to bring the Motion to Compel. <u>See</u> Motion to Compel at 26-27. S2 Automation has requested its attorney's fees and costs for having to respond to the Motion to Compel. <u>See</u> Response at 24. The Court has granted the majority of the relief Micron Technology has sought. The parties were able to come to an agreement on some matters at the June 15, 2012, hearing, such as S2 Automation's production of a privilege log. The Court, on a few matters, did not require S2 Automation to provide to Micron Technology all of the discovery it has requested, including: (i) the production of metadata in ESI if S2 Automation chooses to produce in TIFF format; (ii) production regarding payments which S2 Automation has received for inventory, which the Court restricted to a limited number of years; and (iii) production of documents that only to the extent they are in S2 Automation's possession or control. On the ESI dispute, Micron Technology offered to compromise its position by providing S2 Automation with the option to produce in native format or in the format Micron Technology initially requested. S2 Automation also offered a compromise position that it would produce

-71-

metadata when Micron Technology specifically needed it for a given subset of documents. Largely, Micron Technology has obtained the relief it has requested, if not in full at least in part. For instance, it prevailed outright on: (i) asking for production of S2 Automation's search strategy it used to obtain responsive documents; (ii) seeking to compel production of individualized responses to the requests for production it has made; (iii) requesting that the Court overrule S2 Automation's objections to relevance regarding discovery requests; and (iv) asking the Court to overrule S2 Automation's objections that the documents are already in Micron Technology's possession. Given the large number of issues raised in the Motion to Compel, many of which are unrelated to one another and likely have different levels of significance to the parties, it is difficult to precisely quantify the degree to which Micron Technology has prevailed. Micron Technology has prevailed on all of what the Court perceives to be its most significant requests, such as: (i) the production of all documents in S2 Automation's possession or control; (ii) requiring separate responses to Micron Technology's requests for production; and (iii) the specific requests for production over which their was a dispute that the Court's general rulings on S2 Automation's discovery obligations resolved and which it specifically pursued. On the substance of Micron Technology's requests for production, and the substance of S2 Automation's responses and objections, Micron Technology devoted approximately eighteen pages of its twenty-eight page Motion to Compel to those matters. See Motion to Compel at 7-26. The parties also devoted the bulk of their argument on the Motion to Compel at the two hearings towards the ESI dispute and the matters related to the substance of the requests for production and the responses. Micron Technology and S2 Automation ultimately reached various compromises on the ESI dispute, including the format for production and S2 Automation's compromise position the production of metadata.

Consequently, after weighing that the Court largely granted Micron Technology all the relief

it requested, if not in full then at least in part, and the compromises the parties were able to reach on some issues, the Court concludes that it is appropriate to have S2 Automation pay eighty percent of the attorney's fees and costs which Micron Technology incurred in bringing the Motion to Compel. See Caruso v. Coleman Co., 157 F.R.D. 344, 350 (E.D. Pa. 1994)("In this case, the Court's decision was mixed and neither party was an overall 'winner' or 'loser'. Moreover, it does not appear to this Court that defendant was not substantially justified in its objections. Therefore, the Court will not at this time grant sanctions against defendant."); Cal Dive Int'l, Inc. v. M/V Tzimin (Ex Stena Seahorse), 127 F.R.D. 213, 217-18 (S.D. Ala. 1989)("Consequently the apportionment of reasonable expenses by the magistrate on a 70%/30% basis was factually acceptable and legally permissible."). Micron Technology will bear twenty percent of its own attorney's fees and costs incurred in bringing the Motion to Compel. The Court does not conclude that awarding attorney's fees and costs to S2 Automation is appropriate, given that the Court has granted the majority of the relief Micron Technology has requested and, even when the Court did not specifically grant the relief Micron Technology requested, S2 Automation compromised to satisfy some aspect of Micron Technology's request. Quite simply, S2 Automation did not prevail outright on a single issue.

S2 Automation tries to characterize the discovery dispute as "a legal war of attrition," where Micron Technology is "using its superior financial position to prevent or delay S2 [Automation] from having its day in Court." Response at 1-2. S2 Automation characterizes Micron Technology as engaging in "a broader pattern of bad faith conduct." Response at 1 n.1. To put S2 Automation's argument in perspective, it is important to consider that the Court has granted, or granted in part and denied in part, every opposed motion Micron Technology and Micron Israel have brought in this case. See Memorandum Opinion and Order at 1, filed March 5, 2012 (Doc. 26)(granting Micron Technology's motion to dismiss S2 Automation's fraud claims but providing S2 Automation leave

to amend); Sealed Memorandum Opinion and Order at 1-2, filed July 23, 2012 (Doc. 85)(granting Micron Israel's motion to intervene and to assert counterclaims); Memorandum Opinion and Order at 1, filed July 23, 2012 (Doc. 86)(granting Micron Technology's request for entry of a non-waiver of privilege and clawback order); Memorandum Opinion and Order at 1-2, filed July 23, 2012 (Doc. 90)(granting in part and denying in part Micron Technology's motion asking the Court to enter a protective order); Memorandum Opinion and Order at 1, filed July 23, 2012 (Doc. 91)(granting in part and denying in part Micron Technology's motion to stay the case in light of additional procedural complexities that have arose).  The same scenario applies to the Motion to Compel. Given that the Court has concluded that most of the opposed relief Micron Technology has sought in this case is warranted, it is difficult to characterize Micron Technology's conduct as acting in bad faith or in an obstructive manner.  While there have been some delays in Micron Technology producing discovery, S2 Automation could have expedited that process by agreeing to much of the relief Micron Technology has sought -- such as protective orders and clawback provisions -- much of which the Court has concluded was warranted.  Thus, the Court is not persuaded that an award of fees is inappropriate on the basis that Micron Technology is engaging in a war of attrition or otherwise acted in bad faith.

Micron Technology should prepare an affidavit and schedule detailing the costs it has incurred, including its attorney's fees.  It should first consult with S2 Automation to see if S2 Automation is amenable to paying the fees without the Court's involvement.  If the parties cannot reach a resolution, Micron Technology can file these documents with the Court, and S2 Automation can articulate why it finds a particular portion of the costs to be objectionable.

**IT IS ORDERED** that Micron Technology, Inc.'s Motion to Compel, filed May 3, 2012 (Doc. 43), is granted in part and denied in part as set forth in the opinion.

-74-

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alicia L. Gutierrez
Moses, Dunn, Farmer & Tuthill, P.C.
Albuquerque, New Mexico

-- and --

Martin K. Holland
Holland Law, P.C.
Albuquerque, New Mexico

-- and --

Or Baron Gil
Meitar Liquomik Geva & Leshem Brandwein
Ramat Gan, Israel

  *Attorneys for the Plaintiff*

Bradford C. Berge
Holland & Hart LLP
Santa Fe, New Mexico

-- and --

Erik F. Stidham
Scott E. Randolph
Holland & Hart LLP
Boise, Idaho

  *Attorneys for the Defendant and the Intervenor*