# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

S2 AUTOMATION LLC,

       Plaintiff,

vs.                                   No. CIV 11-0884 JB/WDS

MICRON TECHNOLOGY, INC.,

       Defendant.

and

MICRON SEMICONDUCTOR ISRAEL, LTD.

       Proposed Intervenor.

## <u>UNSEALED MEMORANDUM OPINION AND ORDER</u>[1]

**THIS MATTER** comes before the Court on Micron Semiconductor Israel, Ltd.'s Motion to Intervene as Counterclaimant, filed May 3, 2012 (Doc. 42)("Motion to Intervene"). The Court held a hearing on June 15, 2012. The primary issue is whether the Court should permit Micron Semiconductor Israel, LTD ("Micron Israel") to intervene in this suit under Rule 24 of the Federal Rules of Civil Procedure. The Court will grant the Motion to Intervene, because Micron Israel has satisfied the elements set forth in rule 24(a)(2) for intervention as a matter of right and the requirements set forth in rule 24(b)(1) for permissive intervention. The Court concludes, without deciding the jurisdictional issues Micron Israel's proposed claims against S2 Automation, Israel,

---

[1]In its Sealed Memorandum Opinion and Order, filed July 23, 2012 (Doc. 85)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court published a public version of the Sealed MOO. <u>See</u> Sealed MOO at 1 n.1. The Court gave the parties fourteen calendar days to provide notice of any proposed redactions. <u>See</u> Sealed MOO at 1 n.1. The parties have not contacted the Court or made any filings within CM/ECF to indicate that they have any proposed redactions. Consequently, the Court is now re-filing the Sealed MOO in an unsealed form.

Ltd. ("S2 Israel") and Yosef Astanovsky raise, that Micron Israel may intervene.

## FACTUAL BACKGROUND

There have been two sets of claims asserted in this suit.  First, Plaintiff S2 Automation LLC asserts claims against Defendant Micron Technology, Inc.  <u>See</u> Amended Complaint for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Conversion, Fraudulent Misrepresentation, Negligent Misrepresentation, and Unjust Enrichment, filed April 12, 2012 (Doc. 36)("Amended Complaint").   Second, Micron Israel proposes to assert claims against S2 Automation, S2 Israel, and Astanovsky in its Motion to Intervene.  <u>See</u> Counterclaim in Intervention by Micron Semiconductor Israel, Ltd, filed May 3, 2012 (Doc 42)("Proposed Counterclaim").

### 1.     <u>Facts Underlying S2 Automation's Claims Against Micron Technology</u>.

The Court recites the factual background in this section in the light most favorable to S2 Automation, the plaintiff.  "This case arises out of a dispute between the parties involving the operation of a Micron owned computer chip manufacturing facility in Qiryat-Gat, Israel," which the parties refer to as the "Fab 12" facility.  Amended Complaint ¶ 3, at 1.  S2 Automation is a New Mexico based company "with its principal place of business in Sandoval County, New Mexico." Amended Complaint ¶ 1, at 1.  It "provide[s] goods and services associated with chip manufacturing processes to Intel Corporation" for Intel's facilities at various locations throughout the world. Amended Complaint ¶ 6, at 2.  Intel previously owned the Fab 12 facility.  <u>See</u> Amended Complaint ¶ 8, at 2.  In 2008, "Intel sold their Fab 12 production facility to Numonyx."  Amended Complaint ¶ 9, at 2.  "In July 2008, S2 [Automation] entered in to a supplier agreement called the Total Spares Management Agreement ('TSM') for the Fab 12 facility."  Amended Complaint ¶ 10, at 2.  "On or about December 2, 2008, S2 [Automation] and Numonyx entered in to a second agreement called the Statement of Work ('SOW') memorializing the services to be provided by S2 [Automation]."

Amended Complaint ¶ 11, at 2. "Pursuant to the terms of the SOW, S2 [Automation] took ownership, possession, and control of all of Numonyx's parts and equipment inventory and laboratory tools," which the parties refer to as the "Inventory." Amended Complaint ¶ 12, at 2. "The TSM gave S2 [Automation] the option of repairing, maintaining, or discarding the Inventory it acquired from Numonyx." Amended Complaint ¶ 13, at 2.

Micron Technology "subsequently purchased Fab 12 from Numonyx in 2010 and assumed all of Numonyx's contract obligations, including the S2 TSM and SOW agreements," which the parties refer to as the "S2 Agreements." Amended Complaint ¶ 17, at 3. "Micron [Technology] did not disclose to S2 [Automation] that [Micron Israel] or any other entity was acquiring the Numonyx assets or that the existing contracts would be assigned to any entity other than Micron [Technology]." Amended Complaint ¶ 21, at 4. "S2 [Automation] was never informed prior to termination of the S2 Agreements that Micron Israel was a party to any agreement and that Micron Israel was anything other that a shipping destination, billing and payment agent performing services for Micron [Technology]." Amended Complaint ¶ 24, at 4. "S2 [Automation] was misled by the affirmative representations as set forth above regarding Micron [Technology]'s purchase of the Numonyx and contracts and its affirmative representations that nothing would change." Amended Complaint ¶ 25, at 4. S2 Automation represents, that following the transfer, Micron Technology "attempted to impose repair and service obligations on S2 [Automation] that were not part of the S2 Agreements." Amended Complaint ¶ 30, at 5. "S2 [Automation] refused to undertake the out of scope work not set forth in the S2 Agreements without amendments to the S2 Agreements, resulting in a deterioration of the S2 [Automation]'s relationship with Micron [Technology]." Amended Complaint ¶ 31, at 5. "On November 30, 2010, Micron [Technology] purported to terminate S2 [Automation] 'for cause' in order to attempt to escape its termination payment

obligations pursuant to the SOW."  Amended Complaint ¶ 37, at 6.  S2 Automation represents, however, that "S2 [Automation] was meeting the measurable performance requirements set forth in the SOW and the metrics establishing S2 Agreement compliance were reported to Micron [Technology] in weekly meetings."  Amended Complaint ¶ 38, at 6**.**

"As the S2 Agreements termination date approached, Micron [Technology]'s representatives . . . arranged for a meeting to conduct a review of S2 [Automation]'s Inventory." Amended Complaint ¶ 41, at 6.  "The stated purpose of the review process was to determine what part of the Inventory Micron [Technology] would purchase so that S2 [Automation] could make arrangements to remove the remaining portion of the Inventory."  Amended Complaint ¶ 41, at 6. Micron Technology representatives acknowledged that S2 Automation owned some of the Inventory stored at the Fab 12 facility.  See Amended Complaint ¶ 42, at 6.  Further, no Micron Technology representatives indicated that Micron Technology challenged S2 Automation's ownership of the Inventory.  See Amended Complaint ¶ 44, at 7.  Following the Inventory review process, "Micron [Technology] took the position that S2 [Automation] would need to document its ownership of the Inventory" and that "S2 [Automation] no longer had access to Fab 12 or the Micron [Technology] computer systems that would assist it" in documenting ownership.  Amended Complaint ¶ 52, at 8. "Micron [Technology] has failed and refused to pay for any Inventory amounts despite demands that it do so."  Amended Complaint ¶ 57, at 9.

"In mid-May 2011, just prior to the termination of S2 [Automation]'s Agreements, Micron [Technology]'s Operational Manager, Or Bessor, became concerned that Micron [Technology] would not have enough Aero Track Car Kits and Batteries (collectively 'Track Cars')[2] to continue

---

[2]S2 Automation describes Track Cars as "small transport vehicles that carry semiconductor wafers around the production facility."  Amended Complaint ¶ 63, at 10.

to operate after S2 [Automation] was no longer under contract."  Amended Complaint ¶ 63, at 9-10.  "The uninterrupted operation of the Track Cars production process is critical to the semiconductor fabrication process."  Amended Complaint ¶ 63, at 10.  "Bessor therefore directed S2 [Automation] to order Track Cars and represented that Micron [Technology] would pay S2 [Automation] for unused Track Car part kits and battery packs . . . ."  Amended Complaint ¶ 66, at 10.  "Following delivery of the parts, Micron [Technology] has refused to pay for the Track Cars it ordered but has instead attempted to use the payment as leverage to reduce the termination fees due to S2 [Automation] pursuant to the terms of the S2 Agreements."  Amended Complaint ¶ 69, at 10.

In support of its Breach of Contract claim, S2 Automation asserts that Micron Technology "assumed the S2 Agreements from Numonyx and has breached those agreements by failing to pay amounts owed to S2 [Automation]."  Amended Complaint ¶ 78, at 11.  S2 Automation also asserts that Micron Technology "breached its duty of good faith and fair dealing with respect to its agreements with S2 [Automation]."  Amended Complaint ¶ 82, at 12.  S2 Automation further contends that Micron Technology "has improperly converted the Inventory, Aero Track Cars, and Tool Kits."  Amended Complaint ¶ 86, at 12.  In support of its fraudulent misrepresentation claim, S2 Automation asserts that Micron Technology "intentionally failed to disclose key facts to S2 [Automation] in conjunction with the S2 Agreements."  Amended Complaint ¶ 89, at 12.  In the alternative, S2 Automation contends that the material misrepresentations "were negligent misrepresentations and omissions made with the intent to deceive S2 [Automation] into cooperating during the S2 Agreement termination period."  Amended Complaint ¶ 97 at 14.  Finally, S2 Automation asserts that Micron Technology "has been unjustly enriched by use of the S2 Inventory, Aero Track Cars, and Tool Boxes without paying for the items."  Amended Complaint ¶ 102, at 14.

2.       **Facts Underlying Micron Israel's Proposed Claims Against S2 Automation**.

The Court recites the factual background in this section in the light most favorable to Micron Israel.  "Micron Israel, a wholly-owned subsidiary of Micron [Technology], owns and operates a semiconductor manufacturing facility based in Kiryat Gat, Israel," which the parties refer to as Fab 12.  Proposed Counterclaim ¶¶ 1, 17, at 6, 8.  "In 2010, Micron Semiconductor B.V. entered into an agreement whereby it received all of the shares in Numonyx."  Proposed Counterclaim ¶ 20, at 8.  "Micron Semiconductor B.V. is a wholly owned subsidiary of Micron Technology."  Proposed Counterclaim ¶ 19, at 8.  "Through that transaction, Micron Israel . . . assumed the rights of Numonyx Israel related to Fab 12, including all rights against S2 [Automation], S2 Israel, and Astanovsky."  Proposed Counterclaim ¶ 21, at 8.  "From mid-2010, after the Numonyx transaction closed, to the present, Micron Israel has owned and operated Fab 12, where it develops and produces semiconductor wafers in a highly automated environment."  Proposed Counterclaim ¶ 22, at 8.

"Fab 12 uses a system known as Automated Materials Handling System ('AMHS') to transport the wafers through the automated manufacturing process."  Proposed Counterclaim ¶ 23, at 8.  Micron Israel represents that Astanovsky served as the manager of the AMHS at Fab 12 since approximately March 2008.  See Proposed Counterclaim ¶ 27 at 9.  Micron Israel asserts that, in locating a vendor for the AMHS, Astanovsky "knowingly and purposefully directed the work to S2 [Automation] and S2 Israel for his own personal gain."  Proposed Complaint ¶ 29, at 9.  "The parties memorialized their agreement in a document styled as Additional Commercial Terms and Conditions to Numonyx Corporation Purchase Agreement Goods & Services Number XXX ('TSM Agreement')."  Proposed Counterclaim ¶ 32, at 9.  "The TSM agreement required S2 [Automation] to maintain the proper inventory of spare parts at Fab 12 in case they were needed for repair or maintenance so that Fab 12 could operate without risk of unscheduled downtime."  Proposed

Counterclaim ¶ 33, at 10.  "The TSM agreement did not transfer ownership of the parts owned by Numonyx Israel to S2 [Automation]."  Proposed Counterclaim ¶ 35, at 10.

"Throughout the late summer and fall 2008, Numonyx Israel and S2 [Automation] explored the possibility of expanding S2 [Automation]'s relationship to a full service contract, which meant that S2 [Automation] would be responsible for providing all necessary parts and maintenance on the AMHS."  Proposed Counterclaim ¶ 37, at 10.  "In December 2008, Numonyx Israel and S2 [Automation] entered into a series of agreements memorializing this new relationship including a Scope of Work Agreement for Equipment Service ('SOW') and a document styled as Numonyx Corporation Purchase Agreement ('Purchase Agreement')."  Proposed Counterclaim ¶ 40, at 10-11. "The SOW required S2 [Automation] to provide preventative and sustaining service and maintenance . . . ."  Proposed Counterclaim ¶ 41, at 11.  "S2 [Automation] assumed the risk of production increases under the SOW, and was responsible for providing appropriate parts and service to accommodate increase or decreases in production at Fab 12."  Proposed Counterclaim ¶ 45, at 11.

"S2 [Automation] failed to perform as agreed and breached its agreements."  Proposed Counterclaim ¶ 49, at 12.  "Instead, S2 [Automation], S2 Israel, and Astanovsky conspired with each other to defraud Micron Israel, cannibalize parts and equipment owned by Micron Israel, manipulate maintenance records, and otherwise act to harm Micron Israel's interests."  Proposed Counterclaim ¶ 50, at 12.  Micron Israel asserts that the "misrepresentations and acts of concealment by S2 [Automation], S2 Israel, and Astanovsky occurred at Fab 12 between 2008 and 2011."  Proposed Counterclaim ¶ 53, at 14.  As an example, Micron Israel represents that, "in 2009, S2 [Automation], S2 Israel, and Astanovsky . . . knowingly and intentionally concealed the fact that upgrades had not been installed as represented."  Proposed Counterclaim ¶ 52, at 13.

"In November 2010, Micron Israel provided notice to S2 [Automation] of its intent to terminate the parties' contractual relationship, which termination was effective May 2011." Proposed Counterclaim ¶ 55, at 14.  "After Micron Israel provided S2 [Automation] with notice of termination, S2 [Automation] began further sabotaging Micron Israel and acting to cause damage to Micron Israel."  Proposed Counterclaim ¶ 56, at 14.  Micron Israel states that, as an example of these actions, "S2 [Automation], S2 Israel, and Astanovsky wrongfully, willfully, and without Micron Israel's consent discarded or destroyed valuable parts and equipment owned by Micron Israel."  Proposed Counterclaim ¶ 57, at 14.  Micron Israel asserts that the "wrongful conduct forced Micron Israel to terminate the contractual relationship between Micron Israel and S2 [Automation]."  Proposed Counterclaim ¶ 59, at 15.  Micron Israel was "forced at a substantial cost to hire a replacement vendor to restore the damage caused by S2 [Automation]'s misrepresentations, breaches of contract, and unfair trade practices and to purchase additional spare parts that had been wrongfully depleted and not replaced by S2 [Automation], S2 Israel, and Astanovsky."  Proposed Counterclaim ¶ 59, at 15.  "The replacement vendor has charged Micron Israel additional monies to perform maintenance and service that should have been performed by S2 [Automation] under the full service agreements."  Proposed Counterclaim ¶ 60, at 15.  "Micron Israel would not have had to expend these funds had S2 [Automation] properly maintained and repaired the AMHS and not engaged in the wrongful conduct alleged."  Proposed Counterclaim ¶ 62, at 16.  "At times relevant to [Micron Israel's] claim, the AMHS experienced numerous system and equipment failures that could have been prevented had S2 [Automation] properly maintained and serviced the AMHS."  Proposed Counterclaim ¶ 67, at 16.

## PROCEDURAL BACKGROUND

On October 3, 2011, S2 Automation filed its Complaint for Breach of Contract, Conversion,

Misrepresentation and Unjust Enrichment.  See Doc. 1 ("Original Complaint").  On March 2, 2012, S2 Automation and Micron Technology filed a Joint Status Report and Provisional Discovery Plan. See Doc. 25 ("JSR").  The JSR indicates that Micron Technology intends to move to amend its answer to raise the defense of S2 Automation's "failure to name the proper party."  JSR at 2.  The JSR also states that Micron Israel "intends to intervene as a party defendant and assert counterclaims."  JSR at 2.  On March 19, 2012, the Court issued the Scheduling Order that allowed Micron Technology until May 7, 2012, to move to amend its pleadings and to join additional parties. See Scheduling Order at 1 (Doc. 33).  The Court set the trial date for December 17, 2012.  See Scheduling Order at 3.  On March 19, 2012, the Court issued an Order Adopting Joint Status Report and Provisional Discovery Plan.  See Doc. 34.

On April 12, 2012, S2 Automation filed its Amended Complaint.  See Doc. 36.  S2 Automation asserts six causes of action against Micron Technology: (i) Breach of Contract; (ii) Breach of Duty of Good Faith and Fair Dealing; (iii) Conversion; (iv) Fraudulent Misrepresentation; (v) Negligent Misrepresentation; and (vi) Unjust Enrichment.  See Amended Complaint at 11-15.  On April 26, 2012, Micron Technology filed Micron Technology, Inc.'s Answer to First Amended Complaint.  See Doc. 39.

On May 3, 2012, Micron Israel filed its Motion to Intervene.  See Doc. 42.  Micron Israel proposes that it will  assert claims for relief against S2 Automation individually and against S2 Automation, S2 Israel, and Astanovsky collectively.  Against S2 Automation individually, Micron Israel intends to assert the following claims: (i) Breach of Contract; (ii) Breach of Covenant of Good Faith and Fair Dealing; (iii) Breach of Express Warranty; (iv) Breach of Implied Warranty of Merchantability; and (v) Breach of Implied Warranty of Fitness for a Particular Purpose.  See Proposed Counterclaim at 17-23.  Against S2 Automation, S2 Israel, and Astanovsky collectively,

Micron Israel intends to assert the following claims: (i) Violation of New Mexico Unfair Practices Act; (ii) Unjust Enrichment; (iii) Intentional Misrepresentation/Concealment; (iv) Negligent Misrepresentation/Concealment; (v) Constructive Fraud; (vi) Civil Conspiracy; (vii) Tortious Interference with Prospective Economic Advantage; and (viii) Tortious Interference with Contract. See Proposed Counterclaim at 23-33.

Micron Israel attached to its Motion to Intervene its Memorandum in Support of Micron Semiconductor Israel, Ltd.'s Motion to Intervene as Counterclaimant. See Doc. 42-1 ("Memorandum"). "Micron Israel requests leave to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) as a counterclaimant." Memorandum at 1. First, Micron Israel argues that the Court should permit it to intervene as a matter of right, because its application is timely. See Memorandum at 5. Micron Israel contends that its application is timely, because the lawsuit is still at an early stage and because the parties have only recently begun exchanging discovery. See Memorandum at 5. Second, Micron Israel asserts that it has an interest in the property and transactions discussed in S2 Automation's Amended Complaint. See Memorandum at 6. Micron Israel states that it is the owner of the property at issue in the Amended Complaint, that it employs the personnel identified in the Amended Complaint, and that it has rights to the contracts with S2 Automation at issue in the Amended Complaint. See Memorandum at 6. Micron Israel emphasizes that it "is interested in the property and subject matter of this action to justify intervention," because "the interest the intervenor claims is related to the property that is the subject of the action." Memorandum at 6 (quoting Utah Assoc. of Cntys. v. Clinton, 255 F.3d 1246, 1250 (10th Cir. 2001)). Third, Micron Israel argues that its interests will suffer harm if the Court does not permit intervention. See Memorandum at 7. Micron Israel represents that S2 Automation is seeking rulings and relief related to: (i) contracts to which Micron Israel has rights and is a party;

(ii) inventory that Micron Israel owns; and (iii) revenue Micron Israel generated.  See Memorandum at 7.  Micron Israel contends that its "interests would be impaired if it were not allowed to appear and participate in any proceedings relating to those contracts."  Memorandum at 7.  Fourth, Micron Israel asserts that the existing parties do not adequately represent its interests.  See Memorandum at 8.  Micron Israel asserts that Micron Technology "is not positioned to assert all claims on behalf of Micron Israel."  Memorandum at 8.  Micron Israel contends that Micron Technology cannot assert contractual claims and defenses, because Micron Technology is not the party with a direct contractual relationship to S2 Automation.  See Memorandum at 8.  Micron Israel further emphasizes that Micron Technology will likely request dismissal of all claims S2 Automation has asserted against it based on S2 Automation's failure to name the proper party, thus leaving Micron Israel without any party remaining in the litigation to protect its interests.  See Memorandum at 8.  Micron Israel, therefore, argues that it "has satisfied each of the elements required for intervention as of right under Federal Rule of Civil Procedure 24(a)(2)."  Memorandum at 10.

"In the alternative, Micron Israel requests leave to permissively intervene under Federal Rule of Civil Procedure 24(b)(1)(B)."  Memorandum at 2.  First, Micron Israel argues that the Court should permit it to permissively intervene, because its request is timely.  See Memorandum at 9.  Second, Micron Israel contends that its claims and defenses have questions of law and fact in common with S2 Automation's Amended Complaint.  See Memorandum at 9.  Micron Israel asserts that "the counterclaims proposed by Micron Israel . . . all arise out of the contractual relationship between the parties and the common nucleus of facts covered by the Amended Complaint."  Memorandum at 9.  Third, Micron Israel asserts that intervention will not unduly delay the proceedings or prejudice the other parties.  See Memorandum at 9.  Micron Israel emphasizes that the lawsuit is still at an early stage and argues that intervention will promote judicial economy by

allowing resolution of every aspect of the dispute.  See Memorandum at 9-10.

On May 17, 2012, S2 Automation filed S2's Response to Micron Semiconductor Israel, Ltd.'s Motion to Intervene as a Counterclaimant.  See Doc. 52 ("Response").  S2 Automation argues that the Motion to Intervene "is interposed as part of a larger effort to delay the resolution of this matter and to increase the cost to levels S2 cannot sustain, severely prejudicing S2." Response at 1.  S2 Automation contends that "Micron Israel's interests are adequately represented in the litigation, as evidenced by the fact that one firm represents both Micron [Technology] and Micron Israel."  Response at 1.  S2 Automation argues that the motion is untimely and that intervention will prejudice S2 Automation.  See Response at 2.  S2 Automation asserts that Micron Israel's argument that the lawsuit is just getting underway is inaccurate, because the events giving rise to the dispute occurred on May 31, 2011, and it filed its Original Complaint on October 3, 2011. See Response at 2.  S2 Automation emphasizes that "a great deal of activity has occurred in this litigation," because it has gathered and delivered over 2000 pages of documents to Micron Technology and has responded to two sets of discovery requests.  Response at 4.  S2 Automation further argues that "the Court's meeting notes [from the scheduling conference] made no mention of Micron Technology suggesting that its wholly owned subsidiary, Micron Israel, might seek to intervene . . . despite the fact that Micron Israel's counsel participated in the conference."  Response at 3.  S2 Automation, therefore, argues that the Court should deny the Motion to Intervene as untimely, given that Micron Israel knew or should have known of their interest in the case.  See Response at 2-6.  S2 Automation also asserts that intervention will increase the complexity of the case to S2 Automation's economic detriment.  See Response at 6 (citing Stupak-Thrall, 226 F.3d 467, 475 (6th Cir. 2000)).

S2 Automation argues that Micron Israel's interest in the agreements with S2 Automation

is inadequate to support intervention.  See Response at 7.  According to S2 Automation, "Micron Israel's interest in the S2 agreements that are the subject of this litigation is essentially as an invoicing and billing agent for Micron [Technology]."  Response at 7.  S2 Automation states that the documents that it has received through discovery do not indicate that, following Micron Technology's purchase of Numonyx, anyone had assigned the agreements with Micron Technology to Micron Israel.  See Response at 8.  S2 Automation argues that "Micron Israel's assertion that it 'has rights in the contracts' that are central to the dispute has no evidentiary support."  Response at 8.  S2 Automation also contends that Micron Technology's website demonstrates that Micron Technology -- not Micron Israel -- owns the property in dispute and bears the sole responsibility for agreements with S2 Automation.  See Response at 9.  S2 Automation argues that "Micron Israel simply has not demonstrated that it has an interest in the subject matter of the litigation that would justify the delay, increased complexity and prejudice to S2 [Automation] that would inevitably flow from its intervention." Response at 10.

S2 Automation contends that Micron Technology can adequately represent Micron Israel's interests.  See Response at 11.  S2 Automation emphasizes that Micron Israel is a wholly owned subsidiary of Micron Technology.  See Response at 11.  S2 Automation argues that Micron Israel's interests are so closely aligned with Micron Technology's interests that both parties have hired the same counsel.  See Response at 11.  According to S2 Automation, "Micron [Technology] is not only fully capable of representing its wholly owned subsidiary and asserting any and all defenses that would be available, but it is in [Micron Technology's] interests to do so." Response at 11.  S2 Automation emphasizes that "Micron Israel cannot overcome the presumption of adequate representation" when "it is wholly owned by a party to the litigation that has an overwhelming interest in maximizing the economic benefits it derives from the contracts at issue, has no interest

adverse to Micron Israel, and has not failed to represent Micron Israel's interests at any time." Response at 13. S2 Automation, therefore, argues that the Court should deny the Motion to Intervene, because Micron Technology adequately represents Micron Israel's interests. See Response at 13.

S2 Automation also argues that the Court should not allow Micron Israel to permissively intervene. See Response at 13. According to S2 Automation, "to allow Micron Israel to intervene would open a Pandora's box of jurisdictional issues that are certain to delay the litigation and increase the expense." Response at 13. S2 Automation states that the Proposed Counterclaim attempts to bring an Israeli company (S2 Israel) and an Israeli citizen (Astanovsky) under an American court's jurisdiction. See Response at 14. S2 Automation argues that, if the Court grants the Motion to Intervene, "months of motion practice will begin at a cost of many thousands of dollars to determine if an Israeli citizen and an Israeli company should be brought before an American court due to events that occurred in Israel." Response at 14. S2 Automation argues that it "will have no speedy resolution of its relatively simple contractual claims against a domestic company that wholly owns the proposed intervenor." Response at 14. S2 Automation contends that the Court should not allow permissive intervention, because Micron Israel's interests have an adequate representative and because intervention would complicate the action to S2 Automation's detriment. See Response at 15. S2 Automation argues, in conclusion, that the Court should deny the Motion to Intervene, because it "is untimely, unsupported by facts, inconsistent with its representations, and would be tremendously prejudicial to S2." Response at 16.

On June 4, 2012 Micron Israel filed its Reply Brief in Support of Micron Semiconductor Israel, Ltd.'s Motion to Intervene as Counterclaimant. See Doc. 63 ("Reply"). Micron Israel argues that it "should be permitted to intervene as a matter of right because it has satisfied each of the bases

for intervening in this action."  Reply at 1.  Micron Israel asserts that: (i) "the motion is timely, as Micron Israel filed within the deadline set by Court for amendment of pleadings and joinder of new parties"; (ii) "the action directly affects Micron Israel's property interests"; (iii) "the action could impair those interests"; and (iv) "Micron Israel's interests are not adequately represented by current parties to the action."  Reply at 1-2.  Micron Israel contends that its Motion to Intervene is timely, because it is a counterclaimant and "thus it was entirely appropriate for Micron [Technology]'s counsel to notify the Court during the scheduling conference of anticipated counterclaims that would be filed."  Reply at 3.  According to Micron Israel, S2 Automation has been aware of Micron Technology's position that S2 Automation named the incorrect defendant and that Micron Israel would have counterclaims to file.  See Reply at 3.  Micron Israel asserts that "this case remains in its infancy" despite the commencement of written discovery, because S2 Automation filed its Amended Complaint on April 12, 2012, and no depositions have taken place.  See Reply at 3-4. Micron Israel emphasizes that the Motion to Intervene is timely, because the motion was filed two weeks after S2 Automation filed its Amended Complaint, and within the period for amending parties and joining parties.  See Reply at 5. Micron Israel contends that it "has a direct interest in the property and transactions at issue in this suit, which justifies intervention under rule 24(a)(2)." Reply at 7.  Micron Israel asserts that "it is disingenuous for S2 [Automation] to oppose intervention on this basis because, as separate corporations, Micron [Technology] and its subsidiary have different rights and claims."  Reply at 9.

Micron Israel contends that S2 Automation's conclusions that intervention by Micron Israel will make the matter more complex "are all insufficient bases to deny Micron Israel the opportunity to permissively intervene."  Reply at 10.  Micron Israel emphasizes that "it was S2 [Automation] . . . that chose to file suit in New Mexico despite the fact that the facility, most of the witnesses, the

significant in-person meetings, and the majority of the documents are located in Israel."  Reply at 10.  Micron Israel argues that "S2 [Automation] chose to initiate this action and that decision must be taken with full realization of potential attendant costs."  Reply at 10.

At the hearing on June 15, 2012, S2 Automation argued that, if the Court granted the Motion to Intervene, jurisdictional difficulties would arise out of the proposed counterclaims.  See Transcript of Hearing at 5:23-6:6 (taken June 15, 2012)(Holland)("Tr.").[3]  S2 Automation explained that its objection to the Motion to Intervene is based on Micron Israel's attempt to bring a foreign company and a foreign citizen into the litigation -- not an objection to Micron Israel's submission to jurisdiction to bring counterclaims against S2 Automation.  See Tr. at 6:7-16 (Holland).  The Court noted that S2 Automation could raise jurisdictional objections to S2 Israel and Astanovsky's involvement in the case in a later motion to dismiss, if the Court decided to grant the Motion to Intervene.  See Tr. at 5:12-13 (Court).  S2 Automation argued that it has made a decision to proceed against Micron Technology and the defenses it puts forth, including a defense that S2 Automation has sued the wrong party.  See Tr. at 6:21-7:5 (Holland).  It related that it would later determine whether to drop the case or to bring a cause of action against Micron Israel in Israeli courts.  See Tr. at 6:21-7:5 (Holland).  S2 Automation then argued that the case was not at an early stage, as the Court has already established deadlines and the trial is set for December.  See Tr. at 8:1-11 (Holland).  S2 Automation conceded that the case had not progressed in a significant manner, but argued this situation arose, because Micron Technology has been effectively stonewalling discovery.  See Tr.  at 8:12-15 (Holland).

Micron Israel argued that Micron Technology does not belong in the case and that S2

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Automation should have brought all claims against Micron Israel, because it was the party with rights to the contracts at issue.  See Tr. at 9:14-20 (Court, Stidham).  Micron Israel stated that it was requesting permission to enter the case and was not seeking a determination whether the Court has jurisdiction over the parties named in its proposed counterclaims.  See Tr. at 9:18-10:5 (Stidham). Micron Israel asserted that the correct parties need to be identified at the early stages of this case for it to proceed in an efficient manner.  See Tr. at 12:14-13:1 (Stidham).

S2 Automation asserted that the case began as a dispute between American companies involving contracts governed by American law and that the Motion to Intervene is an attempt to turn the case into a dispute over jurisdictional issues.  See Tr. at 13:7-19 (Holland).  S2 Automation contended that the parties named in the proposed counterclaim would not be able to contest the Court's jurisdiction, because they are halfway around the world and do not have the resources to participate in an extended proceeding in the United States.  See Tr. at 13:20-14:5 (Court, Holland). S2 Automation argued that, if the Court denied the Motion to Intervene, the case would go forward with the current parties and the parties named in Micron Israel's proposed pleading may never have to invest resources in litigation.  See Tr. at 15:5-9 (Holland).

Micron Israel emphasized that it was seeking to intervene to bring claims against a number of parties, including S2 Automation.  See Tr. at 20:9-19 (Stidham).  Micron Israel asserted that it has been candid with S2 Automation about its belief that Micron Technology is the wrong defendant and has informed S2 Automation that Micron Israel is the correct defendant in this case.  See Tr. at 20:20-21:15 (Stidham).  Micron Israel contended that it should be a party to this case, because it believes that it has contract rights to the agreements at issue.  See Tr. at 22:7-13 (Stidham).  Micron Israel then argued that, if S2 Automation believed that this case was a small one at the time it filed its Original Complaint, such belief was misplaced, because the amount at stake in damages could

be millions of dollars.  See Tr. at 23:8-23 (Stidham).

The Court stated that it was inclined to grant the Motion to Intervene.  See Tr. at 24:3-5 (Court).  The Court related that it believes this case is still at an early stage of litigation and that it could not soundly deny the motion on timeliness grounds.  See Tr. at 24:6-10 (Court).  The Court also noted that it believes that the allegations in this case relate to Micron Israel's interests and, given the position that Micron Technology has taken, those interests may not have adequate representation.  See Tr. at 24:11-18 (Court).  The Court stated that Micron Israel is likely entitled to intervene as a matter of right under rule 24(a)(2) and to permissively intervene under rule 24(b). See Tr. at 24:11-20 (Court).

## RELEVANT LAW REGARDING INTERVENTION AS OF RIGHT

Rule 24(a) provides for intervention of right:

(a) **Intervention of Right.** On timely motion, the court must permit anyone to intervene who:

(1)     is given an unconditional right to intervene by a federal statute; or

(2)     claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  The movant bears the burden of establishing its right to intervene.  See United States v. Tex. E. Transmission Corp., 923 F.2d 410, 414 (5th Cir. 1991).  A court generally may not consider concerns of judicial economy and efficiency when ruling on a request to intervene as of right.  See United States v. Union Elec. Co., 64 F.3d 1152, 1158 & n.1 (8th Cir. 1995)("We find that supplanting the standards applicable to intervention as of right under Rule 24(a) with policy considerations led to the erroneous denial of intervention in this case."); In re Sierra Club, 945 F.2d

-18-

776, 779 (4th Cir. 1991)("The district court, however, incorrectly bolstered its denial of intervention of right by referring to concerns of judicial economy and need for guidance. Although those issues have a place in motions for permissive intervention, Rule 24(a) affords them no weight.").

To intervene as a matter of right under rule 24(a)(2), the movant must show that: (i) the motion is timely; (ii) the movant claims an interest relating to the property or transaction which is the subject of the action; (iii) the movant's interest relating to the property may be impaired or impeded; and (iv) the movant's interest is not adequately represented by existing parties. See Elliot Indus. Ltd P'ship v. Am. Prod. Co., 407 F.3d 1091, 1103 (10th Cir. 2005).

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." Am. Assoc. of People with Disabilities v. Herrera, 257 F.R.D. 236, 245 (D.N.M. 2008)(Browning, J.)(quoting Utah Ass'n of Cntys. v. Clinton, 255 F.3d 1246, 1250 (10th Cir. 2001)). "Unusual circumstances" refers to those circumstances that would excuse the untimely filing of a motion to intervene. In re SEC, 296 F.App'x 637, 640 (10th Cir. 2008)(unpublished).

"Under rule 24(a)(2), the applicants must claim . . . an interest relating to the property or transaction which is the subject of the action." Utah Assoc. of Cntys, v. Clinton, 255 F.3d at 1250 (internal quotation marks omitted). "The Tenth Circuit requires that the interest be 'direct, substantial, and legally protectable.'" Forest Guardians v. U.S. Dep't of Interior, No. CIV-02-1003, 2004 WL 3426413, at *5 (D.N.M. Jan. 12, 2004)(Browning, J.)(quoting Utah Assoc. of Cntys. v. Clinton, 255 F. 3d at 1250). The United States Court of Appeals for the Tenth Circuit has also noted that the inquiry is "highly fact-specific," and that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible

-19-

with efficiency and due process." <u>Utah Assoc. of Cntys. v. Clinton</u>, 255 F.3d at 1251-52.  "The threshold for finding the requisite legal protectable interest is not high."  <u>Forest Guardians v.  U.S. Dep't of Interior</u>, 2004 WL 3426413, at *5.  <u>See</u> <u>Forest Guardians v.  U.S. Dep't of Interior</u>, 2004 WL 3426413, at *5  (citing <u>Utahns for Better Transp. v. U.S. Dep't of Transp.</u>, 295 F.3d 1111, 1115 (10th Cir. 2002))("Furthermore, the Tenth Circuit has deemed the mere threat of economic injury to be sufficient for granting intervention.").

"To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied.  This burden is minimal."  <u>WildEarth Guardians v. U.S. Forest Serv.</u>, 573, F.3d 992, 995 (10th Cir. 2009)("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.").  "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation."  <u>San Juan Cnty., Utah v. United States</u>, 503 F.3d 1163, 1203 (10th Cir. 2007)(en banc).

"Although an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the 'minimal' one of showing that representation 'may' be inadequate."  <u>Forest Guardians v.  U.S. Dep't of Interior</u>, 2004 WL 3426413 at *6.  "The most common situation in which courts find representation adequate arise when the objective of the [movant] is <u>identical</u> to that of one of the parties."  <u>Bottoms v.  Dresser Indus., Inc.</u>, 797 F.2d 869, 872-73 (10th Cir. 1986)(emphasis added).  The Tenth Circuit, however, has found that the "possibility of divergence of interest need not be great in order to satisfy the burden of the applicants."  <u>Coal. of Arizona/New Mexico Cntys. for Stable Econ. Growth v. Dep't of Interior</u>, 100 F.3d 837, 845 (10th Cir. 1996).

## RELEVANT LAW REGARDING PERMISSIVE INTERVENTION

Rule 24(b) provides for permissive intervention:

(b)      Permissive Intervention.

      (1)    **In General.** On timely motion, the court may permit anyone to intervene who:

            (A)    is given a conditional right to intervene by a federal statute; or

            (B)    has a claim or defense that shares with the main action a common question of law or fact.

      (2)    **By a Government Officer or Agency.** On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

            (A)    a statute or executive order administered by the officer or agency; or

            (B)    any regulation, order, requirement, or agreement issued or made under the statute or executive order.

      (3)    **Delay or Prejudice.** In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b). The movant bears the burden of establishing its right to intervene. See United States v. Tex. E. Transmission Corp., 923 F.2d at 414. "Unlike Rule 24(a), which governs mandatory intervention, Rule 24(b) specifically vests discretion in district courts to consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties." 6 J. Moore, Moore's Federal Practice § 24.10[1], at 24-63 (3d ed. 2012)(citation omitted). Accord In re Sierra Club, 945 F.2d at 779 ("The district court, however, incorrectly bolstered its denial of intervention of right by referring to concerns of judicial economy and need for guidance. Although those issues have a place in motions for permissive intervention, Rule 24(a) affords them no

weight."). "The district court possesses broad discretion in determining whether to grant permissive intervention and will rarely be reversed on appeal." 6 J. Moore, supra § 24.10[1], at 24-63. "[C]onsiderations of trial convenience dominate the question of whether to allow permissive intervention." 6 J. Moore, supra § 24.10[1], at 24-63. Accord Garza v. Cnty of L.A., 918 F.2d 763, 777 (9th Cir. 1990)("The decision to grant or deny [permissive] intervention is discretionary, subject to considerations of equity and judicial economy.").

"To permissively intervene, a party need not have a direct personal or pecuniary interest in the subject of the litigation." San Juan Cnty., Utah v. United States, 503 F.3d at 1207. Permissive intervention lies in the court's sound discretion, and the appellate court will not disturb the district court's exercise of that discretion absent clear abuse. See United Nuclear Corp. v. Cranford Ins. Co., 905 F. 2d 1424, 1427 (10th Cir. 1990). As the Court has previously stated:

> Rule 24(b) allows permissive intervention under the following conditions: (i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.

Forest Guardians v. U.S. Dep't of Interior, 2004 WL 3426413, at *10-11. The court is required to consider whether intervention will cause undue delay or prejudice when considering whether to grant permissive intervention. See Fed. R. Civ. P. 24(b)(3); DeJulius v. New Eng. Health Care Emps. Pension Fund, 429 F.3d 935, 943 (10th Cir. 2005)(noting that district courts required to consider undue prejudice or delay in deciding whether to grant permissive intervention); Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. at 259. While not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention. See City of Stilwell, Okla. v. Ozarks Rural Elec. Coop. Corp., 79 F.3d 1038, 1043 (10th Cir. 1996).

<u>**ANALYSIS**</u>

The Court will grant the Motion to Intervene.  Micron Israel has satisfied the elements that rule 24(a)(2) sets forth for intervention as a matter of right and the requirements that rule 24(b)(1) sets forth for permissive intervention.  The Court concludes, without deciding the jurisdictional issues S2 Automation raises regarding proposed claims against S2 Israel and Astanovsky, that Micron Israel may intervene.

**I.     THE COURT WILL PERMIT MICRON ISRAEL TO INTERVENE AS A MATTER OF RIGHT UNDER RULE 24(a)(2).**

Micron Israel requests leave to intervene as a matter of right under rule 24(a)(2) as a counterclaimant.  The Court will grant Micron Israel leave to intervene as a matter of right under rule 24(a)(2). To intervene as a matter of right under rule 24(a)(2), the movant must show that: (i) the motion is timely; (ii) the movant claims an interest relating to the property or transaction which is the subject of the action; (iii) the movant's interest relating to the property may be impaired or impeded; and (iv) the movant's interest is not adequately represented by existing parties.  <u>See</u> <u>Elliot Indus. Ltd P'ship v. Am. Prod. Co.</u>, 407 F.3d at 1103.

First, the Motion to Intervene is timely.  Micron Israel filed its Motion to Intervene on May 3, 2012 -- before the May 7, 2012, deadline that the Court set for amendments and joinder of parties. <u>See</u> Scheduling Order at 2.  Given the timing of the Motion to Intervene, the Court concludes that Micron Israel acted diligently in seeking intervention.  The full extent of S2 Automation's allegations were not clear until April 12, 2012, when S2 Automation filed its Amended Complaint. Micron Israel has not strategically waited to intervene in the litigation until late in the case or sought to disrupt the progression of the lawsuit by waiting to intervene.  Although some discovery has taken place, this case is still in the early stages of litigation.  Most of the litigation and discovery lies

ahead.  Thus, Micron Israel has satisfied the first element for intervention as a matter of right under rule 24(a)(2).

Second, Micron Israel has claimed an interest in the property and transaction at issue in this case.  See Memorandum at 6.  "Under rule 24(a)(2), the applicants must claim. . . an interest relating to the property or transaction which is the subject of the action."  Utah Assoc. of Cntys, v. Clinton, 255 F.3d at 1250 (internal quotation marks omitted).  "The Tenth Circuit requires that the interest be 'direct, substantial, and legally protectable.'"  Forest Guardians v.  U.S. Dep't of Interior, 2004 WL 3426413, at *5.  The parties dispute the significance of Micron Israel's asserted interest in this case, with S2 Automation arguing that Micron Israel has no interest and that Micron Technology is the proper defendant.  It is not necessary for Micron Israel to prove beyond doubt that it has an interest in the property and contracts in dispute at this stage of the litigation.  See San Juan Cnty., Utah v. United States, 503 F.3d at 1203.  "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation."  San Juan Cnty., Utah v. United States, 503 F.3d at 1203.  While Micron Israel may not ultimately prevail on the issue whether it is a party to the contracts in dispute or has interests in the property in dispute, the Court cannot say that its interest is "wholly remote and speculative."  San Juan Cnty., Utah v. United States, 503 F.3d at 1203.  It has alleged a variety of facts in its proposed pleading suggesting that it may own the property in dispute, and may be a party to contracts either with S2 Automation or with S2 Israel.  It has also alleged that S2 Automation, S2 Israel, and Astanovsky have engaged in a variety of actionable conduct with respect to the contract.  If those facts are true, it may have various causes of action to assert, including breach of contract, unjust enrichment, and tortious interference with contract.  "The threshold for finding the requisite legal protectable interest is not high."  Forest Guardians v.  U.S. Dep't of Interior, 2004

WL 3426413, at *5.  The Court has previously held that the threat of economic injury is sufficient to satisfy this element.  See Forest Guardians v.  U.S. Dep't of Interior, 2004 WL 3426413, at *5 (citing Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d at 1115)("Furthermore, the Tenth Circuit has deemed the mere threat of economic injury to be sufficient for granting intervention.").  In light of the potential injury to Micron Israel's contractual and property rights, it has met its burden of demonstrating that it has a direct, substantial, and legally protectable interest that would support intervention.  Thus, Micron Israel has satisfied the second element for intervention as a matter of right.

Third, the Court concludes that the litigation may impair Micron Israel's interests relating to the property at issue.  "The 'impair or impede' requirement mandates a showing that the interest holder be injured in a practical sense."  6 J. Moore, supra § 24.03[3][a], at 24-41.  Once again, "[a]lthough the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." San Juan Cnty., Utah v. United States, 503 F.3d at 1203.  The existence of Micron Israel's interest is contingent on the outcome of the litigation, but Micron Israel is not required to prove beyond doubt, at this stage, that it has this interest.  "The Tenth Circuit has stated that, in determining whether to grant intervention, the Court may consider any significant legal effect on the applicant's interest as the Court is not bound by a strict res judicata test." Forest Guardians v.  U.S. Dep't of Interior, 2004 WL 3426413, at *5 (citing Coal. of Arizona/New Mexico Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d at 843).  If the Court were to proceed to judgment, it, or a jury, may make certain findings regarding who prevails in the contractual dispute, who has rights under the contracts at issue, who breached these contracts, and who acted tortiously.  Some of those determinations could have res judicata or collateral estoppel effect on future litigation.  Furthermore, the Court or

a jury may award relief in S2 Automation's favor.  The property at issue -- various property at the
Fab 12 facility -- may be Micron Israel's property.  That relief could impact Micron Israel's
economic interests.  Generally speaking, "possible harm to a property interest satisfies" this third
element.  6 J. Moore, supra § 24.03[3][a], at 24-41.  Accord Utahns for Better Transp. v. U.S. Dep't
of Transp., 295 F.3d at 1115 ("The threat of economic injury from the outcome of litigation
undoubtedly gives a petitioner the requisite interest.").  Thus, Micron Israel has satisfied the third
element for intervention as a matter of right.

 Finally, Micron Technology may not be able to adequately protect Micron Israel's interests.
"Although an applicant for intervention as of right bears the burden of showing inadequate
representation, that burden is the 'minimal' one of showing that representation 'may' be
inadequate."  Forest Guardians v.  U.S. Dep't of Interior, 2004 WL 3426413, at *6. "The most
common situation in which courts find representation adequate arise when the objective of the
[movant] is identical to that of one of the parties."  Bottoms v.  Dresser Indus., Inc., 797 F.2d at 872-
73 (emphasis added).  Micron Israel has satisfied its minimal burden of showing that representation
may be inadequate.  Micron Technology has taken the position that S2 Automation incorrectly
named it as a defendant in this suit and plans to move to dismiss claims asserted against it.  The
basis for Micron Technology's argument for dismissal is that Micron Israel is the right defendant
and Micron Technology is the wrong one.  There is a very real possibility that, if the Court
determines Micron Technology is not the proper defendant, there would be no one in the litigation
to assert claims on Micron Israel's behalf.  Consequently, the Court concludes that Micron
Technology does not have identical interests as Micron Israel and is not in a position to represent
Micron Israel's interests.  While Micron Technology and Micron Israel may share attorneys, the
contracts at issue are not with the attorneys, but with parties.  Micron Israel, not just its attorneys,

has a right to be part of the case to protect its interests and bring claims that only it may have.  Thus, Micron Israel has satisfied the fourth element for intervention as a matter of right.  Because Micron Israel has satisfied all of the elements for intervention as a matter of right under rule 24(a)(2), the Court will grant the Motion to Intervene.

S2 Automation raises a variety of other concerns to argue against intervention, including the added costs it will face from having to litigate the case if Micron Israel intervenes, the personal jurisdiction issues intervention raises, and the impact on the speedy resolution of this lawsuit if the Court allows intervention.  Unlike an argument for permissive intervention, a court generally does not have the ability to weigh policy concerns such as these when faced with an argument for intervention as a matter of right.  See United States v. Union Elec. Co., 64 F.3d at 1158 & n.1 ("We find that supplanting the standards applicable to intervention as of right under Rule 24(a) with policy considerations led to the erroneous denial of intervention in this case."); In re Sierra Club, 945 F.2d at 779 ("The district court, however, incorrectly bolstered its denial of intervention of right by referring to concerns of judicial economy and need for guidance.  Although those issues have a place in motions for permissive intervention, Rule 24(a) affords them no weight.").  The Court has considered the factors for intervention of right and finds that they are met.  Thus, the Court must permit Micron Israel to intervene regardless of the other concerns S2 Automation has raised.  The Court will address S2 Automation's prudential concerns when it addresses permissive intervention.

## II.  THE COURT WILL PERMIT MICRON ISRAEL TO PERMISSIVELY INTERVENE UNDER RULE 24(b)(1).

In the alternative, Micron Israel seeks to permissively intervene under rule 24(b)(1).  The Court also concludes that permissive intervention is appropriate under rule 24(b)(1).  As the Court has previously stated:

> Rule 24(b) allows permissive intervention under the following conditions: (i) the application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights.

Forest Guardians v. U.S. Dep't of Interior, 2004 WL 3426413, at *10-11.  The court is required to consider whether intervention will cause undue delay or prejudice when considering whether to grant permissive intervention.  See Fed. R. Civ. P. 24(b)(3); DeJulius v. New Eng. Health Care Emps. Pension Fund, 429 F.3d at 943 (noting that district courts are required to consider undue prejudice or delay in deciding whether to grant permissive intervention).  "[C]onsiderations of trial convenience dominate the question of whether to allow permissive intervention." 6 J. Moore, supra § 24.10[1], at 24-63.  Accord Garza v. Cnty of L.A., 918 F.2d at 777 ("The decision to grant or deny [permissive] intervention is discretionary, subject to considerations of equity and judicial economy.").

First, the Motion to Intervene is timely.  Micron Israel filed its Motion to Intervene on May 3, 2012 -- before the May 7, 2012, deadline that the Court set for amendments and joinder of parties. See Scheduling Order at 2.  Given the timing of the Motion to Intervene, the Court concludes that Micron Israel acted diligently in seeking intervention.  The full extent of S2 Automation's allegations were also not clear until April 12, 2012, when S2 Automation filed its Amended Complaint.  Micron Israel has not strategically waited to intervene in the litigation until late in the case or sought to disrupt the progression of the lawsuit by waiting to intervene.  Although some discovery has taken place, this case is still in the early stages of litigation.  Thus, Micron Israel has satisfied the first element for intervention as a matter of right under rule 24(b)(1).

Second, the claims and defenses asserted by Micron Israel have questions of law and fact in common with the claims that S2 Automation asserts.  Micron Israel has asserted that it owns the

property at issue, has rights to the contracts in dispute, and employs the employees which the Amended Complaint identifies.  For example, S2 Automation alleges that Micron Technology breached agreements regarding work to be done at the Fab 12 facility, see Amended Complaint ¶ 78, at 11, whereas Micron Israel alleges that it was party to those agreements and that S2 Automation breached the agreements, see Proposed Counterclaim ¶ 49, at 12.  Additionally, S2 Automation seeks damages for wrongful termination of the agreement, see Amended Complaint ¶ 78, at 11, whereas Micron Israel insists that it had legitimate grounds to terminate its contractual relationship with S2 Automation, see Proposed Counterclaim ¶ 55, at 14.  The Court concludes that the claims and defenses which Micron Israel has asserted are largely the mirror image of S2 Automation's claims, with each party claiming that the other breached the contracts at issue and otherwise acted wrongfully.  Consequently, the claims Micron Israel seeks to assert have questions of both law and fact in common with the claims that S2 Automation has asserted.  Micron Israel has, therefore, satisfied the second requirement for permissive intervention.

Third, intervention will not cause undue delay or prejudice to S2 Automation.  In terms of the Motion to Intervene's timing, Micron Israel has not sought to disrupt the proceedings by unduly delaying the filing of its Motion to Intervene.  The Court acknowledges that permitting intervention will cause some delay in the proceedings, but part of that delay results from the inherent complexity of the case.  S2 Automation is asking for at least $1.5 million in damages.  See Amended Complaint ¶ 78, at 11.  Given the amount in damages it is seeking, S2 Automation should have foreseen that the lawsuit could become complex.  It was also on notice that Micron Israel would seek to intervene in the suit.  Micron Technology stated in the JSR that Micron Israel intended to intervene in the suit. See JSR at 2 ("Micron Semiconductor Israel, Ltd. ('Micron Israel') intends to intervene as a party defendant and assert counterclaims.").  Furthermore, many of the events in this case took place in

Israel.  Discovery was always going to be more complicated than in a comparable case where all of the events took place in this country.  S2 Automation, however, chose to file the lawsuit here in New Mexico.  Some personal jurisdiction issues may be unavoidable, even if S2 Automation had decided to file the lawsuit in Israel.  The American companies in this lawsuit with fewer connections to Israel might then be arguing that they were not subject to personal jurisdiction.  If this were a smaller case in terms of the requested damages, the Court would be more cautious about allowing intervention that might derail the case.  This case, however, is not a small one.  Thus, requiring S2 Automation to invest more time in the lawsuit in light of what is at stake for Micron Technology is not unfairly prejudicial.  Some lawsuits are complex and require more time to get to trial.

Furthermore, it is not clear that any delay that will result is undue.  If S2 Automation has sued the wrong party, the Court would be wasting judicial resources to let the case proceed to judgment without allowing the right party to enter the case.  That situation counsels in favor of permitting intervention.  See Garza v. Cnty of L.A., 918 F.2d at 777 ("The decision to grant or deny [permissive] intervention is discretionary, subject to considerations of equity and judicial economy.").  While S2 Automation had the right to file this lawsuit here in New Mexico, that does not mean that it has total control over how this lawsuit will proceed once it filed the case.  Micron Israel has also agreed to consent to the Court's jurisdiction, thus avoiding a variety of jurisdictional complications for S2 Automation.  S2 Automation does not oppose that aspect of the Motion to Intervene, but seeks to keep out many of the things that benefit Micron Israel.  If S2 Israel and Astanovsky do not want to consent to jurisdiction here, then they may dispute jurisdiction through a motion to dismiss.  The Court does not believe it is so inequitable to require them to litigate that issue that the Court should deny Micron Israel's request to permissively intervene.  S2 Israel and Astanovsky may conclude that it is more efficient to litigate the case here.  S2 Automation created

the potential for this complex jurisdictional scenario by filing the lawsuit in New Mexico. In any case, there were potential jurisdictional complications in most any forum. S2 Automation has suggested it might not want to litigate in New Mexico if S2 Israel is sued here or if Micron Israel is a party to the contracts in dispute. If S2 Automation decides the case is not worth it, it always has the option of seeking to voluntarily dismiss the case. At the present time, however, the judicial system has an interest in resolving this litigation as efficiently as possible. S2 Automation's interests are not the only ones that the Court must consider. Thus, Micron Israel has satisfied the third requirement for permissive intervention. Therefore, Micron Israel has satisfied all of the requirements for permissive intervention under rule 24(b)(1).

**IT IS ORDERED** that Micron Semiconductor Israel, Ltd.'s Motion to Intervene as Counterclaimant, filed May 3, 2012 (Doc. 42), is granted.

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

Alicia L. Gutierrez
Moses, Dunn, Farmer & Tuthill, P.C.
Albuquerque, New Mexico

-- and --

Martin K. Holland
Holland Law, P.C.
Albuquerque, New Mexico

-- and --

Or Baron Gil
Meitar Liquomik Geva & Leshem Brandwein
Ramat Gan, Israel

   _Attorneys for the Plaintiff_

Bradford C. Berge
Holland & Hart LLP
Santa Fe, New Mexico

-- and --

Erik F. Stidham
Scott E. Randolph
Holland & Hart LLP
Boise, Idaho

*Attorneys for the Defendant and the Proposed Intervenor*